---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Delaware

Case number *(If known)*: _____ Chapter 15

☐ Check if this is an
amended filing

---

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    **12/15**

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

---

1. **Debtor's name**                          Point Investments, Ltd.

---

2. **Debtor's unique identifier**

   **For non-individual debtors:**

   ☐  Federal Employer Identification Number (EIN)   ___ ___ – ___ ___ ___ ___ ___ _____

   ☑  Other 43769 _____. Describe identifier  Bermuda Registration No.

   **For individual debtors:**

   ☐  Social Security number:   xxx – xx– ____ ____ ____ ____

   ☐  Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

   ☐  Other _____. Describe identifier _____.

---

3. **Name of foreign representative(s)**        Andrew Childe, Richard Lewis, Mathew Clingerman

---

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred**        Winding up proceeding under Sec. 161(g) of the Companies Act 1981 (Bermuda)

---

5. **Nature of the foreign proceeding**

   *Check one:*

   ☑ Foreign main proceeding
   ☐ Foreign nonmain proceeding
   ☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

---

6. **Evidence of the foreign proceeding**

   ☐  A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

   ☐  A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

   ☑  Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.
       Order granting winding up petition and appointing Andrew Childe, Richard Lewis and Mathew Clingerman to continue as Joint Provisional Liquidators

---

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

   ☐  No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
   ☑  Yes

---

| Debtor | Point Investments, Ltd. | Case number (*if known*) |
|---|---|---|
| | Name | |

**8.  Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9.  Addresses**

**Country where the debtor has the center of its main interests:**

Bermuda

**Debtor's registered office:**

Chancery Hall, 1st Floor, 52 Reid Street
Number          Street

_____
P.O. Box

Hamilton                          HM    12
City          State/Province/Region    ZIP/Postal Code

Bermuda
Country

**Individual debtor's habitual residence:**

_____
Number        Street

_____
P.O. Box

_____
City          State/Province/Region    ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

Chancery Hall, 1st Floor, 52 Reid Street
Number          Street

PO Box 671
P.O. Box

Hamilton                          HM    12
City          State/Province/Region    ZIP/Postal Code

Bermuda
Country

**10.  Debtor's website** (URL)

N/A

**11.  Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

　　☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

　　☐ Partnership

　　☐ Other.  Specify: _____

☐ Individual

| Debtor | Point Investments, Ltd. | Case number (if known) |
|---|---|---|
| | Name | |

**12. Why is venue proper in this district?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____     Mathew Clingerman
Signature of foreign representative        Printed name

Executed on    03 / 29 / 2022
            MM / DD / YYYY

✗ _____     Andrew Childe
Signature of foreign representative        Printed name

Executed on    03/29/2022
            MM / DD / YYYY

✗ _____     Richard Lewis
Signature of foreign representative        Printed name

Executed on    03 / 29 / 2022
            MM / DD / YYYY

**14. Signature of attorney**

/s/ Jacob R. Kirkham                            Date    03 / 29 / 2022
Signature of Attorney for foreign representative          MM / DD / YYYY

Jacob R. Kirkham
Printed name

Kobre & Kim LLP
Firm name

600 North King Street, Suite 501
Number        Street

Wilmington                          DE          19801
City                                State        ZIP Code

(302) 518-6460                      jacob.kirkham@kobrekim.com
Contact phone                       Email address

5768                                DE
Bar number                          State

AP0003

**Exhibit 1**

Order

AP0004

IN THE SUPREME COURT OF BERMUDA
COMMERCIAL COURT
COMPANIES ACT (WINDING UP)
2020: No. 300

IN THE MATTER OF POINT INVESTMENTS, LTD. (PROVISIONAL LIQUIDATORS APPOINTED)

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

### ORDER

---

**UPON** the petition being presented by Spanish Steps Holding Ltd **(Petitioner)** to this Court on 16 September 2020 and amended with leave of the Court on 18 November 2021 **(Amended Petition)**

**AND UPON** the Order of this Court dated 29 October 2021 **(Appointment Order)** appointing Andrew Childe and Richard Lewis of FFP Limited, 10 Market Street, #769 Camana Bay, Grand Cayman, Cayman Islands and Mathew Clingerman of Krys Global, Chancery Hall, 1st Floor, 52 Reid Street, Hamilton, HM 12, PO Box 671, HM CX, Bermuda as Joint Provisional Liquidators **(JPLs)** of Point Investments, Ltd. **(Company)**

**AND UPON** reading the First Affidavit of Mathew Clingerman dated 2 December 2021, and the Second Affidavit of Mathew Clingerman dated 17 February 2022

**AND UPON** the Order of this Court dated 3 December 2021 adjourning the Amended Petition and expanding the JPLs' powers

**AND UPON** the Orders of this Court dated 17 December 2021, 14 January 2022 and 4 February 2022 adjourning the Amended Petition

**AND UPON** hearing counsel for the Petitioner and counsel for the Company and the JPLs

**IT IS HEREBY ORDERED** that:

1. The Company be wound up under the provisions of the Companies Act 1981 **(Act)**.

2. That Andrew Childe and Richard Lewis of FFP Limited, 10 Market Street, #769 Camana Bay, Grand Cayman, Cayman Islands and Mathew Clingerman of Krys Global, Chancery Hall, 1st Floor, 52 Reid Street, Hamilton, HM 12, PO Box 671, HM CX, Bermuda be appointed to continue as JPLs.

3. The JPLs not be required to give security for their appointment.

4. The JPLs shall have the power to act jointly and severally in their capacity as joint provisional liquidators of the Company.

5. The powers granted to the JPLs shall include all of those under section 175 of the Act and shall not be limited, pursuant to section 170 (3) of the Act.

6. Without restricting the generality of paragraph 5 above, the JPLs shall be empowered to carry out the

AP0005

following:

(a) to ascertain the assets of the Company and their location and take all steps necessary including Court actions where appropriate to obtain possession of such assets and to bring the same under their control and further, where appropriate, bring the same into the jurisdiction of this Honourable Court and, for this purpose, to seek the assistance of the Courts of the various jurisdictions in which assets of the Company are located;

(b) to incur and pay from the assets of the Company all reasonable expenses and disbursements in connection with the running, administration and management of the Company's records and affairs and offices (and this shall include all costs charges and expenses of attorneys, managers, accountants, auctioneers, brokers, and all other agents or other persons that the JPLs may engage or employ);

(c) if appropriate, in the discretion of the JPLs, to retain or employ such further professionals or other individuals, partnerships, associations or companies, to assist in running the affairs and business of the Company and for the purposes of ascertaining and quantifying the assets, records and liabilities of the Company, such employment being either in this jurisdiction or in any other jurisdiction of the world where the Company has conducted business or entered into contracts with third parties;

(d) to render invoices for their own remuneration at their usual and customary rates (and this shall include all costs charges and expenses of his attorneys, , managers, accountants, auctioneers, brokers, and all other agents or other persons that the JPLs may engage or employ);

(e) to see, review, secure, take possession of and copy any books, papers, writings, documents and records relating to the accounts and audit of the Company's accounts that are located in the offices of its auditors or any other person both in this jurisdiction and in any other jurisdiction;

(f) to see, review, secure, take possession of and copy the claims and financial records of the Company that are located in the offices of the Company or any company affiliated with the Company or any other person;

(g) to operate any existing bank, investment, or other financial accounts established in the name of the Company;

(h) to open and operate bank, investment, or other financial accounts in the name of the JPLs or the Company as may be necessary;

(i) to conduct such investigations and obtain such information as is necessary to identify, locate, protect, secure, take possession of, collect and get in the assets of the Company and determine the Company's liabilities, and/or to enable these proceedings to otherwise proceed in a speedy and efficient manner;

(j) to do all such things as may be necessary or expedient for the protection of the Company's property or assets;

(k) to employ and dismiss any employees of the Company;

(l) to discharge rent, salaries of any employees of the Company and other current expenses of the Company;

(m) to grant or accept a surrender of a lease or tenancy of any of the property of the Company and to

take a lease or tenancy of any property required or convenient for the business of the Company;

(n) to terminate, complete or perfect as advised any contracts or transactions relating to the business of the Company;

(o) to effect insurance in connection with the management and maintenance of the business, property and assets of the Company;

(p) to do all acts and to execute in the name and on behalf of the Company all deeds receipts or other documents and for that purpose using when necessary the Company's seal;

(q) to rank and claim in the bankruptcy, liquidation or insolvency of any person (including but not limited to any body corporate) indebted to the Company and to receive dividends, and to accede to trust deeds for the creditors of any such person;

(r) to change the situation of the Company's registered office;

(s) to carry on all or any portion of the business of the Company so far the JPLs as may consider it beneficial to the winding-up of the Company;

(t) to take control of and exercise all rights which the Company may have in relation to any subsidiaries, joint ventures, investments, associated companies, businesses, or other entities (collectively "Entities") in which the Company holds an interest (directly or indirectly) or such shares as are owned by the Company (directly or indirectly), as may be necessary to obtain control or management of any such Entities including, without prejudice to the generality of the foregoing, the rights relating to the appointment or removal of all or any directors and other officers (including legal representatives) and agents of any such Entities and to take all such steps as the thought fit to protect the interests of the Company;

(u) to retain and employ barristers, attorneys, solicitors or other lawyers in Bermuda, the United States, Switzerland, the Cayman Islands, the United Kingdom and other jurisdictions as the JPLs see fit for the purpose of advising and assisting the JPLs in the execution of their powers or in any legal or arbitration proceedings and such professionals or other individuals, partnerships, associations or companies as they may consider necessary with regard to the execution of their powers and they shall in their discretion determine the quantum of remuneration to be paid to such attorneys, professionals or other individuals, partnerships, associations or companies as aforesaid;

(v) to consider any legal or arbitration proceedings wherever situate in which the Company either is a party or of which the Company presently has conduct or which the Company would, but for these liquidation proceedings, take conduct and (for any purpose, including without restriction the purpose of preserving the *status quo* in relation to proceedings while the JPLs complete their own due diligence in relation to such proceedings) to pay all fees and expenses and to give all instructions in connection therewith and take such action as may be thought necessary to continue to prosecute or to defend such proceedings or to apply for a stay of such proceedings;

(w) to consider and if thought advisable to commence such actions as may be necessary to protect, recover or obtain assets and or monies belonging or due to the Company and to commence all other proceedings, whether in Bermuda or in any other jurisdiction outside Bermuda as may be necessary to protect, recover or obtain assets and or monies belonging or due to the Company and/or have their appointment recognised;

AP0007

(x)      to consider and if thought advisable to bring, participate in, or defend any action or other legal proceedings, whether in Bermuda or in any other jurisdictions outside of Bermuda, in the name and on behalf of the Company;

(y)      consider and if thought advisable commence such actions as may be necessary to have their appointment recognised in jurisdictions outside of Bermuda including for the avoidance of doubt the United States, the Cayman Islands, Switzerland, the United Kingdom and other jurisdictions as may be relevant;

(z)      to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the Company, with the same effect with respect to the liability of the Company, with the same effect with respect to liability of the Company as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the Company in the course of its business;

(aa)      to raise on the security of its assets of the Company any money required;

(bb)      to do all things incidental to the exercise of the foregoing powers.

7. The JPLs be at liberty to apply generally to this Honourable Court to make such orders for regulating the future conduct of the affairs of the Company as this Honourable Court shall see fit.

8. The JPLs may bring or defend in their names any action or other legal proceedings which relate to the said property belonging to the said Company or which it is necessary to bring or defend for the purposes of effectually winding-up the Company and recovering its property as aforesaid as provided by section 174 of the Act. Notwithstanding paragraph 9 below, the costs charges and expenses of all persons retained or employed by the JPLs together with the costs charges and expenses of the JPLs and all other costs and expenses properly incurred in the course of the provisional liquidation of the Company shall be paid as bills are rendered out of the assets of the Company in accordance with Rule 140 of the Companies (Winding Up) Rules 1982.

9. The time for the holding of the first meetings of creditors and contributories under section 171 of the Act be extended by three months, to six months from the date of this Order.

10. The Second Affidavit of Mathew Clingerman dated 17 February 2022 be sealed on the Court file and not be open to inspection by any person unless upon further Order of this Court.

11. The JPLs shall be at liberty to submit to the Registrar of the Supreme Court of Bermuda bills of costs for taxation for all costs charges and expenses of those persons or firms employed by them and that such taxation shall be on an attorney-and-own-client basis with respect to the costs charges and expenses of attorneys and on an equivalent basis for all managers, accountants, auctioneers or other persons.

12. The Petitioner shall have its costs of this application as costs of preserving, realising, or getting in the assets of the Company pursuant to Rule 140 of the Companies (Winding Up) Rules 1982.

Dated the 18th day of February 2022.

Hon. Chief Justice / Puisne Judge

IN THE SUPREME COURT OF BERMUDA

COMMERCIAL COURT

COMPANIES (WINDING UP)

2020: No. 300

IN THE MATTER OF POINT INVESTMENTS, LTD
(PROVISIONAL LIQUIDATORS APPOINTED)

AND IN THE MATTER OF THE COMPANIES ACT 1981

---

ORDER

---

CAREY OLSEN BERMUDA LIMITED
Rosebank Centre, 5th Floor
11 Bermudiana Road
Pembroke HM 08
Bermuda

Attorneys for the Petitioner

SUPREME COURT BERMUDA
-2022 FEB 18 PM 3: 30

## **Exhibit 2**

Petitioner's Statement Pursuant to Rule of Bankruptcy Procedure 1007(a)(4)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceedings. | |

## PETITIONERS' STATEMENT PURSUANT TO
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 1007(a)(4)

I, Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in my capacity as one of the Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am over the age of 18 and, if called upon, could testify as to all matters set forth in this statement.

2.      The Joint Provisional Liquidators and putative foreign representatives (the "Petitioners") are informed that Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a foreign representative filing a petition for recognition under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") shall file with the petition:

> (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0011

is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the [Bankruptcy] Code.

Fed. R. Bankr. P. 1007(a)(4).

3.  The Petitioners are further informed that Bankruptcy Rule 7007.1(a) provides that:

Any corporation . . . shall file two copies of a statement that identifies any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of the corporation's equity interests, or states that there are no entities to report under this subdivision.

Fed. R. Bankr. P. 7007.1(a).

4.  The Petitioners are further informed that under section 101(9) of the Bankruptcy Code, a "corporation":

(A)  includes—

(i)  association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;
(ii)  partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
(iii)  joint-stock company;
(iv)  unincorporated company or association; or
(v)  business trust; but
(B)  does not include limited partnership.

11 U.S.C. § 101(9).

5.  In accordance with Bankruptcy Rule 1007(a)(4), the Petitioners hereby provide the following information.

**A.      Corporate Ownership Statement**

6.  Spanish Steps Holdings Ltd. ("SSH"), a company organized in the British Virgin Islands, is the registered owner of all issued common shares (and therefore the economic interest) in the Debtor. BCT Limited ("BCT"), as trustee of the A. Eugene Brockman Charitable Trust (the

AP0012

"Trust"), is the owner of SSH. The Trust is governed by Bermudian Law, and the beneficiaries of the Trust are members of the family of the settlor, Mr. A. Eugene Brockman (now deceased), as well as "any organization qualifying as a charitable organization under the laws of Bermuda, the United States, or Great Britain."[2]

## B.     List of Administrators of Foreign Proceedings

7.     The following is a list containing the names and addresses of all persons or bodies "authorized to administer foreign proceedings" of the Debtor:

- ▪ <u>Name</u>: Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd.

  <u>Address</u>: Chancery Hall, 1st Floor, 52 Reid Street, Hamilton, HM 12, PO Box 671, HM CX, Bermuda.

- ▪ <u>Name</u>: Andrew Childe of FFP Limited, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd.

  <u>Address</u>: 10 Market Street, #769 Camana Bay, Grand Cayman, KY1-9006, Cayman Islands.

- ▪ <u>Name</u>: Richard Lewis of FFP Limited, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd.

  <u>Address</u>:10 Market Street #769 Camana Bay, Grand Cayman, KY1-9006, Cayman Islands.

## C.     Litigation Parties in the United States

8.     To the best of the Petitioners' knowledge, the Debtor is not a party to any litigation in the United States.

## D.     Parties Against Whom Provisional Relief is Sought Under Section 1519

9.     The Petitioners are seeking provisional relief pursuant to sections 1519(a) and 1521(a)(7) of the Bankruptcy Code to (i) stay execution against the Debtor's assets and (ii) apply

---

[2] The trustee of the Trust, BCT Limited, is a controlled subsidiary of Maples FS Limited, which is a licensed trust company in the Cayman Islands.

AP0013

section 362 of the Bankruptcy Code in respect of the Debtor and its property within the territorial jurisdiction of the United States until such time as the court rules on the Petition. Such provisional relief is sought as against the Internal Revenue Service and all persons (as such terms is defined in Section 101(41) of the Bankruptcy Code), including but not limited to:

- Vista Equity Partners Management, LLC;
- Vista Equity Partners, LLC;
- VEPF IV Co-Invest 1A, LP
- VEPF IV Co-Invest 2-A, L.P.
- VEPF IV Co-Invest 1-B, L.P.
- VEPF IV Co-Invest 2-B, L.P.
- Vista Equity Partners Fund IV (Parallel), L.P.
- Vista Equity Partners Fund VI-A, L.P.
- Vista Foundation Fund I (Parallel), L.P.
- Vista Foundation Fund II-A, L.P.
- Vista Equity Partners Fund Ill (Parallel), L.P.
- VEPF Ill AIV (Cayman), LP
- SD Rollover Vehicle, LP

10.    The Petitioners reserve the right to seek additional provisional and/or interim relief pursuant to, without limitation, sections 105 and 1519 of the Bankruptcy Code (as well as any applicable Bankruptcy Rules) at a later date if the Petitioners deem such relief necessary and appropriate under the circumstances.

Executed this March 29, 2022
in Hamilton, Bermuda.

*Mathew Clingerman, Krys & Associates (Bermuda) Ltd., in his capacity as one of the Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd.*

AP0014

**Exhibit 3**

Petitioners' Statement Pursuant to Section 1515(c) of the Bankruptcy Code

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceedings. | |

## PETITIONERS' STATEMENT PURSUANT TO
## SECTION 1515(c) OF THE BANKRUPTCY CODE

I, Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in my capacity as one of the Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.       I am over the age of 18 and, if called upon, could testify as to all matters set forth in this statement.

2.       The Joint Provisional Liquidators and putative foreign representatives (the "Petitioners") are informed that section 1515(c) of title 11 of the United States Code (the "Bankruptcy Code") provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

3.       I am further informed that section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0016

insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

4.    I hereby state that there is one "foreign proceeding" with respect to the Debtor, which is the foreign proceeding for which the Petitioners seek recognition in this chapter 15 case. Specifically, the Debtor is the subject of a winding up proceeding commenced pursuant to section 161(g) of the Bermuda Companies Act 1981 (as amended) and the Companies (Winding Up) Rules 1982 (as amended), and such proceeding is currently pending before the Supreme Court of Bermuda, Commercial Court, Case 2020: No. 300.

Executed on this 29th day of March 2022
in Hamilton, Bermuda.

_Mathew Clingerman, Krys & Associates (Bermuda) Ltd., in his capacity as one of the Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd._

AP0017

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

POINT INVESTMENTS, LTD.
(IN LIQUIDATION),[1]

            Debtor in a Foreign Proceeding.

## VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND (III) RELATED RELIEF UNDER CHAPTER 15

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0018

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 2

JURISDICTION, ELIGIBILITY, AND VENUE........................................................................ 3

BACKGROUND ............................................................................................................ 4

   A.   The Debtor's Current Ownership Structure ........................................................ 4

   B.   Events Leading to the Commencement of the Bermuda Proceeding ................................. 5

   C.   The Bermuda Proceeding and Applicable Bermuda Insolvency Law and Procedures ....... 7

   D.   Indictment of Robert T. Brockman ................................................................. 10

   E.   The Debtor's U.S. Assets............................................................................... 11

   F.   The Jeopardy Assessment, The Purported Levies, and other Events Leading to the Filing of the Chapter 15 Petition ........................................................... 13

     i.   The Jeopardy Assessment ..................................................................... 13

     ii.   The Purported Levies .......................................................................... 14

RELIEF REQUESTED..................................................................................................... 16

BASIS FOR RELIEF REQUESTED .................................................................................... 17

   A.   The Petitioners Have Satisfied the Requirements for Recognition of the Bermuda Proceeding.................................................................................................. 17

     i.   The Bermuda Proceeding is a "Foreign Proceeding" ................................... 17

     ii.   The Bermuda Proceeding is a "Foreign Main Proceeding" Because the Center of the Debtor's Main Interests Is in Bermuda.......................................... 19

     iii.   The Petitioners are the "Foreign Representatives" ...................................... 21

     iv.   The Verified Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code ............................................................. 22

   B.   Public Policy and Further Relief...................................................................... 23

     i.   Recognition of the Bermuda Proceeding is Not Contrary to Public Policy.................. 23

AP0019

ii.   The Petitioner is Entitled to Relief Under Section 1520 ................................................. 24

iii.   Additional Relief Under Section 1521 is Necessary and Appropriate ........................... 25

RESERVATION ..................................................................................................... 26

NOTICE .................................................................................................................. 26

NO PRIOR REQUEST .......................................................................................... 27

CONCLUSION ...................................................................................................... 27

AP0020

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Grp. Of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*,
  470 B.R. 408 (N.D. Tex. 2012).................................................................................... 21

*In re ABC Learning Centres Ltd.*,
  728 F.3d 301 (3d Cir. 2013)........................................................................................ 17

*In re Capital Mgmt. of Bermuda*, *Ltd.*,
  No. 8:20-BK-08066 MGW (Bankr. M.D.F.L. Jun. 15, 2021) ................................... 18

*In re Catalyst Paper Corp.*,
  2017 WL 5479405 (Bankr. D. Del. Jan. 20, 2017)..................................................... 24

*In re Digicel Group One Ltd.*,
  No. 1:20-BK-11207 (Bankr. S.D.N.Y. Apr. 20, 2021)............................................... 19

*In re Irish Bank Resolution Corp. Ltd.*,
  2014 WL 99533792 (Bankr. D. Del. 2014) ................................................................ 19

*In re Millennium Global Emerging Cr. Master Fund Ltd.*,
  458 B.R. 63 (Bankr. S.D.N.Y. 2011) .......................................................................... 23

*In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd.*,
  275 B.R. 699 (S.D.N.Y. 2002)..................................................................................... 23

*In re PT Bakrie Telecom Tbk*,
  601 B.R. 707 (Bankr. S.D.N.Y. 2019)......................................................................... 21

*In re VL Assurance (Bermuda) Ltd.*,
  No. 1:21-BK-10682 (Bankr. S.D.N.Y., Sept. 10, 2021).............................................. 19

*United States v. Robert T. Brockman*,
  Case No. 3:20-cr-00371-WHA (N.D. Cal.) ................................................................ 10

## Statutes

11 U.S.C. § 101....................................................................................................... 17, 18, 21

11 U.S.C. § 1501............................................................................................................ 2, 23

11 U.S.C. § 1515................................................................................................................ 22

11 U.S.C. § 1516.......................................................................................................... 18, 19

AP0021

11 U.S.C. § 1517 ........................................................................................................... 20

11 U.S.C. § 1519 ........................................................................................................... 17

11 U.S.C. § 1521 ........................................................................................................... 24

28 U.S.C. § 157 .............................................................................................................. 3

28 U.S.C. 1410 ............................................................................................................... 3

I.R.M. § 5.17.8.10 ......................................................................................................... 24

AP0022

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "Petitioners") for Point Investments, Ltd. (the "Debtor") in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding"), by and through the undersigned counsel, respectfully submit this *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* (the "Verified Petition") seeking entry of the proposed order attached hereto as Exhibit A (the "Proposed Recognition Order"): (i) recognizing the Bermuda Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing the Petitioners as the "foreign representatives" of the Debtor as defined in section 101(24) of the Bankruptcy Code; (iii) granting additional relief under section 1521 of the Bankruptcy Code; and (iv) granting such other and further relief as the Court deems just and proper.

In support of this Verified Petition, the Petitioners rely upon the *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "Petition"), the *Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746* (the "Zuill Declaration"), and the *Declaration of Adam Lavine Pursuant to 28 U.S.C. § 1746* (the "Lavine Declaration"). In further support of this Verified Petition, the Petitioners respectfully represent to the Court as follows:

AP0023

## PRELIMINARY STATEMENT

1.      The Petitioners are the court-appointed, independent fiduciaries charged by the Bermuda Court with protecting and preserving the Debtor's worldwide assets for the benefit of the Debtor's stakeholders. The Petitioners have commenced this chapter 15 case in furtherance of that mandate and to advance many of the important federal interests for which chapter 15 was adopted, including: (i) cooperation between courts in the United States and foreign courts, (ii) the fair and efficient administration of cross-border cases that protects the interests of all creditors and other interested entities, including the Debtor, and (iii) the protection and maximization of the value of the Debtor's assets. *See* 11 U.S.C. § 1501(a).

2.      In direct contravention of these principles grounded in international comity and cross-border insolvency law, a single *contingent* creditor of the Debtor has sought to immediately levy and seize the Debtor's assets in the United States (the "Purported Levies"), despite the existence in Bermuda of a statutory provision that voids any such seizure occurring after the commencement of the winding up. That contingent creditor—the Internal Revenue Service ("IRS")—maintains that it may immediately seize the Debtor's property in the United States on the basis that the Debtor is the alleged nominee or alter ego of a U.S. taxpayer who allegedly owes the IRS approximately $1.42 billion. But no court has ever made a finding of nominee or alter ego liability, and no court has even found that taxpayer responsible for the underlying tax liability. Instead, the IRS has invoked a federal tax procedure known as a "jeopardy assessment" to sidestep having to prove its case before levying assets. And whereas the IRS' levies were at first focused on the assets of the taxpayer and his family, the IRS has now started to serve purported notices of levy aimed at the property of the Debtor.

AP0024

3.     The IRS did ***not*** provide notice of the Purported Levies to the Petitioners, despite the IRS being aware of the Bermuda Proceeding and of the Petitioners' appointment as Joint Provisional Liquidators. Now that the Petitioners are aware of the Purported Levies, the Petitioners had no choice but to commence this chapter 15 case to satisfy their fiduciary duties of preserving the Debtor's assets for the benefit of its stakeholders, to prevent the piecemeal administration of the Debtor's worldwide assets, and to ensure the Debtor's orderly liquidation.

4.     As detailed below, because the Bermuda Proceeding is a "foreign proceeding" pending in the country where the Debtor has the center of its main interests, and because all the procedural requirements attendant to the filing of the Petition have been met, recognition of the Bermuda Proceeding as a "foreign main proceeding" is proper under chapter 15 of the Bankruptcy Code. For these reasons and those detailed below and in the papers submitted herewith, the Petitioners respectfully request that the Court grant the relief sought in this Verified Petition.

## JURISDICTION, ELIGIBILITY, AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.).

6.     This chapter 15 case has been properly commenced with respect to the Debtor in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Petition. This is a core proceeding under 28 U.S.C. § 157(b)(2), which provides that "[c]ore proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11."

7.     Venue is proper in this District under 28 U.S.C. § 1410(1), which provides that "[a] case under chapter 15 of title 11 may be commenced in the district court of the United States for

AP0025

the district . . . in which the debtor has its principal place of business or principal assets in the United States." For purposes of venue, the Debtor's principal asset in the United States is believed to be its minority ownership interests in Solera Global Holding Corp., a Delaware corporation.

## BACKGROUND

### A.    The Debtor's Current Ownership Structure

8.      The Debtor was originally incorporated in the British Virgin Islands on July 14, 1999. The Debtor was "continued into" (*i.e.*, redomiciled in) Bermuda on or about November 30, 2009, with a registered office at Belvedere Building, Ground Floor, 69 Pitts Bay Road, Pembroke HM 08, Bermuda.[2] The Debtor is a private fund registered with, and regulated by, the Bermuda Monetary Authority.

9.      The Debtor's share capital is divided between common shares and one management share. The common shares carry all the economic interest in the Debtor, including dividend and redemption rights (and rights in a winding-up), but not voting rights. The one management share carries all voting rights but no economic benefit (except for U.S. $100 in the event of winding-up or dissolution).

10.      Spanish Steps Holdings Ltd. ("SSH"), a company organized in the British Virgin Islands, is the registered owner of all issued common shares (and therefore the economic interest in the Debtor). BCT Limited ("BCT"), as trustee of the A. Eugene Brockman Charitable Trust (the "Trust"), is the owner of SSH. The Trust is governed by Bermudian Law, and the beneficiaries of the Trust are members of the family of the settlor, Mr. A. Eugene Brockman (now deceased), as

---

[2] On November 4, 2021, the Petitioners changed the Company's registered office to c/o Krys & Associates (Bermuda) Ltd., Chancery Hall, 1st Floor, 52 Reid Street, Hamilton, HM 12 Bermuda.

AP0026

well as "any organization qualifying as a charitable organization under the laws of Bermuda, the United States, or Great Britain."[3]

11.     The management share of the Debtor, which is not entitled to any economic interest in the Debtor (except for U.S. $100 in the event of winding-up or dissolution), is held by a Nevis entity, Point Investments LLC ("Point LLC"). The shares of Point LLC are held by the Point Purpose Trust, the trustee of which is believed to be, or to be controlled by, Evatt Tamine (discussed below).

12.     Prior to the commencement of its winding up proceeding, the primary purpose of the Debtor was to act as an investment vehicle for SSH.

**B.     Events Leading to the Commencement of the Bermuda Proceeding**

13.     The events leading to the Commencement of the Bermuda Proceeding are described in detail in the Judgment of the Bermuda Court, dated November 17, 2021, setting forth the reasons for the appointment of the Joint Provisional Liquidators (the "Bermuda Judgment").[4]

14.     As noted in the Bermuda Judgment, the "share structure of [the Debtor] is unusual" insofar as SSH, the sole economic interest holder in the Debtor (save for U.S. $100) has no right to vote the shares of the Debtor. Bermuda Judgment ¶ 6. Instead, the holder of the single "Manager Share" has all the voting power. *Id*.

15.     This share structure, together with other unfortunate events, has resulted in extensive litigation in Bermuda and the United Kingdom since 2018. *Id*. ¶ 7. For example, SSH and BCT are pursuing claims against Mr. Tamine—a former director of the Debtor and the person

---

[3] The trustee of the Trust, BCT Limited, is a controlled subsidiary of Maples FS Limited, which is a licensed trust company in the Cayman Islands.

[4] A copy of the Bermuda Judgment is attached as Exhibit 1 to the Lavine Declaration.

AP0027

in control of the Debtor's management share through Point LLC—for allegedly misappropriating U.S. $28 million from the Trust. *Id*. The claimed misappropriation occurred at a time when Mr. Tamine controlled the previous trustee of the Trust (St. John's Trust Company Limited ("<u>SJTC</u>")). *Id*. ¶ 13. In addition, SJTC, which was controlled by directors appointed by Mr. Tamine, was advancing litigation aimed at regaining its position as trustee of the Trust. *Id*. ¶¶ 14-15. Those same directors (*i.e.*, the ones appointed by Mr. Tamine) also served as directors of the Debtor at the time of the appointment of the Joint Provisional Liquidators.

16.     As a result of the foregoing litigation, prior to the appointment of the Joint Provisional Liquidators, the Debtor's corporate structure was in an untenable situation that frustrated the Debtor's corporate purpose of serving as an investment vehicle for SSH. In sum: (i) the Debtor's corporate parents were suing Mr. Tamine for misappropriation, and yet Mr. Tamine retained management control over the Debtor through the "Manager Share" held by Point LLC, and (ii) persons appointed by Mr. Tamine served as directors of both the Debtor and of SJTC, an entity embroiled in litigation to regain its position as trustee of the Trust.

17.     In light of the foregoing situation, SSH filed a petition with the Bermuda Court on September 16, 2020 seeking a just and equitable winding up of the Debtor. The petition argued, among other things:

- The Debtor's directors repeatedly breached their duties to the Debtor;

- SSH desired to terminate the Debtor's role as investment vehicle for SSH, such that the Debtor would have no continuing purpose after the Debtor's role as investment vehicle were terminated; and

- Any winding up of the affairs of the Debtor should be carried out under the control of independent officeholders, such as joint liquidators, as officers of the court.

The Bermuda Court agreed. On October 29, 2021, the Bermuda Court entered an order appointing the Petitioners as the Joint Provisional Liquidators of the Debtor, thus placing the Debtor in

AP0028

provisional liquidation (the "October 29 Order").[5] And, on November 17, 2021, the Bermuda Court issued the Bermuda Judgment setting forth the reasons for the October 29 Order.

18.     With leave of the Bermuda Court, SSH submitted an amended winding up petition on November 18, 2021, reflecting BCT's replacement of the prior trustee of the Trust and certain other facts arising since the petition was first filed.

19.     On February 18, 2022, the Bermuda Court granted the amended petition and issued an order providing for the Debtor to "be wound up under the provisions of the Companies Act 1981 (Act)", among other relief detailed in Section C immediately below (the "Winding Up Order").[6] As a result of the Winding Up Order, the Debtor's provisional liquidation was converted to a liquidation. *See* Zuill Decl. ¶ 25.

**C.      The Bermuda Proceeding and Applicable Bermuda Insolvency Law and Procedures**

20.     A detailed discussion of Bermuda law in respect of the Bermuda Proceeding—and liquidations generally—is set forth in the Zuill Declaration. That discussion is also summarized here.

21.     The Bermuda Companies Act 1981 (As amended) (the "Bermuda Companies Act"), as supplemented by common law, governs the liquidation of companies in Bermuda and, along with the Companies (Winding-Up) Rules 1982 (As amended) (the "Winding Up Rules"), provides that the Bermuda Court may appoint one or more liquidators or provisional liquidators following the presentation of a winding-up petition, and sets forth the permitted scope and powers of such liquidators. Zuill Decl. ¶ 17. Typically, provisional liquidators are appointed at or around the same time the winding-up petition is filed, and liquidators (who are often the same individuals

---

[5] The October 29 Order is attached as Exhibit 2 to the Lavine Declaration.

[6] The Winding Up Order is attached as Exhibit 1 to the Petition.

AP0029

as the provisional liquidators) are appointed by the Court once a winding-up order has been made and the first meeting of creditors and contributories held. *Id*. Liquidators remain in office until they are released by the Bermuda Court following the conclusion of the winding up or until they resign or are removed by the Bermuda Court for cause shown. *Id*. ¶ 19.

22.     A liquidator is an officer of the Bermuda Court who is subject to the Bermuda Court's control and supervision. *Id*. ¶ 18. A liquidator is also a fiduciary and is required to be independent from the management of a company, as well as independent from the company's creditors and "contributories" (*i.e.*, equity holders). *Id*. A liquidator is required to act in an even-handed fashion between creditors or groups of creditors (*i.e.*, for the benefit of the company's creditor body as a whole and not just any single creditor or group of creditors) and contributories, in accordance with the terms of the order appointing the liquidator. *Id*. Section 176(5) of the Bermuda Companies Act provides that any person dissatisfied by any act, omission or decision of a liquidator may apply to the Bermuda Court, and the court may confirm, reverse, or modify the act or decision complained of, and may give such other directions and make such order as the court thinks just. *Id.* ¶ 19.

23.     As noted, the Bermuda Court appointed the Petitioners as the Joint Provisional Liquidators of the Debtor on October 29, 2021. *Id.* ¶ 25. As set forth in the Winding Up Order, the Bermuda Court ordered that appointment to continue following the granting of the winding up petition on February 18, 2022. *Id*.

24.     The purpose of the Bermuda Proceeding is to wind up the operations, and liquidate the assets, of the Debtor. *Id.* ¶ 26. Under the Winding Up Order, the Joint Provisional Liquidators are vested with the following functions, among others:

> ▪ To ascertain the assets of the Debtor and their location and take all steps necessary, including court actions where appropriate, to obtain possession of such assets and

bring the same under their control and further, where appropriate, bring the same into the jurisdiction of the Bermuda Court and, for this purpose, to seek the assistance of the courts of the various jurisdictions in which assets of the Debtor are located;

- To consider, and if thought advisable, to commence such actions as may be necessary to protect, recover, or obtain assets and or money belonging or due to the Debtor, and to commence all other proceedings outside Bermuda as may be necessary to have their appointment recognized and to protect the assets of the Debtor;

- If appropriate, in the discretion of the Joint Provisional Liquidators, to retain or employ such further professionals or other individuals, partnerships, associations or companies, to assist in the running of the affairs and businesses of the Debtor and for the purposes of ascertaining and quantifying the assets, records, and liabilities of the Debtor, such employment being either in Bermuda or in any other jurisdiction of the world where the debtor has conducted business or entered into contracts with third parties;

- To conduct such investigations and obtain such information as is necessary to identify, locate, protect, secure, take possession of, collect, and get in the assets of the Debtor and determine liabilities;

- To do all such things as may be necessary or expedient for the protection of the Debtor's property or assets;

- To rank any claim in the bankruptcy, liquidation, or insolvency of any person (including but not limited to any corporation) indebted to the Debtor and to receive dividends, and to accede to trust deeds for the creditors of any such person;

- To carry on all or any portion of the business of the Debtor so far as the Joint Provisional Liquidators may consider it beneficial to the winding-up of the Debtor;

- To bring, participate in, or defend any action or other legal proceedings, whether in Bermuda or in any other jurisdiction outside of Bermuda, in the name and on behalf of the Debtor; and

- To do all things incidental to the exercise of the foregoing powers and the additional powers set forth in the Winding Up Order.

(D.I. 1, Ex. A, Winding Up Order.)

25.     The Bermuda Proceeding, which is currently pending before the Bermuda Court, is a collective judicial proceeding relating to insolvency or the adjustment of debts for the purpose of liquidating the Debtor's assets. Zuill Decl. ¶¶ 21, 26. The Petitioners are obliged to call the first

-9-

meetings of creditors and contributories, at which time a vote is taken for the appointment of permanent liquidators, which is made by further application to the Bermuda Court. *Id*. ¶ 21. A committee of inspection made up of certain creditors and/or contributories may also be appointed to work alongside the liquidators. *Id*. Liquidators (but not provisional liquidators) are obliged to apply the Debtor's assets *pari passu* in satisfaction of the company's admitted debts. *Id*. ¶ 22. If there is a surplus of assets, the surplus must be distributed amongst the contributories of the Debtor in accordance with their rights and interests in the Debtor. *Id*.

26. In this case, the Petitioners hope that a surplus will be generated from the Debtor's liquidation. If that were to occur, admitted creditor claims would be satisfied in full, and the surplus would be distributed to SSH, as the Debtor's sole contributory (other than Point LLC, which is entitled to U.S. $100 in connection with the winding up).

**D.    Indictment of Robert T. Brockman**

27. The Debtor is not a party to any litigation in the United States.

28. On October 1, 2020, an indictment was filed in the United States District Court for the Northern District of California against Robert T. Brockman, one of the beneficiaries of the Trust, in *United States v. Robert T. Brockman,* Case No. 3:20-cr-00371-WHA (N.D. Cal.).[7] The indictment includes various federal offenses. It alleges, among other things, that Mr. Brockman engaged in a conspiracy to conceal taxable income from the IRS and that Mr. Brockman sought to achieve the objectives of the conspiracy by creating a network of offshore companies and trusts,

---

[7] A copy of the indictment is attached as Exhibit 3 to the Lavine Declaration. The criminal case against Mr. Brockman was subsequently transferred to the Southern District of Texas, where it was assigned Case No. 4:21-cr-00009.

AP0032

including, among others, the Debtor.[8] The indictment further alleges, among other things, that Mr. Brockman devised and participated in a scheme to defraud purchasers and sellers of certain debt issued by Dealer Computer Services, Inc. With regard to forfeiture, the indictment includes a general forfeiture notice asserting that in the event of conviction, the defendant Robert T. Brockman will be required to forfeit the proceeds of the scheme to defraud alleged in Counts 15-34 pursuant to 18 U.S.C. § 982(a)(2)(A), and any property involved in the money laundering offenses alleged in Counts 35-47 pursuant to 18 U.S.C. § 982(a)(1).[9] Mr. Brockman denies the allegations set forth in the indictment and has pled not guilty.

29.     The Joint Provisional Liquidators do not take direction from Mr. Brockman, nor do they take direction from the Trust, BCT, or SSH. As detailed above, the Joint Provisional Liquidators are fiduciaries of the Debtor, subject to the control and supervision of the Bermuda Court. Indeed, as officers of the Bermuda Court, the Joint Provisional Liquidators are required to be independent.

**E.      The Debtor's U.S. Assets**

30.     The Joint Provisional Liquidators are still investigating the amounts and locations of the Debtor's assets. The statements contained herein concerning the Debtor's assets are based

---

[8] The indictment includes allegations that certain assets contributed to the Debtor were the result of unlawful transactions and that Mr. Brockman failed to properly report income earned on assets of the Debtor. The indictment does not raise any charges against the Debtor.

[9] On March 18, 2021, the United States additionally filed a complaint for civil forfeiture in the District of Colorado against two assets: (i) real property at 121 Ash Road, Basalt, Colorado; and (ii) approximately U.S. $78 million held by an entity named, Edge Capital Investments, Ltd., at Mirabaud Bank in Switzerland. The civil asset forfeiture case is an *in rem* proceeding which alleges that the defendant assets constitute property traceable to the proceeds of Mr. Brockman's scheme to defraud, and property involved in the laundering of such proceeds. None of the Debtor's assets are implicated in the civil forfeiture case.

AP0033

upon the Joint Provisional Liquidators' review of relevant corporate records obtained as of the date hereof.

31.     The Joint Provisional Liquidators believe that, for venue purposes, the Debtor's principal asset within the United States consists of direct minority ownership interests in Solera Global Holding Corp., a Delaware corporation.[10] The Debtor's book and records also reflect the following additional U.S. assets: (i) a direct investment in "Universal Computer Systems Holding, Inc. (Reynolds & Reynolds)"[11]; and (ii) an interest in a promissory note issued by Difficult LLC, a Delaware limited liability company, to the Debtor in the principal amount of U.S. $4,643,333.33.

32.     In addition to the foregoing U.S. assets, the Debtor has various foreign assets, including investments in Cayman Islands funds (the "Vista Cayman Funds"), which are managed by entities understood to be affiliated with Vista Equity Partners Management, LLC, a Delaware limited liability company with a principal office and place of business in California ("VEP"). The Vista Cayman Funds are currently withholding in excess of U.S. $41 million in cash distributions owed to the Debtor (the "Withheld Cash Distributions"). Upon information and belief, the Withheld Cash Distributions are located in a U.S. bank account under VEP's or its affiliate's control. VEP has informed the Petitioners that it will not release those funds because of, among other things, the Purported Levies issued by the IRS.

---

[10] The Debtor's latest unaudited financial statements appear to list this investment as an interest in "Solera Holding LLC" and as having an estimated realizable value of approximately U.S. $383.5 million. It is unclear to the Petitioners why the Debtor's latest unaudited financial statements refer to an investment in Solera Holding LLC instead of Solera Global Holding Corp.

[11] The Petitioners have identified a Delaware corporation with the name "Universal Computer Systems Holding, Inc.," which, upon information and belief, is the entity in which the Debtor holds minority ownership interests. The Debtor's latest unaudited financial statements list an estimated realizable value of approximately U.S. $129.5 million for its interests in "Universal Computer Systems Holding, Inc. (Reynolds & Reynolds)".

AP0034

**F.**    **The Jeopardy Assessment, The Purported Levies, and other Events Leading to the Filing of the Chapter 15 Petition**

      **i.**    *The Jeopardy Assessment*

33.    On September 9, 2021, the IRS issued a Notice of Jeopardy Assessment and Rights to Appeal concerning Mr. Brockman's alleged individual income tax liability for taxable years 2004 through 2007, 2010, and 2012 through 2018 (the "Jeopardy Assessment"). The purported basis for making the Jeopardy Assessment—which Mr. Brockman disputes—is set forth in the Jeopardy Recommendation Report that accompanied the Jeopardy Assessment. In short, the IRS claims that Mr. Brockman is currently acting to move assets beyond the reach of the IRS.

34.    Also on September 9, 2021, the IRS issued a Notice of Jeopardy Levy and Right of Appeal for collection of the alleged liability set forth in the Jeopardy Assessment (the "Jeopardy Levy"). Central to the IRS's theory of tax liability against Mr. Brockman is that the Trust is a sham and that Mr. Brockman is the true owner of the assets held by the Trust.

35.    On September 9, 2021, the Internal Revenue Service also filed a Notice of Federal Tax Lien against Difficult LLC. The Notice of Federal Tax Lien describes Difficult LLC as the alleged "nominee of Point Investments Ltd. as alter-ego of Robert T. Brockman."

36.    On October 28, 2021, the IRS issued a notice of tax deficiency to Mr. Brockman. On January 24, 2022, Mr. Brockman filed a petition with the U.S. Tax Court to challenge the amount of the liability that the IRS claims he owes in their October 28, 2021 notice of deficiency (the "Tax Court Case"). Mr. Brockman's Tax Court Case is captioned *Robert T. Brockman v. Commissioner of Internal Revenue*, Dkt. No. 764-22.

37.    Mr. Brockman has also filed a complaint for judicial review and abatement of the Jeopardy Assessment and the Jeopardy Levy pursuant to section 7429 of the Internal Revenue Code (the "Jeopardy Assessment Complaint"). The case is *Brockman v. United States*, S.D. Tex.,

-13-

No. 4:22-cv-00202. In the Complaint, Mr. Brockman challenges the Jeopardy Assessment, disputes the IRS's claim that Mr. Brockman was trying to move his assets outside of the United States, and seeks to have any frozen bank accounts or properties that have been subject to tax liens fully restored.

38.     On January 21, 2022, Mr. Brockman moved the district court for a determination on the Jeopardy Assessment Complaint, which the United States opposed on January 31, 2022. The motion was fully briefed on February 7, 2022. On March 18, 2022, Mr. Brockman filed a supplement to this motion and attached a letter, dated March 15, 2022, from BCT to the IRS. In its letter, BCT invited the IRS to engage in discussions regarding the potential repatriation of $1.35 billion in funds from Switzerland to secure (together with other funds) the amount claimed by the IRS during the pendency of the Tax Court Case. Mr. Brockman asked the Court to stay the collection of his taxes while BCT negotiates with the IRS and others regarding its proposal. On March 21, 2022, the United States filed its opposition to Mr. Brockman's supplemental motion, expressly rejecting the proposal from BCT.[12]

39.     The District Court has yet to render a decision regarding Mr. Brockman's motion for a determination on the Jeopardy Assessment Complaint. A decision was expected on or before March 21, 2022, but has not issued. *See* 26 U.S.C. § 7429(b)(3) and (c) (setting a 60-day period for determination of Mr. Brockman's motion).

ii.     ***The Purported Levies***

40.     From at least March 21, 2022, the IRS commenced serving purported notices of levy targeting the assets of the Debtor. The IRS did ***not*** provide notice of the Purported Levies to

---

[12] Also on March 21, 2022, the United States filed an answer to Mr. Brockman's Jeopardy Assessment Complaint.

AP0036

the Petitioners, despite the IRS being aware of the Bermuda Proceeding and the Petitioners'
appointment as Joint Provisional Liquidators.[13] Due to the IRS's lack of notice to the Petitioners,
the Petitioners cannot be certain as to whether the IRS has issued any additional levies (other than
the Purported Levies) to attempt to seize the assets of the Debtor.

41.     The Purported Levies are dated March 21, 22, and 23, 2022. Some are directed to
Vista Equity Partners, LLC and some are directed to Robert Smith as Founder, Chairman, and
CEO of Vista Equity Partners, LLC. The Purported Levies identify the taxpayer as "Point
Investments, Ltd. as alter ego of Robert T. Brockman," or "Point Investments, Ltd. as nominee of
Robert T. Brockman." The Petitioners dispute that the Debtor is an alter ego or nominee of Mr.
Brockman.

42.     The Purported Levies provide special instruction of the property to be levied,
identifying: "Vista Equity Partners, LLC, which includes, but is not limited to the following
entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF
IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel),
L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I
(Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund Ill (Parallel), L.P.;
Vista Equity Partners Fund Ill (Parallel), L.P.; and VEPF Ill AIV (Cayman), L.P."

43.     Based on the special instructions found in the Purported Levies, it is not clear to the
Petitioners what specific property the IRS is seeking to levy. Nor is it clear to the Petitioners why
the Purported Levies were directed to Vista Equity Partners, LLC and Mr. Smith, as their particular
relation to funds in which the Debtors are invested is unclear (*e.g.*, they do not appear to be the
general partners of such funds and therefore it is unclear what legal basis they could have to possess

---

[13] Copies of the Purported Levies are attached as <u>Exhibit 4</u> to the Lavine Declaration.

AP0037

or control any of the Debtor's interests in the funds). Nevertheless, the Petitioners fear that individuals or entities associated with the Vista funds will deliver the Debtor's property to the IRS and that the IRS will issue additional purported levies against the Debtor's property.

## RELIEF REQUESTED

44.     The Petitioners respectfully request that the Court enter an order, substantially in the form of the attached Proposed Recognition Order,

- recognizing the Bermuda Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code;

- recognizing the Petitioners as the joint "foreign representatives" of the Debtor as defined in section 101(24) of the Bankruptcy Code;

- granting the Petitioners authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information on the assets and liabilities of the Debtor and (b) administer and realize any and all of the Debtor's assets within the territorial jurisdiction of the United States;

- staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or continuation of any action or proceeding concerning the Debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520;

- suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber or otherwise dispose of any of the Debtor's assets to the extent any such right has not been suspended under sections 362 and 1520(a) of the Bankruptcy Code; and

- granting such other and further relief as the Court deems just and proper.

45.     Currently, the Petitioners are not seeking to repatriate any of the Debtor's assets to Bermuda. The Petitioners may—to the extent necessary—return to this Court to seek enforcement of any orders entered by the Bermuda Court in connection with the Bermuda Proceeding or any other relief available to the Petitioner under chapter 15 of the Bankruptcy Code.[14]

---

[14] The Petitioners are filing, concurrently with this Verified Petition, a *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Motion for Provisional Relief"). The Motion for Provisional Relief requests that the Court enter an order, pursuant to 11 U.S.C.

AP0038

## BASIS FOR RELIEF REQUESTED

**A.** **The Petitioners Have Satisfied the Requirements for Recognition of the Bermuda Proceeding**

46.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, an order recognizing a "foreign proceeding" as a "foreign main proceeding" shall be entered if: (i) that proceeding falls within the definition of a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b) of the Bankruptcy Code; (ii) "the foreign representative applying for recognition is a person or body;" and (iii) the chapter 15 petition "meets the requirements of section 1515." *See In re ABC Learning Centres Ltd.*, 728 F.3d 301, 308 n.7 (3d Cir. 2013). Each of the elements of section 1517(a) have been satisfied in this case, as detailed below.

### i.     The Bermuda Proceeding is a "Foreign Proceeding"

47.     A proceeding in a foreign country qualifies as a "foreign proceeding" if it is: (i) a collective judicial or administrative proceeding relating to insolvency or the adjustment of debts; (ii) pending in a foreign country; (iii) under the supervision of a foreign court; and (iv) for the purpose of reorganizing or liquidating a debtor's assets or affairs. *See id*. Further, a "foreign court" is "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 101(23). Here, the Bermuda Proceeding meets all the criteria of a "foreign proceeding."

48.     *First,* the Bermuda Proceeding is a collective judicial administrative proceeding relating to insolvency or adjustments of debts. As set forth in the Zuill Declaration, the Bermuda

---

§§ 1519(a) and 1521(a)(7), staying execution against the Debtor's assets and applying section 362 of the Bankruptcy Code in respect of the Debtor and its property within the territorial jurisdiction of the United States until such time as the court rules on the Verified Petition. As set forth in the Motion for Provisional Relief, such provisional relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

-17-

Proceeding is governed by the Bermuda Companies Act and the Winding Up Rules, and its purpose is to wind up the affairs of the Debtor. Zuill Decl. ¶¶ 21, 26. As part of a judicial process overseen by the Bermuda Court, any person claiming to be a creditor (including future and contingent creditors) may prove their claims. *Id.* ¶ 22. In the event a proof of debt is rejected by the liquidators, the creditor may appeal to the Bermuda Court. *Id.* Liquidators (but not provisional liquidators) are obliged to realize the assets of the Debtor and apply them *pari passu* in satisfaction of the Debtor's admitted debts. *Id.* If there is a surplus of assets, the assets must be distributed amongst the Debtor's contributories in accordance with their rights and interests in the Debtor. *Id.*

49. *Second*, the Bermuda Proceeding is pending in Bermuda—a foreign country.

50. *Third*, in connection with the Bermuda Proceeding, the Bermuda Court retains the authority to confirm, reverse, or modify the acts or decisions of the liquidators, or enter any such other directions or orders as it deems just. *Id.* ¶ 19. Thus, the Debtor's assets are "subject to control or supervision by a foreign court." 11 U.S.C. § 101(23).

51. *Fourth*, under the Bermuda Companies Act, the Bermuda Proceeding has as its principal purpose the liquidation of the Debtor's assets. Indeed, the Petitioners are mandated—much like a trustee under the Bankruptcy Code—to take possession and control of the Debtor's property and assets, wherever situated, in order to maximize the value thereof, and those assets will ultimately be distributed to creditors and "contributories" (*i.e.*, equity holders) commensurate with Bermuda's statutory priority scheme. *See* Winding Up Order at 2; Zuill Decl. ¶ 22.

52. Further, the court is entitled to presume that the Bermuda proceeding "is a foreign proceeding" based on the submitted copy of the Winding Up Order, which is attached as <u>Exhibit 1</u> to the Petition. *See* 11 U.S.C. § 1516(a). In addition, multiple courts have recognized Bermuda insolvency proceedings under the Bermuda Companies Act 1981 as "foreign proceedings" in other

-18-

chapter 15 cases. *See e.g.*, *In re Capital Mgmt. of Bermuda*, *Ltd.*, No. 8:20-BK-08066 MGW

(Bankr. M.D.F.L. Jun. 15, 2021) (recognizing provisional liquidation in Bermuda as "foreign main

proceeding" under § 1517); *In re Digicel Group One Ltd.*, No. 1:20-BK-11207 (Bankr. S.D.N.Y.

Apr. 20, 2021), Dkt. No. 39 (same); *In re VL Assurance (Bermuda) Ltd.*, No. 1:21-BK-10682

(Bankr. S.D.N.Y., Sept. 10, 2021), Dkt. No. 22 (same).

53.    For these reasons, the Bermuda Proceeding qualifies as a "foreign proceeding."

*ii.    The Bermuda Proceeding is a "Foreign Main Proceeding" Because the Center of the Debtor's Main Interests Is in Bermuda*

54.    Under section 1502(4), a "foreign main proceeding" is a foreign proceeding that

is "pending in the country where the debtor has the center of its main interests." Although the

Bankruptcy Code does not explicitly define the factors used to determine the center of a debtor's

main interests, "in the absence of evidence to the contrary, the debtor's registered office . . . is

presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see also In re Irish*

*Bank Resolution Corp. Ltd.*, 2014 WL 99533792, *16 (Bankr. D. Del. 2014).

55.    Here, the Debtor's registered office is in Bermuda, and the Court therefore must

presume that Bermuda is the center of the Debtor's main interests.

56.    The following additional facts also support a finding that Bermuda is the center of

the Debtor's main interests:

- The Debtor, a Bermuda exempted company, is organized under the laws of Bermuda;

- As a private fund, the Debtor is registered with, and regulated by, the Bermuda Monetary Authority;

- The Debtor's books and records are held primarily in Bermuda;

- Mathew Clingerman, one of the Joint Provisional Liquidators authorized to manage the affairs of the Debtor, resides in Bermuda;

AP0041

- ▪ The Petitioners have current physical possession of certain of the Debtor's assets in Bermuda.

- ▪ Based on the Petitioners' investigation to date, the Petitioners believe that more of the Debtor's creditors are located in Bermuda than in any other jurisdiction.

- ▪ Immediately prior to the appointment of the Joint Provisional Liquidators, PricewaterhouseCoopers Ltd. (a Bermuda limited company), served as the Debtor's auditors and performed its work in respect of the Debtor from Bermuda. Since their appointment, the Joint Provisional Liquidators have engaged in correspondence with PricewaterhouseCoopers Ltd. requesting them to provide copies of the Debtors books and records and other related information that continue to be in their possession;

- ▪ Immediately prior to the appointment of the Joint Provisional Liquidators, Krypton Fund Services (Bermuda) Ltd. (a Bermuda limited company), served as the Debtor's fund administrator and Krypton Fund Services (Bermuda) Ltd. performed its work in respect of the Debtor from Bermuda. Since their appointment, the Joint Provisional Liquidators have engaged in correspondence with Krypton Fund Services (Bermuda) Ltd. requesting them to provide copies of the Debtors books and records and other related information that continue to be in their possession;

- ▪ Immediately prior to the appointment of the Joint Provisional Liquidators, Alexander Management Ltd. (a Bermuda limited company), served as the Debtor's corporate secretary;

- ▪ Upon information and belief, most or all the Debtor's board meetings in 2020 were held in Bermuda, or held by telephone conferences emanating from offices in Bermuda (no board meetings were held in 2021); and

- ▪ One of the Debtor's directors (prior and continuing after the appointment of the Joint Provisional Liquidators), James Watlington, is a Bermuda resident and, upon information and belief, conducted his work in respect of the Debtor from Bermuda.

57.     Because the Debtor has its center of main interests in Bermuda, the Bermuda Proceeding should be recognized as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

AP0042

### iii.    The Petitioners are the "Foreign Representatives"

58.     Section 1517(a)(2) requires that "the foreign representative applying for recognition [be] a person or body." *See* 11 U.S.C. § 1517(a)(2).[15] A "foreign representative" is "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24); s*ee also Ad Hoc Grp. Of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012) *aff'd sub nom.* 701 F.3d 1031 (5th Cir. 2012); *In re PT Bakrie Telecom Tbk*, 601 B.R. 707 (Bankr. S.D.N.Y. 2019) ("the requirement that a foreign representative be authorized in a foreign proceeding is not an onerous one.").

59.     Each of the Petitioners is an individual (*i.e.*, a natural person). Further, pursuant to the Winding Up Order, the Petitioners were appointed by the Bermuda Court to act as the Joint Provisional Liquidators for the Debtor, and by virtue of this appointment, the Petitioners are responsible for, among other things, protecting the Debtor's assets. *See* Winding Up Order at 2. The Winding Up Order also expressly authorizes the Petitioners to "commence such actions as may be necessary to have their appointment recognised in jurisdictions outside of Bermuda including for the avoidance of doubt the United States . . . ." Winding Up Order at 3; *see also* Zuill Decl. ¶ 26.

60.     For all these reasons, the Petitioners are persons qualifying as "foreign representatives" under sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

---

[15] A "person" includes individuals, partnerships, and corporations. 11 U.S.C. § 101(41).

AP0043

### iv. The Verified Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code

61.    The final prerequisite to recognition under section 1517(a) is that the petition must satisfy the following procedural requirements of section 1515: (a) the foreign representative must file a petition for recognition; (b) the petition for recognition must be accompanied by either (i) "a certified copy of the decision commencing [the] foreign proceeding and appointing the foreign representative," (ii) "a certificate from the foreign court affirming the existence of [the] foreign proceeding and of the appointment of the foreign representative," or (iii) if such evidence is unavailable, "any other evidence acceptable to the Court" demonstrating the existence of the foreign proceeding and "appointment of the foreign representative"; and (c) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." *See* 11 U.S.C. §§ 1515(b)-(c).[16]

62.    Here, this case was commenced by the filing of the Petition. The Petition is accompanied by a copy of the Winding Up Order bearing the seal of the Bermuda Court, which demonstrates the commencement of the Bermuda Proceeding and the appointment of the Petitioners as the Debtor's Joint Provisional Liquidators. The Winding Up Order therefore qualifies as evidence of "the existence of [the] foreign proceeding and of the appointment of the foreign representative."[17] 11 U.S.C. § 1515(b)(3).  In addition, attached as Exhibit 3 to the Petition is *Petitioners' Statement Pursuant to Section 1515(c) of the Bankruptcy Code*, which identifies the

---

[16] Section 1515(d) requires that documents submitted in connection with the requirements under section 1515(b) be translated into English. Here, all documents submitted in support of the Petition are already in English; thus, the Petitioner submits that section 1515(d) is satisfied.

[17] Alternatively, the Petitioners submit that the October 29 Order constitutes "a certificate from the foreign court affirming the existence of [the Bermuda Proceeding] and of the appointment of the [Petitioner]." 11 U.S.C. § 1515(b)(2).

AP0044

Bermuda Proceeding as the only foreign proceeding with respect to the Debtor that is known to the Petitioners.

63. Accordingly, all of the procedural requirements of section 1515 of the Bankruptcy Code have been met.

**B.** **Public Policy and Further Relief**

   **i.** ***Recognition of the Bermuda Proceeding is Not Contrary to Public Policy***

64. Pursuant to section 1506 of the Bankruptcy Code, "[n]othing in [] chapter [15] prevents the court from refusing to take an action governed by [] chapter [15] if the action would be manifestly contrary to the public policy of the United States."

65. Here, recognition of the Bermuda Proceeding as a foreign main proceeding is not contrary to public policy. Indeed, multiple courts in the United States have determined that foreign proceedings in Bermuda are entitled to chapter 15 recognition and that Bermudian law is entitled to comity. *See, e.g., In re Millennium Global Emerging Cr. Master Fund Ltd.*, 458 B.R. 63 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 88 (S.D.N.Y. 2012); *In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699 (S.D.N.Y. 2002) (after 8-day trial and searching inquiry into Bermuda law and insolvency procedures, the Bankruptcy Court recognized a Bermuda insolvency proceeding and injunction issued by the Bermuda court; the order was affirmed by the District Court).

66. Furthermore, recognition would serve many of the important federal interests for which chapter 15 was enacted, including promoting: (i) cooperation between courts in the United States and foreign courts in cross-border cases; (ii) the "fair and efficient administration of cross-border insolvencies"; and (iii) the "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a). For example, recognition of the Bermuda Proceeding would engender cooperation between this Court and the Bermuda Court overseeing the Debtor's winding up.

-23-

Recognition would also prevent potential piecemeal administration of the Debtor's assets by creating a clear framework for resolution of disputes as to the Debtor's assets (*i.e.*, the cross-border insolvency law set forth in chapter 15).

67.  Finally, recognition would protect and maximize the value of the Debtor's assets by, among other things, applying the automatic stay to the Debtor's U.S. assets under section 1520(a)(1), and thus ensuring that such assets are preserved for the benefit of all the Debtor's creditors and contributories, whether located in the United States or otherwise. Indeed, as the IRS acknowledges in its Internal Revenue Manual, the automatic stay applies to "all seizure and levy action directed to property of the estate," which is not considered an exercise of a police and regulatory power when such action is directed to collecting on a civil tax liability. I.R.M. § 5.17.8.10. For the avoidance of doubt, recognition would not provide, and the Petitioners do not seek, a stay of any exercise of a police or regulatory act of a governmental unit against the Debtor or the property of the Debtor, nor would recognition stay the criminal proceeding against Robert T. Brockman pending before the District Court for the Southern District of Texas or the civil asset forfeiture proceeding pending in the District Court for the District of Colorado.

### ii.  *The Petitioner is Entitled to Relief Under Section 1520*

68.  Upon recognition of the Bermuda Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code makes certain relief available to the Petitioner in respect of the Debtor's property within the territorial jurisdiction of the United States. Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by the Petitioner to obtain such relief. *See In re Catalyst Paper Corp.*, No. 16-12419 (CCS), 2017 WL 5479405, at *2 (Bankr. D. Del. Jan. 20, 2017) (recognizing relief pursuant to section 1520).

AP0046

### iii.    Additional Relief Under Section 1521 is Necessary and Appropriate

69.    Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" to a foreign representative "where necessary to effectuate the purpose of [] chapter [15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a).

70.    In this case, the Petitioners seek forms of additional relief that are specifically enumerated in 1521(a) of the Bankruptcy Code, including: (i) a stay of the commencement or continuation of any action or proceeding concerning the Debtor's assets, rights, obligations, or liabilities under section 1521(a)(1); (ii) a stay of execution against the Debtor's assets under section 1521(a)(2); and (iii) the suspension of any other party's right to transfer, encumber, or otherwise dispose of any of the Debtor's assets under section 1521(a)(3), in each case to the extent any such actions would not otherwise be stayed or suspended upon recognition pursuant to section 1520(a). In addition, the Petitioners request that they be empowered to examine witnesses and take evidence or delivery of information concerning the Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4); and (ii) entrusted with the administration and realization of the Debtor's assets within the territorial jurisdiction of the United States pursuant to section 1521(a)(5).

71.    The foregoing additional relief is essential to the Petitioners' ability to maximize the Debtor's assets. In particular, by suspending any collection activities against the Debtor not otherwise covered by section 1520(a) of the Bankruptcy Code, the Court will ensure that the Debtor's assets are protected, and the status quo maintained, pending a thorough investigation into the Debtor's assets and affairs. Further, by granting the Petitioners the right to examine witnesses and take evidence, the Court will supply the Petitioners with the necessary tools to accomplish their investigation. And finally, by entrusting the Petitioners with the right to administer and realize

the Debtor's U.S. assets, the Court will ensure that the Debtor's distributable assets are not only identified, but also maintained and (where appropriate) monetized for the benefit of the Debtor's stakeholders, consistent with powers granted to the Petitioners by the Bermuda Court.

72.     For all these reasons, the Court should grant the Petitioners the additional relief requested herein pursuant to sections 1521(a) of the Bankruptcy Code.

## RESERVATION

73.     The Petitioners are diligently investigating the Debtor's finances—including any potential claims or competing interests in the Debtor's assets. Given the early stage of the Joint Provisional Liquidators' investigation and of the Bermuda Proceeding, no statement or omission in this Verified Petition or any related filings—including the Zuill Declaration—should be construed as: (i) an admission with respect to the nature, extent, scope, or validity of any potential claim against the Debtor or its assets, or (ii) a full and complete statement of the facts and circumstances relevant to this chapter 15 proceeding. Further, the Petitioners reserve all rights they may have to amend, modify, or file supplemental papers in connection with this Verified Petition and the requested relief to the extent that they deem it appropriate.

74.     In addition, the Petitioners reserve their right to return to this Court to seek recognition and enforcement of any orders entered by the Bermuda Court in connection with the Bermuda Proceeding or to seek any other or additional relief available to the Petitioner pursuant chapter 15 of the Bankruptcy Code, including under section 1521.

## NOTICE

75.     Notice of this Verified Petition has been provided to the parties listed on Exhibit B in accordance with the terms set forth in the Petitioners' *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(M) and (Q) and 9007 for Order Scheduling Recognition Hearing and*

AP0048

*Approving Form and Manner of Notice* filed concurrently herewith. The Petitioners submit that such notice is proper and that no other or further notice need be provided.

## NO PRIOR REQUEST

76.     No prior motion or application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Petitioners respectfully request that the Court enter an order, substantially in the form of the attached Proposed Recognition Order: (i) recognizing the Bermuda Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioners as the "foreign representatives" of the Debtor as defined in section 101(24) of the Bankruptcy Code; (iii) granting the Petitioners authority— pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtor's assets, affairs, rights, obligations, and liabilities and (b) administer and realize any and all of the Debtor's assets within the territorial jurisdiction of the United States; (iv) staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or continuation of any action or proceeding concerning the Debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520; and (v) suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber, or otherwise dispose of any of the Debtor's assets to the extent any such right has not been suspended under sections 1520(a) of the Bankruptcy Code; and (vi) granting such other and further relief as the Court deems just and proper.

AP0049

Dated: March 29, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (*Pro Hac Vice* Forthcoming)
Evelyn Baltodano Sheehan (*Pro Hac Vice* Forthcoming)
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (*Pro Hac Vice* Forthcoming)
Victor S. Leung (*Pro Hac Vice* Forthcoming)
800 Third Avenue
6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0050

# JOINT VERIFCATION
## OF ANDREW CHILDE AND RICHARDLEWIS OF FFP LIMITED, AND MATHEW CLINGERMAN OF KRYS & ASSOCIATES (BERMUDA) LTD., AS JOINT PROVISIONAL LIQUIDATORS OF POINT INVESTMENTS LTD., IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND (III) RELATED RELIEF UNDER CHAPTER 15

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys &
Associates (Bermuda) Ltd., in their capacity as Joint Provisional Liquidators of Point Investments
Ltd., pursuant to 28 U.S.C. § 1746, hereby verify under penalty of perjury under the laws of the
United States of America that the following is true and correct:

1.      We, Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman
of Krys & Associates (Bermuda) Ltd., in our capacity as the Joint Provisional Liquidators, have
full authority to verify the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II)
Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* in respect of
Point Investments, Ltd.

2.      We have read the Verified Petition and verify that, to the best of our knowledge,
information and belief, the factual statements contained therein are true and correct.

AP0051

Executed March 29, 2022
in Park City, Utah.

_____

Andrew Childe, *in his capacity as Joint
Provisional Liquidator and putative foreign
representative of Point Investments, Ltd.*

*[Signatures continued on following page.]*

AP0052

Executed March 29, 2022
in George Town, Cayman Islands.

_____

Richard Lewis, *in his capacity as Joint*
*Provisional Liquidator and putative foreign*
*representative of Point Investments, Ltd.*

*[Signatures continued on following page.]*

-3-

Executed March 29, 2022
in Hamilton, Bermuda.

_____
Mathew Clingerman, *in his capacity as Joint
Provisional Liquidator and putative foreign
representative of Point Investments, Ltd.*

-4-

AP0054

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceedings. | |

## DECLARATION OF LILLA ZUILL PURSUANT TO 28 U.S.C. § 1746

I, Lilla Zuill, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am an attorney duly admitted to practice in Bermuda and I am the Managing Partner of Harneys (Bermuda) Limited, a Bermuda legal practice located at Rose Cottage, 18 Parliament Street, Hamilton HM 12, Bermuda. I am serving as Bermuda counsel to Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly appointed Joint Provisional Liquidators (in such capacity, the "JPLs") for Point Investments, Ltd. (the "Debtor") in respect of the winding-up proceedings commenced pursuant to section 161(g) of the Bermuda Companies Act 1981 (As amended) (the "Bermuda Companies Act") and the Companies (Winding Up) Rules 1982 (the "Winding Up Rules"), and pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding").

2. This declaration (the "Declaration") includes statements of my view of Bermuda law or statements of fact. Where the matters stated in this Declaration are statements regarding

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

1

Bermuda law, such statements represent my view of Bermuda law as a member of the Bermuda

Bar Association. Where the matters stated in this Declaration are statements of fact that are within

my personal knowledge, they are true. Where the matters stated in this Declaration that are

statements of fact are not within my personal knowledge, they are derived, as appropriate, from

documents maintained by the Registrar of Companies of Bermuda, from the records maintained

by me as a result of advising the Debtor in connection with the Bermuda Proceeding, and/or from

information supplied to me by or on behalf of the Debtor and are true to the best of my knowledge,

information, and belief. I am over 18 years of age, and if I were called upon to testify, I could and

would testify competently to the facts set forth herein.

3. I submit this Declaration in support of the *Verified Petition for (I) Recognition of
Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief
Under Chapter 15* and the *Motion for Provisional Relief Under Section 1519 of the Bankruptcy
Code*, each filed contemporaneously herewith.

## **PERSONAL BACKGROUND AND QUALIFICATIONS**

4. I was admitted to the Bermuda Bar in 2013. I graduated with a B.A. (Hons) from

Andrews University (History with an Arts emphasis) in 1993 and completed my postgraduate

training in law, with distinction, at BPP University College at Holborn, London, United Kingdom

in 2011. I am a member in good standing of the Bermuda Bar Association.

5. I regularly appear as counsel before the Bermuda Court and have considerable

experience in matters related to Bermuda insolvency and liquidation law. Numerous cases in which

I have appeared are reported in the Bermuda law reports. I am a member of the International

Association of Restructuring, Insolvency & Bankruptcy Professionals (INSOL) and the

Restructuring and Insolvency Specialists Association of Bermuda (RISA Bermuda) and I am

contributing author of Offshore Commercial Law in Bermuda, Second Edition (*Wildy, Simmonds*

2

& Hill Publishing) and Bermuda Commercial Law (*Sweet & Maxwell Thomson Reuters*).

6.      I have advised companies, creditors, and liquidators on a large number of winding-up proceedings and corporate cross-border restructurings, including obtaining the Bermuda Court's sanction for a complex debt restructuring for China Singyes Solar Technologies Holdings Limited, acting for the company and provisional liquidators (appointed for restructuring purposes) in the matter of Z-Obee Holdings Limited, and acting for a creditor in the winding-up proceedings of Up Energy Development Group Limited, to name a few.

## STATEMENT OF BERMUDA LAW AND PRACTICE

### A.      Sources of Bermuda Law

7.      Bermuda is a British Overseas Territory. As such, it is a self-governing but dependent territory of the United Kingdom. English law was introduced to Bermuda at the date of its settlement in 1612. The system of law in Bermuda is therefore founded on the English legal system, although there is a distinct body of Bermudian statutory law and Bermudian case law that has developed over the past 400 years.

8.      In particular, section 15 of the Supreme Court Act 1905 provides that the systems of law administered in Bermuda consist of (a) the common law of England, (b) the doctrines of equity of England, and (c) the Acts of the Parliament of England of general application, which were in force in England at the date of Bermuda's settlement on July 11, 1612, except where those laws have been altered by (1) United Kingdom legislation, since 1612, expressly made applicable to Bermuda, (2) local Bermuda legislation, and (3) expansion or restriction of Bermuda common law since the year 1612.

9.      Law and equity are administered concurrently, and in any conflict, the rules of equity generally prevail.

AP0057

B.     **The Bermuda Court System**

10.     The Bermuda Court is the court of first instance in Bermuda with unlimited jurisdiction for all civil and commercial disputes with a value in excess of BD $25,000. The Bermuda Court determines proceedings (above the BD $25,000 threshold) relating to the affairs of companies incorporated in Bermuda under the Bermuda Companies Act.  Relatedly, the Bermuda Court is also generally responsible for overseeing compulsory liquidation proceedings in Bermuda.

11.     The Court of Appeal for Bermuda (the "Court of Appeal") is the first-tier appellate court in Bermuda, made up of three judges who sit in quarterly sessions.  It entertains appeals from the Bermuda Court.

12.     Appeals against decisions of the Court of Appeal are entertained by the Judicial Committee of the Privy Council (the "Privy Council"), which, although based in the United Kingdom, is Bermuda's highest appellate court. The Privy Council is ordinarily made up of a five-judge tribunal that sits in London. Its composition consists of members of the Supreme Court of the United Kingdom (formerly, the House of Lords, and the highest appellate court for England and Wales, Scotland, and Northern Ireland), as well as other senior judges from the Commonwealth jurisdictions.

C.     **The Common Law Principle of Precedent Is Applicable in Bermuda**

13.     Bermuda law, following English law in this regard, is based upon the common law principle of precedent.  Under the doctrine of precedent, certain judicial decisions are "binding" on other judges, and their reasoning or "*ratio decidendi*" must be followed and applied, unless that reasoning is properly capable of being distinguished. A judge of the Bermuda Court is bound to follow and apply any relevant decision of the Court of Appeal and any relevant decision of the Privy Council. The Court of Appeal, in turn, is bound by any relevant decision of the Privy

4

Council. Previous relevant decisions of the Privy Council are binding on the Privy Council itself, except in exceptional circumstances. The Privy Council can depart from a previous decision where it is right to do so, when, for example, the previous decision is thought to be wrong, there have been changes or developments to the law, or the previous decision is thought to have led to results that were unjust or contrary to public policy.

14.     Under the doctrine of precedent, certain judicial decisions, or parts thereof (such as "ex parte" rulings or "obiter dicta"), may be "persuasive," and, depending on the facts of the case, the seniority and experience of the tribunal, and the quality of their reasoning, should ordinarily be followed and applied, unless they are plainly wrong or are properly capable of being distinguished. In particular, decisions of the Bermuda Court are persuasive and should generally be followed by other judges of the Bermuda Court.

**D.     Bermuda Liquidation Proceedings**

15.     A court-supervised, just and equitable winding-up proceeding—such as the Debtor's Bermuda Proceeding—is commenced by the filing of a petition with the Bermuda Court seeking a winding-up order. A petition for a winding-up order may be filed by the debtor company itself or any of its creditors or "contributories" (*i.e.*, equity holders). If granted, the winding-up order results in the formal liquidation of the company, which liquidation is conducted by court-appointed liquidators under the supervision of the Bermuda Court.

16.     Pursuant to section 167(4) of the Bermuda Companies Act, the making of a winding-up order also brings into effect an automatic statutory stay of actions and proceedings against the company, which I understand is similar to the automatic stay granted upon entry of the order for relief under the United States Bankruptcy Code. No provision of Bermuda law limits the application of this statutory stay to the territory of Bermuda. However, the practical implementation of the stay outside of Bermuda requires the liquidation to be recognised

5

extraterritorially. In addition, the filing of a winding-up petition also brings into effect a statutory provision (section 166(2) of the Bermuda Companies Act) that voids any post-petition attachments, sequestration, distress or execution against the company.

17. The Bermuda Companies Act, as supplemented by common law, governs the liquidation of companies in Bermuda and, along with the Winding Up Rules, provides that a Bermuda Court may appoint one or more liquidators or provisional liquidators following the presentation of a winding-up petition, and sets forth the permitted scope and powers of such liquidators. Typically, provisional liquidators are appointed at or around the same time the winding-up petition is filed, and liquidators (who are often the same individuals as the provisional liquidators) are appointed by the Bermuda Court once a winding-up order has been made and the first meeting of creditors and contributories held.[2]

18. Liquidators are officers of the Bermuda Court and are subject to the control and supervision of that court. Liquidators are also fiduciaries and are required to be independent from the management of the company, as well as independent from the company's creditors and contributories. Liquidators are required to act in an evenhanded fashion between creditors or groups of creditors (*i.e.*, for the benefit of the company's creditor body as a whole and not just a single creditor or group of creditors) and contributories, in accordance with the terms of the order appointing them.

19. Section 176(5) of the Bermuda Companies Act provides that any person dissatisfied by any act, omission, or decision of a liquidator may apply to the Bermuda Court, and the court may confirm, reverse, or modify the act or decision complained of, and may give such other

---

[2] Unless otherwise specified, any reference herein to "liquidators" is intended to include both liquidators and provisional liquidators where the company has been made the subject of a winding-up order.

AP0060

directions and make such order as the court thinks just. The Bermuda Court therefore has full oversight over the liquidators' exercise of their powers. Liquidators remain in office until they are released by the Bermuda Court following the conclusion of the winding up (*see* Bermuda Companies Act § 178) or they resign or are removed by the Bermuda Court for cause shown (*see* Bermuda Companies Act § 173(1)).

20.     Under the Bermuda Companies Act, liquidators have broad power to manage and wind up the affairs of the company, including the powers pursuant to section 175(1) of the Companies Act (both with (s. 175(1)) and without sanction of the Bermuda Court or committee of inspection (s. 175(2)) ) "to bring or defend any action or other legal proceeding in the name and on behalf of the company," "to carry on the business of the company so far as may be necessary for the beneficial winding up thereof," "to appoint an attorney to assist him in the performance of his duties," "to sell the real and personal property of the company," "to do all acts . . . in the name and on behalf of the company," and "to do all such other things as may be necessary for winding up the affairs of the company and distributing the assets." (Bermuda Companies Act, Part XII §§ 175(1)(a)-(c), (2)(a)-(b), (h), 207-08(1), 224, 226(1)(b).) Whilst section 175 of the Companies Act prescribes extensive powers that liquidators can exercise, section 170 of the Companies Act grants the Bermuda Court discretion, as reflected in any order appointing the liquidators, to expand or limit the powers of the liquidators (including provisional liquidators).[3]

21.     Under the Bermuda Companies Act and Winding Up Rules, the court-supervised liquidation of a company—such as the just and equitable winding-up of the Debtor—involves a collective judicial proceeding concerning the adjustment and enforcement of debts for the benefit

---

[3] In this case, a non-exhaustive list of the powers of the JPLs is set forth in the Winding Up Order (defined below), which is attached as an Exhibit 1 to the *Chapter 15 Petition for Recognition of a Foreign Proceeding*.

AP0061

of the general body of creditors and contributories. After a winding-up order is made, the provisional liquidators are obliged to call the first meetings of creditors and contributories, at which time a vote is taken for the appointment of a permanent liquidator, which is made by further application to the Bermuda Court. A committee of inspection made up of certain creditors and/or contributories may also be appointed to work alongside the liquidators. Unless the Bermuda Court otherwise directs, the meetings of creditors and contributories under section 171 of the Bermuda Companies Act shall be held within three months after the date of the winding-up order. The dates of such meetings shall be fixed by the provisional liquidators who shall give notice in the prescribed form stating the time, date, and place of the meeting to the creditors and contributories.

22.     Under Bermuda law, the liquidators will call for proofs of debt and any person claiming to be a creditor (including future and contingent creditors) may prove. The liquidators must notify all known creditors and must advertise notice of a date by which debts must be lodged, which shall be not less than 14 days from the date of notice. In the event a proof of debt is rejected by the liquidators, the creditor may appeal to the Bermuda Court. Any creditor who fails to lodge its proof of debt is excluded from any distribution (*see* Rule 73 of the Winding Up Rules). Liquidators (but not provisional liquidators) are obliged to realize the assets of the company and apply them *pari passu* in satisfaction of the company's admitted debts. Where there is a surplus of assets, the assets must be distributed amongst the contributories in accordance with their rights and interests in the company (*see* Bermuda Companies Act § 225).

23.     Once all assets are realized and distributions made, the liquidators must notify all creditors who proved and all contributories of their intention to apply for release. Any creditor or contributory may attend and address the Bermuda Court on whether the liquidators ought to be released (*see* Bermuda Companies Act § 178 and Rule 150 of the Winding Up Rules).

AP0062

24.     Under Bermuda law, any order for release and discharge is binding on all creditors and contributories.

**E.       The Bermuda Proceeding and the JPLs' Authority to Commence the Chapter 15 Case**

25.     Consistent with the law and rules set out above, the Debtor is the subject of a winding-up proceeding commenced pursuant to section 161(g) of the Bermuda Companies Act and the Winding Up Rules (*i.e.*, the Bermuda Proceeding). Specifically, on October 29, 2021, the Bermuda Court entered an order appointing Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., as the Joint Provisional Liquidators of the Debtor (*i.e.*, the JPLs), thus placing the Debtor in provisional liquidation. Then, on February 18, 2022, the Bermuda Court issued a further order requiring the Debtor to "be wound up under the provisions of the Companies Act 1981 (Act)", providing for the JPLs to continue with their appointment, and granting additional relief (the "Winding Up Order"). As a result of the Winding Up Order, the Debtor's provisional liquidation was converted to a liquidation.

26.     The Bermuda Proceeding, which is currently pending before the Bermuda Court, is a collective judicial proceeding relating to insolvency or the adjustment of debts for the purpose of liquidating the Debtor's assets. As a matter of Bermuda law, the JPLs are authorized to commence this Chapter 15 proceeding without further approval of the Bermuda Court. Nonetheless, the Winding Up Order expressly provides that the JPLs shall be empowered to "commence such actions as may be necessary to have their appointment recognised in jurisdictions outside of Bermuda including for the avoidance of doubt the United States . . . ."

AP0063

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 29th day of March 2022 in
Hamilton, Bermuda

_____
Lilla Zuill

AP0064

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceedings. | |

### DECLARATION OF ADAM M. LAVINE PURSUANT TO 28 U.S.C. § 1746

I, Adam M. Lavine, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1.        I am a Partner with Kobre & Kim LLP and an attorney admitted to practice law in New York.  Kobre & Kim LLP serves as counsel to Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators for Point Investments, Ltd. (the "Debtor") in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300.

2.        I submit this declaration in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15*.

3.        Attached hereto as Exhibit 1 is a true and correct copy of the Judgment of the Bermuda Court, dated November 17, 2021, *In the matter of Point Investments, Limited*, 2020: No. 300, setting forth the reasons for the appointment of the Joint Provisional Liquidators.

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0065

4.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Order of the Bermuda Court, dated October 29, 2021, *In the matter of Point Investments, Limited*, 2020: No. 300, appointing the Petitioners as the Joint Provisional Liquidators of the Debtor, and placing the Debtor in provisional liquidation.

5.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the indictment filed on October 1, 2020, in the United States District Court for the Northern District of California against Robert T. Brockman, in *United States v. Robert T. Brockman*, Case No. 3:20-CR-371 (WHA) (N.D. Cal. October 1, 2020), Dkt. No. 1.

6.      Attached hereto as <u>Exhibit 4</u> are true and correct copies of the purported notices of levy, dated March 21, 2022, March 22, 2022, and March 23, 2022, directed to Vista Equity Partners, LLC and Robert Smith (as Founder, Chairman, and CEO of Vista Equity Partners, LLC).[2]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 29, 2022
New York, New York

Adam M. Lavine

---

[2] Certain personally identifiable information in Exhibit 4 has been redacted in accordance with Rule 9037 of the Federal Rules of Bankruptcy Procedure and Local Rule 9037-1.

AP0066

**Exhibit 1**

AP0067



# In The Supreme Court of Bermuda

## CIVIL JURISDICTION
## COMMERCIAL COURT
## COMPANIES ACT (WINDING UP)
## 2020: No. 300

BETWEEN:

### SPANISH STEPS HOLDINGS LTD.

**Petitioner**

- and -

### POINT INVESTMENTS LTD.

**Respondent**

---

| | |
|---|---|
| **Before:** | **Hon. Chief Justice Hargun** |
| **Representation:** | **Mr. Keith Robinson of Carey Olsen Bermuda Limited for the Petitioner** |
| | **Mr. Mark Diel, Ms. Katie Tornari and Mr. Christopher Snell of Marshall Diel & Myers Limited for the Respondent** |

**Date of Hearing: 29 October 2021**          **Date of Judgment: 17 November 2021**

1

AP0068

## JUDGMENT

### Hargun CJ

### Introduction

1. At the conclusion of the hearing on 29 October 2021 the Court ordered that Andrew Childe and Richard Lewis of FFP Limited, Cayman Islands and Mathew Clingerman of Krys Global, Bermuda be appointed as Joint Provisional Liquidators ("**JPLs**") of Point Investments, Ltd ("**the Respondent**") and that the powers of JPLs shall not be limited, pursuant to section 170(3) of the Companies Act 1981 ("**the Act**").

2. This Judgment sets out the Court's reasons for the appointment of JPLs and also deals with the Respondent's application seeking, *inter alia*, a validation order pursuant to section 166(1) of the Act.

3. In support of these applications the Petitioner relied upon three affidavits of Kiernan Jane Bell, a former director of the Petitioner, and three affidavits of Peter Goddard, a director of BCT Directors Limited, which is now the sole director of the Petitioner. The Respondent relied upon seven affidavits of James Alexander Fortescue Watlington, a director of the Respondent.

### Background

4. The background to these winding up proceedings is helpfully set out in the written submissions prepared by Mr. Robinson on behalf of the Petitioner.

5. The Petitioner is ultimately wholly owned by the trustee of the A. Eugene Brockman Charitable Trust ("**the Trust**"). While the Respondent commenced its existence as a BVI company, it became a Bermuda company on 30 November 2009. The Respondent is thus a corporate investment vehicle for the Petitioner and ultimately the Trust. It continues to

2

AP0069

hold at the date hereof extremely valuable assets (in the region of US$1.8 billion) the vast majority of which are represented by investments in Cayman Islands funds.

6.  The share structure of the Company is unusual and means that the Petitioner, while holder of all of the economic interest in the Respondent (save for US$100) represented by 4,900,000 common shares of par value US$0.001, has no right to vote its shares. The holder of the single "Manager Share" with par value of US$100 has all of the voting power (bye-law 4(1)).

7.  The Trust has been embroiled in extensive litigation in Bermuda and the United Kingdom since 2018. The beneficiaries of the Trust are certain members of the Brockman family, including Robert Brockman, and charity.

8.  The trustee of the Trust is BCT Limited ("**BCT**" or "**the Trustee**") which is a controlled subsidiary of Maples FS Limited. BCT was appointed as trustee of the Trust in place of Medlands PCT Limited ("**Medlands**") by Order of the Court of Appeal dated 2 February 2021 with its appointment to take effect on such date and on such terms as Justice Subair Williams was to appoint. Justice Subair Williams, by Order dated 26 March 2021, appointed 1 April 2021 as the date on which BCT would commence its trusteeship of the Trust. While BCT is a Cayman Islands company, it has irrevocably submitted to the jurisdiction of this Court with respect to the administration of the Trust.

9.  The Petition was presented on 16 September 2020 at which point in time the shares of the Petitioner were ultimately held by Medlands as trustee of the Trust and the Board of the Petitioner was made up of Medlands' appointees. Medlands had also been appointed by Order of the Supreme Court dated 19 December 2019. Upon BCT's appointment as trustee, the Board of the Petitioner was changed and is now made up of BCT's nominees.

10. Medlands was appointed as trustee in place of St Johns Trust Company Limited ("**SJTC**") which had been in office since 1995. By Order dated 19 December 2019 Subair Williams J declared that SJTC had not been properly appointed as trustee of the Trust and rather had at all material times been a trustee *de son tort*.

AP0070

11. Prior to 28 September 2018, Mr. Evatt Tamine had been a director of SJTC together with Mr. James Gilbert. Mr. Tamine was also, until 28 September 2018, a director of the Respondent. On that date, Mr Tamine resigned, *inter alia* , from these directorships. Mr. Tamine had been a director of SJTC from 2010 until 28 September 2018 and the sole director of SJTC between 2013 and 23 June 2017.

12. While Mr. Tamine had resigned his directorship of SJTC, he had not relinquished control of the shareholding of SJTC that was held via a Nevis company called Cabarita. In events which have been examined in the Judgment of this Court dated 26 March 2020 (2019 No. 447), Mr. Tamine used his ultimate control of SJTC to appoint Mr. James Watlington and Mr. Glenn Ferguson as directors of SJTC. Messrs. Watlington, and Ferguson remain in this position today.

13. The Petitioner and BCT are pursuing proceedings in this Court against Mr. Tamine and his associated company, Tangarra Consultants Limited (2018 No. 300), for the return of approximately US$28 million which it is alleged to have been taken wrongfully by Mr Tamine from the Trust while he had control over SJTC. Mr. Tamine has denied any wrongdoing in this regard.

14. SJTC unsuccessfully appealed the order of 19 December 2019 to the Court of Appeal. It was in these Court of Appeal proceedings in which BCT was appointed as an independent fiduciary to take over the trusteeship. The Court of Appeal has dismissed SJTC's appeal with reasons which are awaited. Mr. Tamine intervened in the Court of Appeal proceedings and supported SJTC's (unsuccessful) appeal.

15. SJTC has filed an application seeking leave to appeal to the Privy Council. Accordingly, the present position is that whilst Mr. Watlington and Mr. Ferguson are continuing with SJTC's proposed appeal (in which Marshall Diel & Myers Limited ("**MDM**") are SJTC's counsel) by which they seek to remove BCT as trustee of the Trust, they also remain the sole directors of the Company and thus control one of the Trust's most valuable assets.

16. Mr. Watlington and Mr. Ferguson also owe their position as directors of the Respondent to Mr. Tamine, mirroring the position with SJTC. The holder of the Manager Share in the

4

Respondent is another Nevis company, Point Investments LLC ("**PI LLC**"). The shares of PI LLC are held by the Point Purpose Trust the trustee of which the Petitioner understands to be or to be controlled by Mr. Tamine.

17. Mr. Tamine has denied in correspondence that the Manager Share is held ultimately and beneficially for the Trust but does accept that the Respondent is an asset of the Trust. In a memorandum sent by Mr. Tamine, in his capacity as a director of the Respondent, to PwC dated 13 August 2017 Mr. Tamine advised PwC that "*Point Investments Limited ... is a closely held investment vehicle for Spanish Steps Holdings Ltd, which in turn is an asset and investment holding vehicle for the A. Eugene Brockman Charitable Trust.*"

18. Mr. Tamine is presently a co-operating witness with the United States Department of Justice in respect of the prosecution of one of the beneficiaries of the Trust, Mr. Robert Brockman. It appears that Mr. Tamine has received immunity from prosecution by the United States' authorities.

19. The directors of the Respondent have made it clear in the affidavit evidence filed by Mr. Watlington that they consider that it is their duty to remain in office so that they, rather than the JPLs as officers of the Court, can deal with any claim, which has yet to be brought, but which may be brought by the United States authorities against the Respondent.

**The Petition**

20. The winding up Petition in this matter was presented by the Petitioner on 16 September 2020. The Court should note that there is an outstanding application filed by the Respondent on 11 August 2021 seeking a declaration that the parties agreed that the Petition will be withdrawn and in the circumstances the Court should either dismiss or alternatively strike out these proceedings on the grounds that they or vexatious and/or an abuse of process. Mr. Watlington in his third affidavit accepts that it would be open to the Petitioner to withdraw this Petition, on the terms agreed *inter partes* in December 2020 and file a fresh Petition making the same allegations.

AP0072

21. It appears to the Court that it is a pointless exercise to require the Petitioner to withdraw this Petition and to refile a fresh Petition in identical terms. Such a course would be wholly wasteful of the parties' resources and contrary to the Overriding Objective. The Court of course accepts that the Respondent may wish to, if so advised, pursue an application for wasted costs or agreed costs arising out of the alleged agreement to withdraw the Petition.

22. The Court should also mention that there is an outstanding application dated 11 August 2021 seeking leave to amend the Petition. Some of the proposed amendments seek to update the Petition to plead circumstances giving rise to change of control over the Petitioner.

23. Paragraph 19A of the draft Amended Petition pleads that, subsequent to BCT's appointment, it called upon Mr. Tamine (via his ultimate control of the holder of the Manager Share in the Respondent) to transfer the Manager Share to a nominee of BCT's choosing. Mr. Tamine has refused to do so asserting that BCT has no right to demand the transfer of Manager Share and asserting that his role in respect of the Manager Share did not arise as a result of his role as a director of SJTC.

24. Paragraphs 57-59 of the draft Amended Petition plead that by letter dated 12 May 2021 MDM forwarded to the Petitioner's counsel a letter from Mr. Tamine's counsel by which he asked for an indemnity against the Respondent purportedly pursuant to bye-law 99 the Respondents bye-laws. It is in excess of US$10 million and relates to Mr. Tamine's legal fees in respect of the DOJ's investigation, the Bermuda police service investigation, an investigation conducted in Switzerland, and proceedings before the Supreme Court of Bermuda 2018 No. 390 and 2020 No. 37.

25. The Petition alleges that given that Mr. Watlington and Mr. Ferguson were appointed by PI LLC, a company controlled by Mr. Tamine, they owe their office to, and could be removed by, Mr. Tamine procuring the voting of the Manager Share. The Petitioner alleges that Mr. Watlington and Mr. Ferguson thus operate under a disabling and incurable conflict of interest and the Board of the Respondent is thus unable to adjudicate on the claim for an indemnity made by Mr. Tamine.

AP0073

26. Whilst the application to amend the Petition remains outstanding it is highly unlikely that the Court can properly refuse the Petitioner's application to amend the Petition.

27. In addition to the amendment sought in the draft Amended Petition, the evidence filed in support of the Petition asserts that as a result of steps taken by the current directors of the Respondent:

   (1) The Petitioner has been prevented from withdrawing its investment in the Respondent;

   (2) The Petitioner and the Trustee are unable to access US$3 billion of the Trust's assets, including effectively all of the Trust's liquid assets (more than US$1.4 billion), which are the source of the liquidity required for payment of the Trust's routine operational and legal outgoings and expenses as well as meeting the Trust's charitable commitments;

   (3) The former Trustee was forced to pursue alternative funding to meet the charitable commitments due in Q3 2020 at an additional cost to the Trust of US$5 million to avoid harm to the institutions, students and medical research supported by the Trust, and irreparable damage to the Trusts reputation;

   (4) The Trust has had to reduce the level of charitable commitments, which would have involved making over US$40 million of charitable donations during the period September 2020 to September 2021;

   (5) The Respondent has failed to meet the capital call in respect of at least one of the funds in which it is invested which would have serious consequences for it, and accordingly to the assets of the Petitioner and the Trust.

28. The Petitioner prays that in all the circumstances, it is just and equitable that the Respondent should be wound up. In particular:

AP0074

(1) The sole purpose of the Respondent is to act as an investment vehicle for the Petitioner and the Petitioner holds all of the economic interest in the Respondent. The Trust owns the Petitioner.

(2) The Trust and the Petitioner desired to terminate the Respondent's role as an investment vehicle for the Petitioner such that the Respondent has no continuing purpose and/or there has been a failure of the Respondent's substratum.

(3) Without proper justification and in breach of their duties to the Respondent, the Board of the Respondent (Mr. Watlington and Mr. Ferguson) have refused to redeem the Common Shares in accordance with the redemptions by, amongst other things, improperly purporting to suspend the Respondent's NAV.

(4) Without proper justification and in breach of their duties to the Respondent, the Board of the Respondent have caused the Petitioner's bank accounts with Bank Mirabaud and Bank of Singapore to be frozen (and thereby caused the Trust to incur additional costs of approximately US$5 million in order to meet certain of its charitable commitments and to reduce the level of the Trusts charitable commitments).

(5) Without proper justification, the Board of the Respondent have caused the Respondent to refuse and/or fail to provide information to the Petitioner relating to the affairs of the Respondent in circumstances where the Petitioner holds effectively all the economic interest in the Respondent.

(6) There is at present no effective management in relation to the affairs of the Respondent and the Petitioner has a justifiable lack of confidence relating to the affairs of the Respondent.

(7) Any winding down of the affairs of the Respondent should be carried out under the control of independent officeholders as officers of the Court.

8

**Jurisdiction to appoint provisional liquidators**

29. Legal principles with respect to the appointment of provisional liquidators following the presentation of the winding up petition were recently summarised by the Court in *Raswant v Centaur Ventures Ltd & Ors* [2019] SC (Bda) 55 Com (a contributory's petition) as follows:

> *"The legal regime for the appointment of provisional liquidators*
>
> 7. *The statutory basis for the appointment of provisional liquidators is to be found in section 170(2) of the Act and rule 23(1) of the Companies (Winding-Up) Rules 1982.*
>
> 8. *Section 170(2) provides that:*
>
>> *"the Court may on the presentation of a winding-up petition or at any time thereafter and before the first appointment of a liquidator appoint a provisional liquidator who may be the Official Receiver or any other fit person"*
>
> 9. *Rule 23(1) of the Companies (Winding-Up) Rules 1982 provides that:*
>
>> *"After the presentation of a petition for the winding-up of a company by the Court, upon the application of a creditor, or a contributory, or of the company, and upon proof by affidavit of sufficient ground for the appointment of a provisional liquidator, the Court, if it thinks fit and upon such terms as in the opinion of the Court shall be just and necessary, may make the appointment."*
>
> 10. *The appointment of provisional liquidators is an exercise of judicial discretion. In exercising that discretion, the courts in Bermuda (Re CTRAK Ltd [1994] Bda LR 37 (Ground CJ); Discover Reinsurance Co*

9

AP0076

*v PEG Reinsurance Co Ltd [2006] Bda LR 88 (Kawaley J); and BNY AIS Nominees Ltd v Stewarship Credit Arbitrage Fund Ltd [2008] Bda LR 67 (Bell J)), have followed the guidance given in the judgment of Sir Robert Megarry in Re Highfield Commodities Ltd [1984] 3 All ER 884, at 892-893 in following terms:*

> *"At the outset let me say that I accept that the court will be slow to appoint a provisional liquidator unless there is at least a good prima facie case for saying that a winding-up order will be made: see Re Mercantile Bank of Australia [1892] 2 Ch 204 at 210, Re North Wales Gunpowder Co [1892] 2 QB 220 at 224. Founding himself on cases such as Re Clifoden Benefit Building Society (1868) LR 3 CH app 462 (where the words 'in general' should be noted) and Re London and Manchester Industrial Association (1875) 1 Ch D 466, counsel for HCL contended that if the company opposed the application for the appointment of a provisional liquidator, no appointment would be made (and any ex parte appointment would be terminated) unless either the company was obviously insolvent or it was otherwise clear that it was bound to be wound up, or else the company's assets were in jeopardy, as seems to have been the case in Re Marseilles Extension Rly and Land Co [1867] WN 68.*

> *………………*

> *I do not think that the old authorities, properly read, had the effect of laying down any rule that the power to appoint a provisional liquidator is to be restricted in the way for which counsel for HCL contends. No doubt a provisional*

AP0077

*liquidator can properly be appointed if the company is obviously insolvent or the assets are in jeopardy; but I do not think that the cases show that in no other case can a provisional liquidator be appointed over the company's objection. As the judge said, s. 238 is in quite general terms. I can see no hint in it that it is to be restricted to certain categories of cases. The section confers on the court a discretionary power, and that power must obviously be exercised in a proper judicial manner. The exercise of that power may have serious consequences for the company, and so a need for the exercise of the power must overtop those circumstances. In particular, where the winding-up petition is presented because the Secretary of State considers that it is expedient in the public interest that the company should be wound up, the public interest must be given full weight, though it is not to be regarded as being conclusive.*

11. *I accept the submission that Highfield Commodities makes clear that the categories of cases in which it would be appropriate to appoint a provisional liquidator are not closed. Indeed this is demonstrated by the practice in this Court of appointing provisional liquidators to facilitate restructuring where the Company is in the "zone of insolvency" (see Discover Reinsurance, per Kawaley J at [18], [19])."*

## Application for the appointment of JPLs

### *Ability of the Trustee to manage Trust property*

30. In his oral submissions Mr. Robinson referred to the fundamental duty of a trustee to gather, control and manage trust property. Mr. Robinson referred to Mr. Tamine's decision not to

11

transfer the Management Share to the Trustee of the Trust which results in an entirely unsatisfactory position that the Trust assets are not managed by the Trustee or individuals appointed by the Trustee but by individuals whom the trustees consider "***lack bona fides…have profited very considerably from the personal fees that they have disgorged from [the Respondent] while at the same time committing serious breaches of fiduciary duty***"[1]. In paragraph 41 his first affidavit Mr. Goddard states that the Petitioner considers that "***Mr. Watlington and Mr. Ferguson had breached their fiduciary duties as directors of [the Respondent] and should be personally accountable to [the Respondent] for all of the legal costs incurred in [the Respondent's] opposition to this Petition***."

31. As Mr. Goddard explains in his first affidavit, the renewed pursuit of this Petition by the Petitioner (under its new management) has been necessitated by the conduct of Mr. Tamine, the Respondent, and its directors, Mr. Watlington and Mr. Ferguson. Faced with the concerted resistance by the parties that have no material economic interest in the shares of Respondent, the winding up of the Respondent represents the only legal mechanism by which the Petitioner (on behalf of the Trust) can recover over US$3 billion of assets (according to the financial statements prepared by the Respondent) to which the Petitioner is lawfully entitled as the sole economic shareholder of the Respondent.

32. As noted earlier, Mr. Tamine has acknowledged in his memorandum of 13 August 2017 and to PwC that the Respondent "*is a closely held investment vehicle for Spanish Steps Holdings Ltd, which in turn is an asset and investment holding vehicle for the A. Eugene Brockman Charitable Trust.*" In the circumstances it is difficult to understand the sworn evidence of Mr. Watlington when he says in his second affidavit at paragraph 17: "***Ms. Bell in her evidence proceeds on the misconception that** we as directors owe duties to [the Petitioner] (which we do not) and that **the assets of [the Respondent] are trust assets (which they are not).*"

---

[1] Paragraph 6 of the letter from Carey Olsen Bermuda Limited ("**Carey Olsen**"), attorneys for the Petitioner, to Marshall Diel & Myers, attorneys for the Respondent dated 24 September 2021.

AP0079

33. I accept Mr. Robinson's submission that in order to hold a trustee accountable as a trustee the Court must ensure that the trustee is able to gather, control and manage the trust property. It would be an abdication of this Court's inherent jurisdiction to supervise the administration of trusts to allow a situation to arise and/or continue where the entire corpus of the trust (in excess of US$3 billion) is managed by individuals whom the trustee considers, by sworn evidence before the Court, not to be fit and proper individuals to be in that position.

**Opposition to the Petition by the Respondent in these proceedings**

34. Bermuda and English authorities dealing with unfair prejudice petitions establish the position that in principle a company should take a neutral position in relation to the relief sought in the petition and should avoid the expenditure of the company's funds in opposition to the petition. I accept Mr. Robinson's submission that the same principles apply to a contributory's petition based upon the just and equitable ground.

35. The position under Bermuda law is made clear in the judgment of Kawaley J (as he then was) in *Westport Trust Co Ltd v Paragon Trust Ltd* [2010] Bda LR 35 at [16]-[18]:

> "16. The proposition that a company ought not expend its funds save for legitimate corporate purposes was supported as a broad general principle by reference to the principle articulated in <u>Pickering v Stephenson</u> (1872) LR 14 Eq 322 at 340 , "that the governing body of a corporation, that is in fact a trading partnership, cannot, in general, use the fund of the community for any purpose other than those for which they were contributed." However, the narrower principle of the impropriety of a company expending its funds to respond to a section 111 petition was supported by a number of dicta, most robustly the following observations of Harman J in <u>Re a Company No. 004502 of 1988, ex parte Johnson</u> [1991] BCC 234 at 236-237: **"The train of authority being well established, it seems to me quite clear that, if it is shown that directors of a company have been causing the company's money to be spent on financing the company's resistance either to a 'pure' sec. 459 petition or, according to Plowman J in Re A &BC Chewing Gum and myself in**

AP0080

*Re Hydrosan*, *in financing the company's resistance to a member's winding-up petition based on the just and equitable ground, the court should prevent such expenditure. Such expenditure is a misfeasance, there is no excuse for it in law and it is not a question of an arguable case being raised showing that it may be right to permit misfeasances. Misfeasances are not matters that are permitted by the courts and there is no question of an arguable case at all*."

17. Implicit from a reading of the earlier portions of Harman J's judgment is that **the company's participation at its own expense is not justified where it is "a nominal party to the sec 459 petition, but in substance the dispute is between two shareholders**": per Hoffman J in <u>Re Crossmore Electrical and Civil Engineering Ltd</u>. (1989) 5 BCC 37 at 38. The question of whether or not "in substance the dispute is between two shareholders" clearly turns on the facts of each case, a point which the principal authority relied upon by Mr. Marshall clearly illuminated. The following principles apply to deciding whether a company's participation in the English equivalent of our own section 111 petitions, according to Lindsay J in <u>Re a company (No. 1126 of 1992)</u> [1994] 2 BCLC 146: "Firstly, there may be cases (although it is unlikely nowadays when wide objects clauses are the norm) where a company's active participation in or payment of its own costs in respect of active participation in a s459 petition as to its own affairs is ultra vires in a strict sense. Secondly, leaving aside that possible class, there is no rule that necessarily and in all cases such active participation and such expenditure is improper. Thirdly, that the test of whether such participation and expenditure is proper is whether it is necessary or expedient in the interests of the company as a whole (to borrow from Harman J in ex p Johnson). Fourthly, that in considering that test the court's starting point is a sort of rebuttable distaste for such participation and expenditure, initial scepticism as to its necessity or expediency. **The chorus of disapproval in the cases puts a heavy onus on a company which has actively participated or has so incurred costs to satisfy the court with evidence of the necessity or expedience in the particular case**. What will be necessary to discharge that onus will obviously vary greatly from case to case. Fifthly, if a company seeks approval by the court of

14

AP0081

*such participation or expenditure in advance then, in the absence of the most compelling circumstances proven by cogent evidence, such advance approval will obviously vary greatly from case to case."*

*18. Although the fifth point is not applicable to the present case, I find the above statement of principles to be highly persuasive and the fourth point to be of particular relevance to the present case. The starting point is for this Court to be sceptical about the need for the Company's participation."*

36. Following the presentation of the Petition to the Court MDM set out the position of the Respondent (as determined by Mr. Watlington and Mr. Ferguson) in a letter to Wakefield Quin, the Petitioner's then attorneys, that the Respondent would be opposing the application to appoint JPLs and would also oppose the winding up petition:

   *"**Following discussions with the US Department of Justice (the DOJ), our client has instructed us that they wish to contest both Spanish Steps Holdings Ltd's (SSH's) application for the appointment of Joint Provisional Liquidators (the JPLs) and SSH's Winding Up Petition**...the DOJ has never agreed to, acquiesced or concurred with the proposed liquidation of [the Respondent] and that the **DOJ does in fact object to the liquidation and/or dissipation of assets currently held in the [Respondent's] name**.."*

   *"There is no risk at all of [the Respondent] being insolvent so there can be no sensible objection to a Validation Order - which of course is only required because of **your client's misconceived ruse of presenting its Winding Up Petition**."*

37. In paragraph 36 of his first affidavit Mr. Goddard states that in a short 6-week period between 24 September 2020 and 7 November 2020, the Respondent spent a "*staggering*" amount of $261,062.44 in legal costs which the Petitioner considers is a totally unwarranted and constitutes misfeasance on the part of Mr. Watlington and Mr. Ferguson.

AP0082

38. In paragraph 24 of his first affidavit dated 27 October 2020 Mr. Watlington advises the Court that "*In terms of an estimate of future legal fees, **I estimate that they will be approximately $900,000 to the hearing of the Petition. This estimate includes the costs of MDM and Leading Counsel in preparing for the hearing relating to the Petitioner's application to appoint JPLs on the 20 November 2020, preparing replies to the Petition and three affidavits of Kiernan Bell and preparing for the hearing of the Petition in early 2021**, and advising [the Respondent] throughout.*"

39. In his fourth affidavit sworn on 23 August 2021 Mr. Watlington advises that of the $2 million transferred to MDM's trust account on 1 February 2021, the sum of $915,439.13 had been paid out in respect of the Respondent's fees and expenses. The schedule provided shows that the sum of $625,588.72 was in respect of the legal fees incurred by MDM, Paul Hastings (US lawyers instructed by the Respondent to "*liaise with*" the DOJ) and English leading counsel. By way of explanation Mr. Watlington advised that the fees paid included "***Defending the Petition and the [Petitioner's] application to appoint JPLs (the JPL Application), in particular working on detailed evidence responding to the Petition and the JPL application… Preparing for Leading Counsel to be called to the Bermuda Bar to appear at the JPL Application…***"

40. In his fifth affidavit dated 10 September 2021 Mr. Watlington states that "*the dispute on the Petition (and the Summons for appointment of JPLs) centres on who ought to be entrusted with control over the underlying assets of [the Respondent] pending the outcome of the DOJ Investigation, rather than any financial issues.*" Mr. Watlington does not explain why he considers it appropriate that the Respondent should be involved in that dispute and why the Respondent's funds should be expended by its directors in relation to that "*dispute*".

41. In paragraph 10 of the same affidavit that Mr. Watlington states that; "*in my view, it would be a breach of the duties of the current Board to permit all or a significant proportion of its assets to be paid over to any of its members before the indebtedness to potential creditors were established and quantified. **To permit the assets to be disbursed, whether by way of redemption, dividend or <u>supine acquiescence in</u> <u>the winding up petition</u>**, would*

AP0083

*leave [the Respondent] and indeed its directors open to a charge of putting assets beyond the reach of creditors or even, potentially, accusations of committing a crime under the Proceeds of Crime legislation…"* The highlighted passage shows that Mr. Watlington is under the impression that to allow assets to be administered under a court ordered winding up of the Respondent is in fact a breach of his duty and therefore he must take action to oppose the Petition.

42. In paragraph 21 of his fifth affidavit Mr. Watlington says that he believes that the Respondent's future estimated costs (calculated from 10 September 2021) until the hearing of the Petition will be in the region of **$800,000 to $900,000**. This is apparently on the basis that in addition to engaging MDM and English Counsel to advise the Respondent in relation to the Petition and all the various hearings that will take place prior to the hearing of the Petition, the Respondent wishes to take advice from Paul Hastings in the US who are "*liaising with*" the DOJ.

43. A review of the correspondence and the evidence filed (including the evidence of Mr. Watlington himself) shows that he is completely oblivious of the legal position that in circumstances such as the Petition presented by the Petitioner, the Respondent must maintain a neutral position. The fact that the Respondent has taken such a strong position in opposition to the Petition presented by the Petitioner, presumably upon the instructions of Mr. Watlington and Mr. Ferguson, is a matter of concern to this Court. It is also a matter of concern to this Court that substantial amounts have been paid on account of legal fees in opposing the Petition by the Respondent. As Mr. Tamine acknowledged in his memorandum to PwC, these funds ultimately belong to the Trust.

### *Duty to the foreign tax authority*

44. Section 97(1) of the Act requires that every director of a company in exercising its powers and discharging his duties shall act honestly and in good faith with a view to the best interests of the company and exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances. These duties are owed to the company not merely as an abstract notion but for the benefit of the shareholders as a general body.

AP0084

In the case of a solvent company directors' decisions are guided, as a general proposition, by what is in the best interest of the shareholders as a general body.

45. However, Mr. Robinson submits that in this case the directors of the Respondent, Mr. Watlington and Mr. Ferguson, appear to be under the misapprehension that they owe some form of undefined duty to the US tax authorities and the DOJ. Mr. Goddard complains in his first affidavit that Mr. Watlington appears to think he owes a greater duty to the DOJ then he does to the Respondent and its sole economic shareholder, the Petitioner.

46. Soon after their appointments as directors of the Respondent, Mr. Watlington and Mr. Ferguson instructed Paul Hastings to "*liaise with*" the DOJ in relation to the DOJ investigation in relation to the tax liability of one of the beneficiaries of the Trust, Mr. Robert Brockman. In this context it is to be noted that Mr. Tamine is a co-operating witness with the DOJ in respect of the prosecution of and as such has received immunity from prosecution by the US authorities.

47. On 10 July 2020 Paul Hastings sent the following email to Mr. Corey J. Smith, Senior Litigation Counsel, Tax Division, US DOJ, on behalf of the Respondent:

> *"Dear Mr. Smith:*
>
> *As you know, Paul Hastings LLP represents Point Investments, Ltd. ("Point"), which acts through Messrs. James Watlington and Glenn Ferguson, the duly appointed Directors of the company.*
>
> *Point has been working to gather documents and otherwise understand efforts to effect the alienation, redemption, transfer, change in custody over and/or unexplained expenditure of Point's assets. **As we have previously advised, at least until this work is completed Point under its current leadership intends only to draw on the company's assets for the payment of reasonable and customary expenses**, including for banking fees, director fees, counsel's fees, and fees*

AP0085

*associated with other professional services such as those incurred by auditors involved in the preparation of financial statements.*

*We have provided your office with both documentation reflecting the appointment of Messrs. Watlington & Ferguson and relevant Court decisions out of Bermuda. One of Point's banks has asked that we refresh and reaffirm our understanding of the Department of Justice's position as follows:*

> (1) **that the Department of Justice is conducting a criminal investigation as to which assets held by or through Point are of central relevance;**

> (2) *that the Department of Justice is aware of the appointment of Messrs. Watlington and Ferguson as directors of Point and the decision of the Chief Justice of Bermuda approving the empowerment of these gentlemen as directors of a related entity; and*

> (3) *that the persons and actions of Messrs Watlington and Ferguson form no part of the Department's ongoing criminal investigation"*

48. Mr. Smith responds on 13 July 2020 stating *"Matt: This is fine and accurate"*.

49. It is not readily apparent why Mr. Watlington and Mr. Ferguson thought it was necessary to voluntarily advise the DOJ that the Respondent did not intend to draw on the Respondent's assets other than for customary expenses given that no formal claim has been asserted by the DOJ against the Respondent. Further, it appears that no analysis has been carried out by Mr. Watlington and Mr. Ferguson as to the enforceability of such a claim against the Respondent in Bermuda. This communication was made to the DOJ on behalf of the Respondent without any discussion with the sole economic shareholder of the Respondent, the Petitioner. Further, it is extraordinary for a company itself to seek confirmation from the DOJ that the DOJ *"is conducting a criminal investigation"* into the company's affairs.

AP0086

50. In his second affidavit Mr. Watlington sets out his further engagement with the DOJ following the presentation of the current Petition. At paragraph 115 he states:

> *"115. **Following the receipt of SSH's Petition and the Application for the appointment of the JPLs on 24 September 2020, [the Respondent] instructed Paul Hastings to make contact with the DOJ to discuss its position as regards the Petition.** On 1 October 2020, Paul Hastings was copied into an email from Mr. Smith of the DOJ… that **the DOJ had never agreed to, acquiesced or concurred with the proposed liquidation of [the Respondent] and that the DOJ did in fact object to the liquidation and/or dissipation of assets currently held in the [Respondent's] name…**

> *116…Further, through Paul Hastings, the Independent Directors **[Mr. Watlington and Mr. Ferguson] have advised the prosecution team at the DOJ that, pending resolution of the DOJ's criminal investigation, they will continue to preserve [the Respondent's] assets** and only draw on [the Respondent's] assets for the payment of reasonable and customary expenses… The prosecution team at DOJ does not object to this assurance."*

51. Again, Mr. Watlington does not explain why it was thought necessary to obtain the instructions from the DOJ in relation to the present Petition presented by the Petitioner to this Court in circumstances where there was no formal claim against the Respondent. He also does not explain why he thought it was necessary or appropriate to advise the prosecution team at the DOJ that pending resolution of the DOJ's criminal investigation the current directors will continue to preserve the Respondent's assets without any discussion with its sole economic shareholder.

52. In paragraph 119 of the same affidavit Mr. Watlington states that "*The dispute between [the Respondent] and [the Petitioner] is essentially about whether [the Petitioner] ought to have the right to redeem its shares in [the Respondent] and leave the cupboard bare in circumstances where there is a good reason to be concerned that [the Respondent] has a considerable liability to the US authorities.*" As noted earlier, this statement by Mr.

AP0087

Watlington is made in the context where there is no formal claim against the Respondent by any US authority and no proper analysis has been carried out by the Respondent as to whether such a claim would be enforceable against the Respondent in Bermuda. Further, Mr. Watlington does not explain how it can be said that the "*cupboard would be left bare*" in circumstances where the Court appoints its own officers, the JPLs, to wind up the Respondent under the supervision of this Court. As Mr. Robinson rightly submitted any legitimate interest of any creditor of the Respondent recognised under Bermuda law would be fully protected in a Court ordered winding up of the Respondent.

53.  In a letter dated 24 September 2021 from Carey Olsen, attorneys for the Petitioner, to MDM, Carey Olsen pointed out that Mr. Watlington and Mr. Ferguson appeared to be under the misapprehension that they have duties to the DOJ. They also pointed out that any tax claim by the DOJ against the Respondent would have to be considered in light of the decision of the House of Lords in *Government of India v Taylor* [1955] AC 491 (taxes due under the laws of a foreign country are unenforceable in English courts and a foreign judgment seeking to recover taxes under foreign law is likewise unenforceable). This Court would expect the directors of the Respondent to have carefully considered this issue before "*liaising with*" the DOJ and before making any representations as to what they intended to do in relation to the assets of the Respondent. In any event this letter clearly required a proper response from the directors of the Respondent.

54.  In response to this letter MDM, in their letter of 29 September 2021, stated that the Board of the Respondent is "*well aware that it has no duty to the DOJ, contrary to your insistence - but equally, it can hardly simply ignore a serious and powerful potential creditor which might cripple or even sink [the Respondent]."* There was no direct response to the *Government of India* point raised in the letter from Carey Olsen. This omission was picked up in the further letter from Carey Olsen dated 8 October 2021. In response to that letter MDM stated the directors' position in the following terms:

> "*We are not sure why you are focused on the possibility of enforcement in Bermuda or to the Bermudian courts and the simple rule about foreign tax claims given the nature and place of the claims being made and threatened, and the location of the*

AP0088

*underlying assets. As you are no doubt aware, there are various exceptions and limitations to the rule about foreign claims which you do not address and we have little doubt that the US authorities would be quite prepared to seek enforcement of their claims in places other than Bermuda.*"

55. As noted at the outset Mr. Watlington has filed seven affidavits in relation to this Petition. There is no evidence relating to what, if any, analysis was carried out by Mr. Watlington and Mr. Ferguson and or their advisors in relation to the enforcement of any claims by the DOJ in Bermuda or in any foreign jurisdiction where assets of the Respondent may be located.

56. Review of the affidavit evidence filed in these proceedings in relation to the interaction on behalf of the directors of the Respondent and the DOJ has left the Court with serious concerns as to whether the directors fully appreciate that their duties are owed solely to the Respondent and not to the DOJ. The directors' decision to start "*liaising with*" the DOJ prior to having conducted any serious review of (i) the potential liability of the Respondent to the DOJ in respect of any tax or other claims; (ii) the enforceability of any tax claims in Bermuda or other jurisdictions where the Respondent's assets may be located, leaves the Court with a real sense of unease. The Court is also perplexed as to why it was thought advisable to make voluntary representations on behalf of the Respondent that the Respondent will not dispose of its assets other than its ordinary fees and expenses. The fact that the interaction between the directors of the Respondent and the DOJ took place without any meaningful discussion with and input of the Respondent's sole economic shareholder, the Petitioner, is equally disturbing. In the circumstances, bearing in mind that the assets of the Respondent are trust assets, the Court is clear that Mr. Watlington and Mr. Ferguson should play no further part in the resolution of any tax or other claims made by the DOJ against the Respondent and any such claims must be resolved by the JPLs under the supervision of this Court.

***Mr. Tamine's request for an indemnity under the bye-laws of the Respondent***

AP0089

57. By letter dated 27 April 2021 Canterbury Law Limited made a claim, on behalf of Mr. Tamine, asserting that Mr. Tamine be indemnified by the Respondent under bye-law 99 of the Respondent's bye-laws. The letter enclosed a draft writ of summons claiming costs and expenses in respect of (i) Mr. Tamine's response to the investigation conducted by the DOJ concerning the Trust structure; (ii) Mr. Tamine's response to an investigation conducted by the Bermuda Police Service which arose as a result of the DOJ investigation; (iii) the judicial review proceedings identified in the draft writ; (iv) Mr. Tamine's response to the investigation conducted by the public prosecutor, Switzerland; and (v) Mr. Tamine's defence of the allegations which formed part of civil proceedings against him in Bermuda.

58. Mr. Goddard, in his first affidavit, states that the claim for indemnity is in excess of $10 million. Mr. Goddard expresses concern on behalf of the Petitioner and the Trust that Mr. Tamine has effective control over PI LLC and thus, just as he was able to arrange for the appointment of Mr. Watlington and Mr. Ferguson as directors of the Respondent, it is to be assumed he can arrange for their removal and replacement if he is displeased with the handling of his claim for $10 million against that the Respondent.

59. Having regard to the unease expressed by the Court in relation to (i) the failure by Mr. Watlington and Mr. Ferguson to ensure that the Respondent remained neutral in relation to this Petition; and (ii) their apparent failure to fully appreciate that their duties are solely owed to the Respondent and not to the DOJ, the Court accepts the submission made by Mr. Robinson that it is not appropriate for Mr. Watlington and Mr. Ferguson to deal with the claim for indemnity made by Mr. Tamine. The Court orders that the claim made on behalf of Mr. Tamine for indemnity from the Respondent under its bye-laws must be considered and dealt with by the JPLs under the supervision of this Court.

### Dysfunction and lack of trust

60. The Court accepts Mr. Robinson's submission that the relationship between the Respondent and its sole economic shareholder is dysfunctional, as illustrated by the freezing of the Petitioner's account with the Bank of Singapore. The Court has already referred to the Petitioner's complete lack of trust in relation to the conduct of Mr. Watlington and Mr.

AP0090

Ferguson. The Court has already expressed its view that it is wholly untenable to have a position where the Trust assets (the assets held by the Respondent) are managed by persons in whom the trustee has no trust.

61. The Court notes that the structure providing for the Manager Share in the name of PI LLC (allowing it to appoint directors of SJTC and the Respondent) made commercial sense when SJTC was the trustee of the Trust and the Respondent held the assets of the Trust. It clearly makes no sense when SJTC is no longer the trustee of the Trust for PI LLC (Mr. Tamine) to insist that the directors of the Respondent (which holds the assets of the Trust) must be appointed by PI LLC and against the express wishes of the Trustee.

62. The Court also notes that the Court of Appeal Order dated 2 February 2021 expressly provides that at the hearing before Subair Williams J to determine the terms upon which BCT should become the Trustee no parties other than those provided for in the Order shall have "*standing to appear or present evidence or submissions in relation to the matter*". The Court of Appeal was clearly of the view that SJTC and/or Mr. Tamine should play no further part in the life of the Trust. The suggestion that the assets of the Trust, held by the Respondent, should in perpetuity be managed by directors appointed by Mr. Tamine and contrary to the express wishes of the Trustee is obviously unsustainable and cannot be accepted by this Court.

63. It was for these reasons that at the conclusion of the hearing on 29 October 2021 the Court made an order for the appointment of the JPLs.

**Application for validation**

64. Now that the JPLs have been appointed by the Court it is appropriate that they should be given an opportunity to consider, on behalf of the Respondent, the scope of any application to validate the payments pursuant to section 166 of the Act. Accordingly, the Court orders that the present application made by the Respondent by amended summons dated 8 September 2021 be adjourned *sine die* with liberty to apply. The application for a restraining order against the Respondent is no longer pursued by the Petitioner.

AP0091

65. The Court will hear the parties in relation to any application for costs, if required.

Dated this 17th day of November 2021.

NARINDER K. HARGUN
CHIEF JUSTICE

25

AP0092

## Exhibit 2

AP0093

IN THE SUPREME COURT OF BERMUDA
COMMERCIAL COURT
COMPANIES ACT (WINDING UP)
2020: NO. 300

BETWEEN

SPANISH STEPS HOLDINGS LTD.

PETITIONER

AND

POINT INVESTMENTS LTD.

RESPONDENT

_____

ORDER
_____

**UPON** the Petitioner's Summons dated 29 October 2021;

**AND UPON** reading the evidence;

**AND UPON** hearing Counsel for the Petitioner and for the Respondent;

**IT IS ORDERED THAT:**

1.    Andrew Childe and Richard Lewis of FFP Limited, 10 Market Street, #769 Camana Bay, Grand Cayman, Cayman Islands and Mathew Clingerman of Krys Global, Chancery Hall, 1st Floor, 52 Reid Street, Hamilton, HM 12, PO Box 671, HM CX, Bermuda be appointed as Joint Provisional Liquidators ("JPLs") of Point Investments Ltd. (the "Company");

2.    The powers of the JPLs shall not be limited, pursuant to section 170(3) of the Companies Act 1981 ("the Act"), by the Order appointing them;

3.    Without restricting the generality of paragraph 3 above, the JPLs shall be empowered to carry out the following functions:

    (a)    to ascertain the assets of the Company and their location and take all steps necessary including Court actions where appropriate to obtain possession of such assets and to bring the same under their control and further, where appropriate, bring the same into

the jurisdiction of this Honourable Court and, for this purpose, to seek the assistance of the Courts of the various jurisdictions in which assets of the Company are located;

(b)     to incur and pay for all reasonable expenses and disbursements in connection with the running, administration and management of the Company's records and affairs and offices;

(c)     if appropriate, in the discretion of the JPLs, to retain or employ such further professionals or other individuals, partnerships, associations or companies, to assist in running the affairs and business of the Company and for the purposes of ascertaining and quantifying the assets, records and liabilities of the Company, such employment being either in this jurisdiction or in any other jurisdiction of the world where the Company has conducted business or entered into contracts with third parties;

(d)     to render invoices for their own remuneration at their usual and customary rates (and this shall include all costs charges and expenses of his attorneys, and all other agents, managers, accountants, auctioneers, brokers or other person that the JPLs may employ);

(e)     to see, review, secure, take possession of and copy any books, papers, writings, documents and records relating to the accounts and audit of the Company's accounts that are located in the offices of its auditors or any other person both in this jurisdiction and in any other jurisdiction;

(f)     to see, review, secure, take possession of and copy the claims and financial records of the Company that are located in the offices of the Company or any company affiliated with the Company or any other person;

(g)     to open and operate bank accounts in the name of the JPLs or the Company as may be necessary;

(h)     to conduct such investigations and obtain such information as is necessary to locate, protect, secure, take possession of, collect and get in the assets of the Company and determine liabilities;

(i)     to do all such things as may be necessary or expedient for the protection of the Company's property or assets;

(j)     to employ and dismiss any employees of the Company;

(k)     to discharge rent, salaries of any employees of the Company and other current expenses of the Company;

(l)     to grant or accept a surrender of a lease or tenancy of any of the property of the Company and to take a lease or tenancy of any property required or convenient for the business of the Company;

(m)     to terminate, complete or perfect as advised any contracts or transactions relating to the business of the Company;

(n)     to effect insurance in connection with the management and maintenance of the business, property and assets of the Company;

(o)     to do all acts and to execute in the name and on behalf of the Company all deeds receipts or other documents and for that purpose using when necessary the Company's seal;

(p)     to rank and claim in the bankruptcy, liquidation or insolvency of any person (including but not limited to any body corporate) indebted to the Company and to receive dividends, and to accede to trust deeds for the creditors of any such person;

(q)     to change the situation of the Company's registered office;

(r)     to carry on all or any portion of the business of the Company so far as may be necessary for the beneficial winding-up of the Company;

(s)     to retain and employ barristers, attorneys, solicitors or other lawyers in Bermuda, the United States, the United Kingdom and other jurisdictions as the JPLs see fit for the purpose of advising and assisting the JPLs in the execution of their powers or in any legal or arbitration proceedings and such professionals or other individuals, partnerships, associations or companies as they may consider necessary with regard to the execution of their powers and they shall in their discretion determine the quantum of remuneration to be paid to such attorneys, professionals or other individuals, partnerships, associations or companies as aforesaid.

(t)     to consider any legal or arbitration proceedings wherever situate in which the Company either is a party or of which the Company presently has conduct or which the Company would, but for these liquidation proceedings, take conduct and (for any purpose, including without restriction the purpose of preserving the *status quo* in relation to proceedings while the JPLs complete their own due diligence in relation to such proceedings) to pay all fees and expenses and to give all instructions in connection therewith and take such action as may be thought necessary to continue to prosecute or to defend such proceedings or to apply for a stay of such proceedings;

(u)     to consider and if thought advisable to commence such actions as may be necessary to protect, recover or obtain assets and or monies belonging or due to the Company and to commence all other proceedings outside Bermuda as may be necessary to have their appointment recognised and to protect the assets of the Company;

(v)     to bring or defend any action or other legal proceedings in the name and on behalf of the Company;

(w)     to do all things incidental to the exercise of the foregoing powers.

4.      The said JPLs may bring or defend in their names any action or other legal proceedings which relate to the said property belonging to the said Company or which it is necessary to bring or defend for the purposes of effectually winding-up the Company and recovering its property as aforesaid as provided by section 174 of the Act. Notwithstanding paragraph 5 below, the costs charges and expenses of all persons retained or employed by the JPLs together with the costs charges and expenses of the JPLs and all other costs and expenses properly incurred in the course

of the provisional liquidation of the Company shall be paid as bills are rendered out of the assets of the Company.

5. The JPLs shall be at liberty to submit to the Registrar of the Supreme Court of Bermuda bills of costs for taxation for all costs charges and expenses of those persons or firms employed by them and that such taxation shall be on an attorney-and-own-client basis with respect to the costs charges and expenses of attorneys and on an equivalent basis for all managers, accountants, auctioneers or other persons.

6. Costs in the Petition.

7. Liberty to apply.

DATED this 29th day of October 2021

CHIEF JUSTICE

By Order
Of
The Court

Registrar

AP0097

IN THE SUPREME COURT OF BERMUDA

COMMERCIAL COURT

COMPANIES ACT (WINDING UP)

2020: NO. 300

BETWEEN

SPANISH STEPS HOLDINGS LTD.

PETITIONER

AND

POINT INVESTMENTS LTD.

RESPONDENT

---

ORDER

---



**CAREY OLSEN BERMUDA LIMITED**
5th Floor Rosebank Centre
11 Bermudiana Road
Pembroke HM 08
Bermuda

**Attorneys for the Petitioner**
Ref: KLHR/CVO/OJW/lw/1075311.0002

**Exhibit 3**

AP0099

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

**FILED**

Oct 01 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

---

## UNITED STATES OF AMERICA,

## V.

ROBERT T. BROCKMAN

## DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 371 – Conspiracy
26 U.S.C. § 7201 – Tax Evasion
31 U.S.C. §§ 5314 & 5322(b) –FBAR Violations
18 U.S.C. § 1343 – Wire Fraud Affecting a Financial Institution;
18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering;
18 U.S.C. § 1956(a)(1)(A)(ii) – Tax Evasion Money Laundering;
18 U.S.C. § 1956(b)(2)(B)(i) – International Concealment Money Laundering;
18 U.S.C. § 1512(b)(2)(B) – Evidence Tampering;
18 U.S.C. § 1512(c)(1) – Destruction of Evidence

---

A true bill.

_____/s/ Foreperson of the Grand Jury_____

Foreman

Filed in open court this _____1st_____ day of

_____October 2020_____.

Clerk

Bail, $_____ Summons

Hon. Nathanael Cousins, United States Magistrate Judge

AP0100

**FILED**

Oct 01 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,               CASE NO. 3:20-cr-00371 WHA

12         Plaintiff,                       VIOLATIONS:
                                            18 U.S.C. § 371 – Conspiracy to Defraud the United
13     v.                                   States and Commit Tax Evasion;
                                            26 U.S.C. § 7201 – Tax Evasion;
14  ROBERT T. BROCKMAN,                     31 U.S.C. §§ 5314 & 5322(b) – FBAR Violations;
                                            18 U.S.C. § 1343 – Wire Fraud Affecting a Financial
15         Defendant.                       Institution;
                                            18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money
16                                          Laundering;
                                            18 U.S.C. § 1956(a)(1)(A)(ii) – Tax Evasion Money
17                                          Laundering;
                                            18 U.S.C. § 1956(a)(2)(B)(i) – International
18                                          Concealment Money Laundering;
                                            18 U.S.C. § 1512(b)(2)(B) – Evidence Tampering;
19                                          18 U.S.C. § 1512(c)(1) – Destruction of Evidence;
                                            and
20                                          18 U.S.C. §§ 982(a)(1), 982(a)(2)(A) & 28 U.S.C. §
                                            2461(c) – Forfeiture Allegations
21

22                                          SAN FRANCISCO VENUE

23

24                                          ▮▮▮▮▮▮

25

26                      **I N D I C T M E N T**

27  The Grand Jury charges:

28

    INDICTMENT                                          AP0101

**Introduction**

At all times relevant to this Indictment:

1.     Defendant ROBERT T. BROCKMAN was a United States citizen residing in Houston, Texas and Pitkin County, Colorado.

2.     Universal Computer Systems Holding, Inc. ("UCSH"), was a Delaware corporation. UCSH was the holding company for a group of companies involved in the software business.  During all relevant periods, BROCKMAN was the Chief Executive Officer of UCSH.

3.     Universal Computer Systems, Inc. ("UCS"), which had offices in Houston, Texas, was a subsidiary of UCSH and was in the business of servicing the software needs of automobile dealerships. During all relevant periods, BROCKMAN was the Chief Executive Officer of UCS.

4.     Dealer Computer Services, Inc. ("DCS"), another UCSH subsidiary, was a Delaware corporation.  During all relevant periods, BROCKMAN was the Chief Executive Officer of DCS.

5.     The Reynolds and Reynolds Company ("Reynolds & Reynolds") was an Ohio corporation.  Reynolds & Reynolds was in the business of servicing the software needs of automobile dealerships.  In or about 2006, UCS and Reynolds & Reynolds merged, retaining the name Reynolds & Reynolds.  The stock of the new Reynolds & Reynolds was held by UCSH.  Beginning in approximately August 2006, BROCKMAN was the Chief Executive Officer of Reynolds & Reynolds.

6.     The A. Eugene Brockman Charitable Trust ("AEBCT"), formerly the A. Eugene Brockman Children's Trust, was a trust settled on or about May 26, 1981 in Bermuda.  The four named beneficiaries were BROCKMAN, BROCKMAN's wife, BROCKMAN's brother, and BROCKMAN's sister-in-law.

7.     Spanish Steps Holdings, LLC, was a Nevisian company, originally formed by BROCKMAN in or about 1997 in Nevis and wholly owned by the AEBCT.  Spanish Steps Holdings, Ltd., was a British Virgin Islands ("BVI") company, originally formed by BROCKMAN in or about 1989 in the BVI, whose shares were wholly owned by Spanish Steps Holdings, LLC (collectively "Spanish Steps").  Spanish Steps owned 93% of the shares of UCSH, as well as 100% of the investment shares of Point Investments, Ltd.

INDICTMENT                                          2

AP0102

8.     Point Investments, Ltd., was a Bermudian entity, originally incorporated by BROCKMAN on or about July 14, 1999 in the BVI.  On or about November 30, 2009, BROCKMAN re-incorporated Point Investments, Ltd., in Bermuda.  After that date, Point Investments, Ltd., was wholly owned by the Point Purpose Trust, a Bermudian trust (collectively "Point"), and Spanish Steps.  Point had bank accounts in Bermuda and Switzerland.  Point was created to invest in private equity funds managed by Vista Equity Partners ("Vista"), a private equity firm which was formed in or about March 2000 by Individual Two, and which maintained its principal place of business in the Northern District of California.  Vista invested primarily in United States–based software companies ("portfolio companies").  A portion of the capital that BROCKMAN invested, through Point, in various Vista funds came from UCS's retained earnings.

9.     On or about March 6, 1995, BROCKMAN created The St. John's Trust Company ("SJTC"), a Bermudian entity, to act as the Trustee for the AEBCT.  BROCKMAN caused various individuals to be appointed and serve as the Directors of SJTC.  In or about 2010, BROCKMAN caused Individual One to become a Director of SJTC.

10.     From 1995 through the date of this Indictment, BROCKMAN's foreign entities ("offshore structure"), were managed by various individuals, each of whom was appointed by, and answerable to, BROCKMAN.  In or about 2007, AEBCT, Spanish Steps, SJTC, and Point were all managed, in part or in whole, by Individual One.  Individual One was compensated on an annual basis by BROCKMAN for his management of BROCKMAN's offshore structure and had periodic performance and salary reviews.

11.     Edge Capital Investments, Ltd. ("Edge"), was a Nevisian corporation.  Edge was managed by Individual One to create the appearance that Edge was not associated with BROCKMAN in any way.  In reality, Individual One was employed, paid, and supervised by BROCKMAN, and BROCKMAN retained full dominion and control over Edge.

12.     Cabot Global Investments, Ltd. ("Cabot"), was a Nevisian corporation.  Cabot was managed by Individual One to create the appearance that Cabot was not associated with BROCKMAN in any way.  In reality, Individual One was employed, paid, and supervised by BROCKMAN, and BROCKMAN retained full dominion and control over Cabot.

INDICTMENT                                              3                                              AP0103

13. Tangarra Consultants, Ltd. ("Tangarra"), was a Bermudian corporation. Tangarra was organized, formed, and managed by Individual One.

14. In or about March 2000, BROCKMAN, through Point, committed $300 million to Vista's first private equity fund – Vista Equity Fund II ("VEF II"). In or about 2004, this commitment to VEF II was increased to $1 billion.

15. BROCKMAN, through Point and Edge, was the only limited partner in VEF II.

16. BROCKMAN, through Point, invested in numerous Vista funds in addition to VEF II. BROCKMAN only invested in Vista funds that were organized outside the United States.

17. In the private equity fund industry, when profits are distributed to investors, the amount distributed to each investor is determined based on each investor's share of the total investment in the underlying fund, as reflected in the applicable Partnership Agreement, and is termed a "Waterfall Calculation," or simply "the Waterfall."

18. In or about 2006, DCS borrowed $2.4 billion to finance the merger of UCS and Reynolds & Reynolds ("the Debt").

19. Deutsche Bank Securities, Inc., together with its subsidiaries including Deutsche Bank Trust Company Americas (collectively "Deutsche Bank"), was the Administrative Agent for the Debt, and acted as a Joint Lead Arranger and Joint Book Manager for the Debt.

20. The Debt was a syndicated loan, also known as a syndicated bank facility, meaning that the financing was offered by a group of lenders – referred to as a syndicate – who worked together to fund the loan.

21. The Debt was issued in three different tiers, also known as tranches. Among other things, the tiers had different rates of return and conditions for repayment in the event of default.

22. Each of the three different tiers of the Debt was controlled by a separate contract ("Credit Agreement").

23. All three of the Credit Agreements were dated October 26, 2006, and all three Credit Agreements were signed by BROCKMAN as Chief Executive Officer of DCS and, under a separate signature block, by BROCKMAN as Chief Executive Officer of UCSH.

AP0104

24.     All three Credit Agreements contemplated that the Debt would be traded on the secondary market after it had been issued, and all three Credit Agreements included restrictions on which individuals and entities would be permitted to purchase the Debt on the secondary market. Among other things, all three of the Credit Agreements contained a material provision excluding any "Affiliate" of DCS from purchasing the Debt on the secondary market.

25.     All three of the Credit Agreements defined an "Affiliate" of DCS to include any individual or entity directly or indirectly under common control with DCS.  Because BROCKMAN was the Chief Executive Officer of DCS, and retained full dominion and control over Edge, Edge was an "Affiliate" of DCS under all three of the Credit Agreements.

26.     All three of the Credit Agreements required DCS to periodically provide Deutsche Bank with certain financial information, including audited financial statements for UCSH and its subsidiaries, and quarterly compliance certificates; the Agreements further required Deutsche Bank to promptly distribute that financial information to holders of the Debt.

27.     United States citizens who had authority over certain foreign bank accounts, and/or a financial interest in such foreign bank accounts, had reporting obligations to the United States.  The Bank Secrecy Act and its implementing regulations required United States citizens to report to the United States Treasury any financial interest in, or signatory authority over, any bank account or other financial account held in foreign countries, for every calendar year in which the aggregate balance of all such foreign accounts exceeded $10,000 at any point during the year, using United States Treasury Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts.  This form is commonly known as a Foreign Bank Account Report, or "FBAR."  The FBAR for an applicable year was due by June 30 of the following year.

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy to Defraud the United States & Commit
                    Tax Evasion)

28.     The allegations set forth in paragraphs 1 through 27 of this Indictment are re-alleged and incorporated as if set forth fully herein.

29.     From on or about December 1, 1999, and continuing through on or about October 15, 2019, in the Northern District of California and elsewhere, the defendant,

AP0105

ROBERT T. BROCKMAN,

with others known and unknown to the grand jury, did unlawfully, voluntarily, and willfully conspire to: (a) defraud the United States government through dishonest and deceitful means, to wit: the Department of the Treasury, Internal Revenue Service ("IRS"), in the ascertainment, assessment, computation, and collection of revenue, particularly individual federal income taxes due and owing by BROCKMAN for the tax years 2000 through and including 2018; and (b) commit tax evasion, in violation of Title 26, United States Code, Section 7201, of the individual federal income taxes due and owing by BROCKMAN for the tax years 2000 through and including 2018.

**Objective of the Conspiracy**

30.     The objective of the conspiracy was for BROCKMAN, from December 1, 1999, through October 15, 2019, to conceal from the IRS capital gain income BROCKMAN earned as a result of his investments in Vista funds through Point; deposit some of this income in unreported foreign bank accounts; and evade the payment of United States federal income tax on this income.

31.     It was further the objective of the conspiracy for BROCKMAN, using nominees, including Individual One, to create a false paper trail regarding his offshore structure, including by filing materially false United States Individual Income Tax Returns, Forms 1040, to give the appearance that BROCKMAN did not own or control AEBCT, Spanish Steps, SJTC, and Point, when, in reality, BROCKMAN had complete dominion and control over these entities, their Directors, Officers, and Trustees, and received the benefit of all the income deposited into the foreign bank accounts in these entities' names.

32.     It was further the objective of the conspiracy for BROCKMAN, using nominees, including Individual One, to create a false paper trail giving the appearance that BROCKMAN did not have any relationship with Point, Edge, or Cabot, when, in reality, BROCKMAN exercised full dominion and control over Point, Edge, and Cabot, and used them to purchase the "Frying Pan Canyon Ranch," the "Mountain Queen" vacation home, and the luxury yacht "Turmoil" (later renamed "Albula") with unreported taxable income, for his personal use, and to conceal BROCKMAN's control over Point, Edge, and Cabot from the IRS by failing to file truthful and accurate FBARs.

AP0106

**Manner and Means**

The manner and means by which BROCKMAN and his co-conspirators sought to achieve these objectives included, among others, the following:

33.     It was part of the conspiracy and scheme and artifice to defraud that, in an attempt to conceal a portion of his taxable income, primarily capital gains earned as a result of his investments in Vista funds through Point, in or about 2000, BROCKMAN, with assistance from other individuals known and unknown to the Grand Jury, created a complex network of offshore companies and trusts, and appointed nominees to manage these entities for him.  These nominees were compensated and employed by BROCKMAN to act as Directors, Officers, and Trustees of BROCKMAN's offshore structure, when, in reality, BROCKMAN completely controlled these entities and made all substantive decisions in their regard.

34.     It was further part of the conspiracy and scheme and artifice to defraud that BROCKMAN created and used a proprietary, encrypted email system to communicate with the nominees he appointed and employed to manage his offshore structure and foreign entities.  Each of the users of this encrypted email system was given a code name to be used when communicating with BROCKMAN and each other.  BROCKMAN's email code name was "Permit" or "Permit1."  Individual One's code name was "Redfish."  Other code names given by BROCKMAN to nominees he appointed to manage his offshore structure included "King," "Bonefish," and "Snapper."  Individual Two was given the code name "Steelhead."  In these encrypted emails, BROCKMAN often referred to the IRS as "the house."

35.     It was further part of the conspiracy and scheme and artifice to defraud that, "on paper," Spanish Steps owned approximately 93% of the preferred stock, or investment shares, of BROCKMAN's company UCSH.  Since Spanish Steps was owned by the AEBCT, the Trustee of which was the SJTC, this arrangement created the appearance that Directors of the SJTC controlled UCSH, UCS, and Reynolds & Reynolds.  In reality, Directors of the SJTC were employed by, and served at the pleasure of, BROCKMAN.  BROCKMAN made all substantive decisions regarding UCSH, UCS, and Reynolds & Reynolds.  From 2010, and continuing through about September 2018, Individual One was a Director of SJTC.

INDICTMENT                                7                                      AP0107

36. It was further part of the conspiracy and scheme and artifice to defraud that, in or about March 2000, BROCKMAN, through Point and in agreement with Individual Two, committed approximately $300 million to VEF II. Subsequently, in or about 2004, this commitment was increased to $1 billion. From 2000, and continuing through 2014, funds were invested by BROCKMAN, through Point, in VEF II, as needed to purchase portfolio companies. BROCKMAN funded these investments, in part, using retained earnings from UCS.

37. It was further part of the conspiracy and scheme and artifice to defraud that, in addition to investments in VEF II, BROCKMAN, through Point, invested in numerous other Vista funds.

38. It was further part of the conspiracy and scheme and artifice to defraud that BROCKMAN earned approximately $2 billion in capital gains as a result of his investments in Vista funds through Point.

39. It was further part of the conspiracy and scheme and artifice to defraud that the capital gains distributed by Vista to Point for BROCKMAN's benefit were directed by BROCKMAN and his nominees, including Individual One, to be wired from Vista's bank accounts in the Northern District of California and elsewhere, to bank accounts in Point's name in Bermuda and Switzerland.

40. It was further part of the conspiracy and scheme and artifice to defraud that capital gains BROCKMAN earned as a result of his investments in Vista funds through Point, as directed by BROCKMAN, were not reported to the IRS by BROCKMAN on his United States Individual Income Tax Returns, Forms 1040, although BROCKMAN enjoyed complete dominion and control over these earnings. No United States federal income tax was paid on these capital gains.

41. It was further part of the conspiracy and scheme and artifice to defraud that, in an attempt to conceal BROCKMAN's ownership and control over foreign bank accounts held in the name of Point, BROCKMAN did not report his interest and ownership over those foreign bank accounts as required by Title 31, United States Code, Sections 5314 & 5322 and Title 31, Code of Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b), despite the fact that BROCKMAN enjoyed complete dominion and control over those accounts.

42. It was further part of the conspiracy and scheme and artifice to defraud that, in an attempt to conceal BROCKMAN's ownership and control over foreign bank accounts held in the name of Edge

AP0108

1   and Cabot, BROCKMAN did not report his interest and ownership over those foreign bank accounts as

2   required by Title 31, United States Code, Sections 5314 & 5322 and Title 31, Code of Federal

3   Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b), despite the fact that BROCKMAN

4   enjoyed complete dominion and control over those accounts.

5                                     **Overt Acts**

6           In furtherance of the conspiracy, and to effect the objectives thereof, the following overt acts

7   were committed within the Northern District of California and elsewhere:

8           43.     In or about September 1999, BROCKMAN directed and caused the opening of a bank

9   account for Point at the Bermuda Commercial Bank, account number ***4132, with an initial deposit of

10  more than $10 million.

11          44.     On or about July 7, 2004, BROCKMAN directed and caused a transaction to be

12  completed, code named "Hotrod," in which approximately $635 million of UCS's retained earnings

13  were distributed to Spanish Steps, for transfer to Point and eventual investment in Vista funds, without

14  properly reporting the transactions to the IRS.

15          45.     On or about August 27, 2006, BROCKMAN, using his encrypted email system, informed

16  his nominees, code named "Bonefish" and "Redfish," that he had read the United States Senate's

17  Permanent Subcommittee on Investigations' report entitled "Tax Haven Abuses: The Enablers, The

18  Tools and Secrecy" and, based on this report, BROCKMAN subsequently directed his nominees to

19  change the name of the "A. Eugene Brockman Children's Trust" to the "A. Eugene Brockman

20  Charitable Trust."

21          46.     On or about September 23, 2006, BROCKMAN instructed Individual One that

22  BROCKMAN was to be given: 1) quarterly reports on "all portfolio companies;" 2) amendments to the

23  VEF II partnership agreement; and 3) copies of annual audits of VEF II and another Vista fund named

24  Vista Equity Fund III.

25          47.     On or about June 3, 2007, BROCKMAN, using his encrypted email system, directed

26  Individual One to purchase a computer program called "Evidence Eliminator" for Individual One's

27  computers.

28

AP0109

48.     On or about July 23, 2008, BROCKMAN, using his encrypted email system, directed Individual One on the methods necessary to create more convincing backdated documents. BROCKMAN notified Individual One that "[a]s a reminder - we need to also remember that all copy machine/laser printer paper has encoded into it the manufacturer of that paper as well as the year and month of manufacture.  For that reason I always set aside some packets of copy paper with dates on them - for potential future use."

49.     On or about August 2, 2008, BROCKMAN, using his encrypted email system, directed Individual One "to eliminate direct calls to [the BVI and Cayman Islands] from landline or cell phones." He further directed Individual One to have a BVI resident establish multiple Vonage accounts for their use which "will have the effect of looking like a BVI person on the road calling back to the BVI . . . which when the house scans all of the Vonage activity will look innocent."

50.     On or about December 11, 2009, BROCKMAN, using his encrypted email system, instructed Individual One that BROCKMAN wanted to authorize any expenses relating to the "Mountain Queen" property that exceeded $2,000, and BROCKMAN did, in fact, subsequently review and approve such expenditures.

51.     On or about February 19, 2010, BROCKMAN, using his encrypted email system, directed Individual One to pursue the purchase of a "fishing lot" for $500,000 through an entity named "Henke Properties."

52.     On or about February 26, 2010, BROCKMAN, using his encrypted email system, instructed Individual One that he should not pay more than $500,000 for the fishing lot property through Henke Properties.

53.     On or before April 30, 2010, BROCKMAN directed Individual One, together with a second nominee, to open a bank account at Mirabaud & Cie Banquiers Prives, Geneva, Switzerland ("Mirabaud Bank") in the name of Point, account number ***463.  BROCKMAN further directed that Individual One was to be a signatory on this bank account.

54.     On or about May 20, 2010, BROCKMAN directed Individual One to move most of the remaining balance of funds on deposit in the Point account at Bermuda Commercial Bank, account ***4132, approximately $1 million, to the Point Mirabaud Bank account ***463 in Switzerland.

INDICTMENT                                    10                                    AP0110

55.   On or about May 24, 2010, BROCKMAN directed that a distribution from Vista to Point, in the amount of $799,008,883, from VEF II's sale of a portfolio company, was to be deposited in the Point account at Mirabaud Bank.

56.   On or about May 26, 2010, BROCKMAN, using his encrypted email system, directed Individual One to make specific edits, changes, and amendments to the VEF II Limited Partnership Agreement on behalf of Point.

57.   On or about May 27, 2010, BROCKMAN, using his encrypted email system, instructed Individual One to pose questions to Individual Two regarding fees payable from Point to Vista in association with the sale of a portfolio company.

58.   On or about June 5, 2010, at BROCKMAN's direction, Individual One provided BROCKMAN with the user identification and password to directly access the Point bank account at Mirabaud Bank, account ***463.

59.   On or about July 8, 2010, BROCKMAN, using his encrypted email system, directed an additional investment, through Point, of $3,163,833 in a Vista fund named Vista Equity Partners Fund III.

60.   On or about July 13, 2010, BROCKMAN, using his encrypted email system, informed Individual One that due to the "Ventyx transaction," he wished to restructure "two major structures," which "cleans up these two structures forever – yet leaves them available for charitable giving, investment management fee income, investments in real estate, investments in companies, and in the case of dire emergency – for loans to individuals or other entities."

61.   On or about July 23, 2010, BROCKMAN, using his encrypted email system, instructed Individual One that Edge and Cabot should not be added under the AEBCT umbrella because, "[w]e never can tell what crazy things the house is going to do – and the AEBCT is exposed to them."

62.   On or about August 30, 2010, BROCKMAN, using his encrypted email system, directed Individual One to become a Director of SJTC.

63.   On or about September 27, 2010, BROCKMAN, using his encrypted email system, gave Individual One instructions regarding Point's investment in VEF II. Specifically, with regard to the purchase of a portfolio company called Sunquest, BROCKMAN told Individual One that he was not

AP0111

1    satisfied with the proposed "management and programming structure," and that the proposed purchase

2    was not a "reasonable thing for us to be involved [in]."

3          64.      On or about October 30, 2010, BROCKMAN, using his encrypted email system,

4    corresponded with Individual One about using Point to purchase a "Swiss private bank."

5          65.      On or about November 1, 2010, BROCKMAN, using his encrypted email system,

6    corresponded with Individual One about Point's August 24, 2004 purchase of Edge's investment in VEF

7    II for $154,582,366, and the destruction of records at Vista reflecting the purchase.

8          66.      On or about November 10, 2010, BROCKMAN, using his encrypted email system,

9    directed Individual One to invest $50 million, through Point, in a Vista fund named Vista Foundation

10    Fund.

11          67.      On or about December 6, 2010, BROCKMAN, using his encrypted email system,

12    notified Individual One that Point had approximately $1,414,658,673 in assets, which differed from

13    internal reports, and directed Individual One to make several corrections to Point's financial statements.

14          68.      On or about December 28, 2010, BROCKMAN directed Individual One to fabricate a

15    backdated memorandum memorializing a fictitious conversation with a deceased former nominee

16    "where he resigns and concurs with your suggestion as [a replacement nominee] – provide an original

17    wet-ink signed copy of this memo to Bob."

18          69.      On or about July 12, 2011, BROCKMAN, using his encrypted email system, directed

19    Individual One to prepare for BROCKMAN a monthly "Significant Transaction Report" regarding

20    Point, and to include any transaction exceeding $100,000.

21          70.      On or about October 20, 2011, BROCKMAN, using his encrypted email system, directed

22    Individual One to attend a money laundering conference "if possible under an assumed identity."

23          71.      On or about January 7, 2012, BROCKMAN, using his encrypted email system, directed

24    Individual One to make additional investments, through Point, in Vista funds named Vista Equity

25    Partners Fund IV, Vista Foundation Fund I, and Vista Equity Partners Fund III.

26          72.      On or about February 14, 2012, BROCKMAN, using his encrypted email system,

27    informed Individual One that he was interested in investing, through Point, $400 million in a Vista fund

28    named Vista Equity Partners Fund IV, provided Point obtained a percentage of direct ownership in the

INDICTMENT                         12                        AP0112

company purchased as part of the deal.

73.    On or about May 1, 2012, BROCKMAN, using his encrypted email system, instructed Individual One on how to structure BROCKMAN'S investment in the "debt market" in such a way to avoid IRS scrutiny of the AEBCT.

74.    On or about May 3, 2012, BROCKMAN directed Individual One to invest, through Point, $400 million in a Vista fund named Vista Equity Partners Fund IV.

75.    On or about August 12, 2012, BROCKMAN, using his encrypted email system, directed Individual One to invest, through Point, $16.71 million in a Vista fund named Vista Equity Partners Fund IV, to which BROCKMAN, through Point, had already committed $600 million.

76.    On or about November 25, 2012, BROCKMAN, using his encrypted email system, instructed Individual One to "register our disappointment" with a Vista employee regarding tax withholding on expected dividends from Vista.

77.    On or about December 9, 2012, BROCKMAN, using his encrypted email system, directed Individual One to change the structure in which the shares of Point were held, moving them to a "purpose trust" with a "dressed up charitable purpose" to avoid inquiries from banks and "the house" about the "ultimate beneficial owners" of Point.

78.    On or about February 17, 2013, BROCKMAN, using his encrypted email system, provided Individual One talking points regarding the negotiation of a gift from BROCKMAN to Centre College in the name of the AEBCT.

79.    On or about March 19, 2013, BROCKMAN instructed Individual One: 1) that if Point were to invest directly in a United States company, it needed to do so through a private equity manager; and 2) to secure a "wet-ink signed letter of resignation and appointment of a new trust protector" and send the document to BROCKMAN.

80.    On or about May 2, 2013, BROCKMAN, using his encrypted email system, directed Individual One to commit, through Point, $50 million to a Vista fund named Vista Foundation Fund II.

81.    On or about July 12, 2013, BROCKMAN, using his encrypted email system, directed over $7 million of additional investments, through Point, to various Vista funds.

INDICTMENT                                  13                              AP0113

82. On or about July 24, 2013, BROCKMAN, using his encrypted email system, instructed Individual One on a press release for a contemplated $250 million gift from BROCKMAN to Centre College in the name of the AEBCT.

83. On or about August 22, 2013, BROCKMAN, using his encrypted email system, sent Individual One detailed instructions regarding a gift from BROCKMAN to Centre College in the name of the AEBCT, including talking points, and directed Individual One to threaten to "pull[] the plug on the project" if BROCKMAN's demands were not met.

84. On or about August 31, 2013, BROCKMAN, using his encrypted email system, instructed Individual One to cancel the gift to Centre College, and instructed Individual One what to tell Centre College as to why the gift was cancelled.

85. On or about November 19, 2013, BROCKMAN, using his encrypted email system, instructed Individual One not to make a commitment, through Point, to a Vista fund named Vista Equity Partners Fund V, and that an existing investment commitment, through Point, must be "reeled back to $100 million," from $150 million.

86. On or about December 1, 2013, BROCKMAN, using his encrypted email system, gave Individual One specific instructions to correct the record for distributions of profits from Vista to Point - "the waterfall." Specifically, BROCKMAN directed that the return of capital in a specific distribution should be $8,489,317, and the total return should be $41,364,185.

87. On or about January 23, 2014, BROCKMAN, using his encrypted email system, directed Individual One to make additional investments, through Point, in Vista funds named Vista Foundation Fund I, Vista Equity Partners Fund IV, and Vista Foundation Fund II.

88. On or about February 16, 2014, BROCKMAN directed Individual One to draft a letter to BROCKMAN on behalf of SJTC requesting that BROCKMAN negotiate a sale of Reynolds & Reynolds to Vista.

89. On or about April 5, 2014, Individual One requested BROCKMAN purchase a house for Individual One in Australia where Individual One's family could live if Individual One were to "be subjected to proceedings."

INDICTMENT                                      14                                      AP0114

90.     On or about May 2, 2014, BROCKMAN, using his encrypted email system, sent Individual One a memorandum informing Individual One of BROCKMAN's decisions regarding Individual One's annual bonus and a loan to Individual One to purchase a home in Sydney, Australia.

91.     On or about May 4, 2014, BROCKMAN, using his encrypted email system, instructed Individual One that BROCKMAN's annual salary from Reynolds & Reynolds must be increased to permit him to "charter" the luxury yacht "Turmoil" (later renamed "Albula") for 10 weeks per year at $150,000 per week plus fuel.

92.     On or about May 10, 2014, BROCKMAN, using his encrypted email system, instructed Individual One to open a bank account in Switzerland for the AEBCT and to respond to inquiries regarding BROCKMAN's relationship to the AEBCT and the derivation of its assets.  BROCKMAN also informed Individual One that his initial investment in VEF II came from a "substantial dividend" without the payment of any withholding tax.

93.     On or about June 29, 2014, BROCKMAN, using his encrypted email system, agreed to provide Individual One with $3 million to purchase a home in Australia.

94.     On or about July 21, 2014, BROCKMAN authorized a $75 million loan from BROCKMAN to Individual Two.

95.      On or about October 3, 2014, BROCKMAN, using his encrypted email system, instructed Individual One regarding "buying out" Vista's investment in Reynolds & Reynolds.

96.     On or about October 9, 2014, BROCKMAN, using his encrypted email system, requested and received from Individual One the username and password necessary to access the secure Vista website, which allowed him to download "all financials, calls and distribution notices etc."

97.     On or about December 26, 2014, BROCKMAN, using his encrypted email system, directed Individual One to invest, through Point, $63.89 million in a Vista fund named Vista Equity Partners Fund V.

98.     On or about January 2, 2015, BROCKMAN, using his encrypted email system, directed Individual One to make additional investments, through Point, in Vista funds named Vista Equity Partnership Fund IV, Vista Foundation Fund I, and Vista Foundation Fund II.

AP0115

99.     On or about January 18, 2015, BROCKMAN directed Individual One to explore having BROCKMAN'S son renounce his United States citizenship and assume management of the offshore structure.

100.    On or about May 9, 2015, BROCKMAN, using his encrypted email system, directed Individual One to make an additional investment, through Point, in a Vista fund named Vista Equity Partners Fund IV.

101.    On or about June 2, 2015, BROCKMAN, using his encrypted email system, instructed Individual One to determine the value of Point's investment in Vista Equity Partners Fund IV, and why it was reported as about 11% of the fund (or about $40 million), when BROCKMAN recalled that Point's investment in the fund was 17.9% (valued at approximately $70 million).

102.    On or about February 13, 2016, BROCKMAN, using his encrypted email system, directed Individual One to invest, through Point, $33.08 million in a Vista fund named Vista Equity Partners Fund IV.

103.    On or about February 24, 2016, BROCKMAN, using his encrypted email system, directed Individual One to purchase, through Cabot and Edge, $20 million of "first lien debt in a Vista software company."

104.    On or about April 18, 2016, BROCKMAN, using his encrypted email system, directed Individual One to make an additional investment, through Point, in a Vista fund named Vista Foundation Fund II-A.

105.    On or about June 9, 2016, BROCKMAN, using his encrypted email system, instructed Individual One that before Individual One committed to make an additional investment, through Point, in a Vista fund named Vista Equity Partners Fund IV for the purpose of purchasing a company named Misys, BROCKMAN needed a list of additional information including: 1) complete details about the current operation of Misys; 2) complete details about the sale of Misys; 3) documentation as to the valuation of Misys; and 4) a seven-year forecast of the operation proformas of Misys.

106.    On or about July 3, 2017, BROCKMAN, using his encrypted email system, directed Individual One to make additional investments, through Point, in Vista funds named Vista Equity Partners Fund III, Vista Equity Partners Fund IV, Vista Equity Partners Fund VI, Vista Foundation Fund

I, and Vista Foundation Fund II-A.

107.    On or about July 26, 2017, BROCKMAN, using his encrypted email system, directed Individual One how to playact an upcoming "negotiation" with BROCKMAN including which points to contest and which points to concede.  BROCKMAN directed Individual One to "continue to gripe about co-invests - but then give in."

108.    On or about December 25, 2017, BROCKMAN, using his encrypted email system, directed Individual One to position the luxury yacht "Albula" in Barcelona for BROCKMAN'S upcoming vacation so that BROCKMAN did not get billed for the costs of moving the yacht. BROCKMAN further directed Individual One "[f]or appearances sake it would probably be good for you [and your family] to take some vacation in that time frame before we get there."

109.    On or about April 20, 2018, BROCKMAN directed and caused the creation of a private equity fund named "Falcata Tech Investment Fund I, L.P.," and directed Individual One to commit, through Point, approximately $1 billion to the fund.

110.    On or about May 17, 2005, BROCKMAN directed and caused a transfer of approximately $15 million from a bank account at VP Bank in the BVI, account ***221, in the name of Edge Investment Fund, Ltd., to bank account ***690 at VP Bank in the BVI in the name of Regency Management, Ltd., for the purchase of the "Mountain Queen" property located in Pitkin County, Colorado for BROCKMAN's personal use.

111.    On or about December 16, 2010, BROCKMAN directed Individual One to transfer approximately $15 million from a bank account at Bermuda Commercial Bank, account ***703-01, in the name of Edge, to another bank account at Bermuda Commercial Bank, account ***717-01, in the name of Regency Management, Ltd., for the purchase of the "Frying Pan Canyon Ranch" property located in Pitkin County, Colorado for BROCKMAN's personal use.

112.    On or about March 9, 2012, BROCKMAN was informed by email that the IRS required reporting of "foreign assets" through the filing of FBARs.

113.    On or about April 16, 2013, BROCKMAN caused Individual One to transfer approximately $80 million from a bank account at Bermuda Commercial Bank, account ***703-01, in the name of Edge, to bank account ***951 at Mirabaud Bank in Switzerland, also in the name of Edge.

114.     On or about January 24, 2014, BROCKMAN caused Individual One to transfer $75,000 from a bank account at Bermuda Commercial Bank in Bermuda, account ***717-01, in the name of Regency Management, Ltd., to a bank account at Wells Fargo Bank, account ***891, to be used for the maintenance of "Mountain Queen" for BROCKMAN's personal use.

115.     In or about January 2014 and continuing through December 2014, BROCKMAN directed Individual One to transfer approximately $8.2 million from a bank account at Bermuda Commercial Bank, account ***717-01, in the name of Regency Management, Ltd., to a bank account at Wells Fargo Bank, account ***8029, in the name of Henke Properties, to be used primarily for the improvement of the "Frying Pan Canyon Ranch" for BROCKMAN's personal use.

116.     On or about November 8, 2016, BROCKMAN directed Individual One to transfer approximately $3.5 million from a bank account at Mirabaud Bank in Switzerland, account ***017, in the name of Cabot, to bank account ***800 at Florida Community Bank, NA, for the purchase of the luxury yacht "Turmoil" (later renamed "Albula") for BROCKMAN's personal use.

117.     On or about December 22, 2016, BROCKMAN directed Individual One to transfer approximately $ 29,345,705 from a bank account at Mirabaud Bank in Switzerland, account ***017, in the name of Cabot, to bank account ***800 at Florida Community Bank, NA, for the purchase of the luxury yacht "Turmoil" (later renamed "Albula") for BROCKMAN's personal use.

118.     On or about June 11, 2017, BROCKMAN directed Individual One to forward to him a "Significant Transaction Report," which Individual One had been maintaining for BROCKMAN since 2011, which detailed every transfer of funds involving $100,000 or more regarding the foreign bank accounts of Point, Edge, and Cabot.

119.     On or about February 26, 2011, BROCKMAN, using his encrypted email system, prepared and delivered a "Performance Review" to Individual One, in which BROCKMAN reviewed Individual One's work during the 2010 year, and described expectations and goals for the 2011 year. Namely, BROCKMAN directed Individual One to "take over the accounting and reporting processes for Point" and "maintain the same processes as are currently in effect."

120.     On or about February 26, 2011, BROCKMAN, using his encrypted email system, increased Individual One's annual salary from $325,000 to $420,000, and granted Individual One a

bonus of $275,000.

121. On or about April 5, 2012, BROCKMAN prepared and delivered a "Performance Review" to Individual One in which BROCKMAN reviewed Individual One's work during the 2011 year and described expectations and goals for the 2012 year. Namely, BROCKMAN directed Individual One: "investments should be made directly by Point;" to maintain minimum bank balances in Bermuda to avoid Bermuda freezing assets; to build new banking relationships in Switzerland; and "maintain files for each Vista Fund."

122. On or about April 5, 2012, BROCKMAN granted Individual One a bonus of $225,000.

123. On or about April 7, 2013, BROCKMAN, using his encrypted email system, prepared and delivered a "Performance Review" to Individual One in which BROCKMAN reviewed Individual One's work during the 2012 year and described expectations and goals for the 2013 year. Namely, BROCKMAN directed Individual One: to review the "Doomsday Materials" – undated letters of resignation for all nominees for BROCKMAN's offshore structure; move funds out of Bermuda Commercial Bank; and continue to monitor and keep files on Point's investments in Vista funds.

124. On or about April 7, 2013, BROCKMAN granted Individual One a bonus of $225,000.

125. On or about April 6, 2014, BROCKMAN granted Individual One a bonus of $325,000.

126. On or about April 6, 2014, BROCKMAN, using his encrypted email system, prepared and delivered a "Performance Review" to Individual One in which BROCKMAN reviewed Individual One's work during the 2013 year and described expectations and goals for the 2014 year. Namely, BROCKMAN directed Individual One to: maintain files for each Vista fund; provide a monthly report of business expenses; create a new computer layout including encrypted email servers; and "[o]perate as much as possible in a paperless manner – such that if someone were to come in your door unannounced everything would be in encrypted digital form."

127. On or about January 18, 2015, BROCKMAN sent Individual One a "To Do List" which included: 1) begin the formation of a new Private Equity Management Company and Private Equity Fund that BROCKMAN and his son would manage; 2) notice that BROCKMAN will lease the luxury yacht "Turmoil" (later renamed "Albula") for 10 weeks a year for $150,000 per week plus fuel; and 3) "find a way that someone else runs Point in order to satisfy the auditors."

INDICTMENT                                    19

128.    On or about October 14, 2013, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2012, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point during the 2012 calendar year.

129.    On or about October 11, 2014, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2013, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point during the 2013 calendar year.

130.    On or about October 14, 2015, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2014, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point during the 2014 calendar year.

131.    On or about October 14, 2016, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2015, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point during the 2015 calendar year.

132.    On or about October 24, 2017, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2016, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain income he earned as a result of his investments in Vista funds through Point during the 2016 calendar year.

133.    On or about October 15, 2018, BROCKMAN directed and caused to be prepared and filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2017, which he knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain

AP0120

1   income he earned as a result of his investments in Vista funds through Point during the 2017 calendar

2   year.

3      134.   On or about October 15, 2019, BROCKMAN directed and caused to be prepared and

4   filed with the IRS a U.S. Individual Income Tax Return, Form 1040, for the tax year 2018, which he

5   knew to be false, to wit: BROCKMAN failed to accurately report and pay income tax on capital gain

6   income he earned as a result of his investments in Vista funds through Point during the 2018 calendar

7   year.

8      All in violation of Title 18, United States Code, Section 371.

9   <u>COUNT TWO</u>:        (26 U.S.C. § 7201 – Tax Evasion – 2012)

10     135.   The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

11  Indictment are re-alleged and incorporated as if set forth fully herein.

12     136.   From on or about December 1, 1999, and continuing through on or about October 14,

13  2013 in the Northern District of California and elsewhere, the defendant,

14                           ROBERT T. BROCKMAN,

15  willfully attempted to evade and defeat income tax due and owing to the United States of America, for

16  the tax year 2012, by committing the following affirmative acts, among others:

17         a.   The acts described in paragraphs 43 through 134 of this Indictment; and

18         b.   On or about October 14, 2013, preparing and causing to be prepared, and signing

19  and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

20  1040, for the calendar year 2012, which was submitted to the IRS.

21     All in violation of Title 26, United States Code, Section 7201.

22  <u>COUNT THREE</u>:        (26 U.S.C. § 7201 – Tax Evasion – 2013)

23     137.   The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

24  Indictment are re-alleged and incorporated as if set forth fully herein.

25     138.   From on or about December 1, 1999, and continuing through on or about October 11,

26  2014 in the Northern District of California and elsewhere, the defendant,

27                           ROBERT T. BROCKMAN,

28  willfully attempted to evade and defeat income tax due and owing to the United States of America, for

1   the tax year 2013, by committing the following affirmative acts, among others:

2       a.     The acts described in paragraphs 43 through 134 of this Indictment; and

3       b.     On or about October 11, 2014, preparing and causing to be prepared, and signing

4   and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

5   1040, for the calendar year 2013, which was submitted to the IRS.

6       All in violation of Title 26, United States Code, Section 7201.

7   <u>COUNT FOUR</u>:      (26 U.S.C. § 7201 – Tax Evasion – 2014)

8       139.     The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

9   Indictment are re-alleged and incorporated as if set forth fully herein.

10       140.     From on or about December 1, 1999, and continuing through on or about October 14,

11   2015 in the Northern District of California and elsewhere, the defendant,

12                 ROBERT T. BROCKMAN,

13   willfully attempted to evade and defeat income tax due and owing to the United States of America, for

14   the tax year 2014, by committing the following affirmative acts, among others:

15       a.     The acts described in paragraphs 43 through 134 of this Indictment; and

16       b.     On or about October 14, 2015, preparing and causing to be prepared, and signing

17   and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

18   1040, for the calendar year 2014, which was submitted to the IRS.

19       All in violation of Title 26, United States Code, Section 7201.

20   <u>COUNT FIVE</u>:      (26 U.S.C. § 7201 – Tax Evasion – 2015)

21       141.     The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

22   Indictment are re-alleged and incorporated as if set forth fully herein.

23       142.     From on or about December 1, 1999, and continuing through on or about October 14,

24   2016 in the Northern District of California and elsewhere, the defendant,

25                 ROBERT T. BROCKMAN,

26   willfully attempted to evade and defeat income tax due and owing to the United States of America, for

27   the tax year 2015, by committing the following affirmative acts, among others:

28       a.     The acts described in paragraphs 43 through 134 of this Indictment; and

1      b.      On or about October 14, 2016, preparing and causing to be prepared, and signing

2  and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

3  1040, for the calendar year 2015, which was submitted to the IRS.

4      All in violation of Title 26, United States Code, Section 7201.

5  <u>COUNT SIX</u>:      (26 U.S.C. § 7201 – Tax Evasion – 2016)

6      143.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

7  Indictment are re-alleged and incorporated as if set forth fully herein.

8      144.    From on or about December 1, 1999, and continuing through on or about October 24,

9  2017 in the Northern District of California and elsewhere, the defendant,

10                  ROBERT T. BROCKMAN,

11  willfully attempted to evade and defeat income tax due and owing to the United States of America, for

12  the tax year 2016, by committing the following affirmative acts, among others:

13      a.      The acts described in paragraphs 43 through 134 of this Indictment; and

14      b.      On or about October 24, 2017, preparing and causing to be prepared, and signing

15  and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

16  1040, for the calendar year 2016, which was submitted to the IRS.

17      All in violation of Title 26, United States Code, Section 7201.

18  <u>COUNT SEVEN</u>:      (26 U.S.C. § 7201 – Tax Evasion – 2017)

19      145.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

20  Indictment are re-alleged and incorporated as if set forth fully herein.

21      146.    From on or about December 1, 1999, and continuing through on or about October 15,

22  2018 in the Northern District of California and elsewhere, the defendant,

23                  ROBERT T. BROCKMAN,

24  willfully attempted to evade and defeat income tax due and owing to the United States of America, for

25  the tax year 2017, by committing the following affirmative acts, among others:

26      a.      The acts described in paragraphs 43 through 134 of this Indictment; and

27      b.      On or about October 15, 2018, preparing and causing to be prepared, and signing

28  and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

1   1040, for the calendar year 2017, which was submitted to the IRS.

2          All in violation of Title 26, United States Code, Section 7201.

3   COUNT EIGHT:        (26 U.S.C. § 7201 – Tax Evasion – 2018)

4          147.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

5   Indictment are re-alleged and incorporated as if set forth fully herein.

6          148.    From on or about December 1, 1999, and continuing through on or about October 15,

7   2019 in the Northern District of California and elsewhere, the defendant,

8                         ROBERT T. BROCKMAN,

9   willfully attempted to evade and defeat income tax due and owing to the United States of America, for

10  the tax year 2018, by committing the following affirmative acts, among others:

11         a.      The acts described in paragraphs 43 through 134 of this Indictment; and

12         b.      On or about October 15, 2019, preparing and causing to be prepared, and signing

13  and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form

14  1040, for the calendar year 2018, which was submitted to the IRS.

15         All in violation of Title 26, United States Code, Section 7201.

16  COUNT NINE:         (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2013)

17         149.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

18  Indictment are re-alleged and incorporated as if fully set forth here.

19         150.    On or about June 30, 2014, in the Northern District of California and elsewhere, the

20  defendant,

21                         ROBERT T. BROCKMAN,

22  did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury,

23  an FBAR for the 2013 calendar year disclosing that he had a financial interest in, and signatory and

24  other authority over, bank, securities, and other financial accounts in foreign countries which had

25  aggregate values of more than $10,000, while violating another law of the United States and as part of a

26  pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at

27  Mirabaud Bank in Switzerland and Bermuda Commercial Bank in Bermuda, in the names of Edge and

28  Point.

INDICTMENT                              24                              AP0124

1      All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of

2 Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of

3 Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

4 COUNT TEN:     (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2014)

5      151.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

6 Indictment are re-alleged and incorporated as if fully set forth here.

7      152.    On or about June 30, 2015, in the Northern District of California and elsewhere, the

8 defendant,

9                ROBERT T. BROCKMAN,

10 did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury,

11 an FBAR for the 2014 calendar year disclosing that he had a financial interest in, and signatory and

12 other authority over, bank, securities, and other financial accounts in foreign countries which had

13 aggregate values of more than $10,000, while violating another law of the United States and as part of a

14 pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at

15 Mirabaud Bank in Switzerland and Bermuda Commercial Bank in Bermuda, in the names of Edge,

16 Cabot and Point.

17      All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of

18 Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of

19 Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

20 COUNT ELEVEN:    (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2015)

21      153.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

22 Indictment are re-alleged and incorporated as if fully set forth here.

23      154.    On or about June 30, 2016, in the Northern District of California and elsewhere, the

24 defendant,

25                ROBERT T. BROCKMAN,

26  did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury,

27 an FBAR for the 2015 calendar year disclosing that he had a financial interest in, and signatory and

28 other authority over, bank, securities, and other financial accounts in foreign countries which had

INDICTMENT           25             AP0125

1  aggregate values of more than $10,000, while violating another law of the United States and as part of a

2  pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at

3  Mirabaud Bank in Switzerland, and Bermuda Commercial Bank in Bermuda in the name of Edge, Cabot

4  and Point.

5      All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of

6  Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of

7  Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

8  COUNT TWELVE:   (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2016)

9      155.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

10  Indictment are re-alleged and incorporated as if fully set forth here.

11      156.    On or about April 15, 2017, in the Northern District of California and elsewhere, the

12  defendant,

13                  ROBERT T. BROCKMAN,

14  did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury,

15  an FBAR for the 2016 calendar year disclosing that he had a financial interest in, and signatory and

16  other authority over, bank, securities, and other financial accounts in foreign countries which had

17  aggregate values of more than $10,000, while violating another law of the United States and as part of a

18  pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at

19  Mirabaud Bank in Switzerland and Bermuda Commercial Bank in Bermuda, in the name of Edge, Cabot

20  and Point.

21      All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of

22  Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of

23  Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

24  COUNT THIRTEEN: (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2017)

25      157.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

26  Indictment are re-alleged and incorporated as if fully set forth here.

27      158.    On or about April 15, 2018, in the Northern District of California and elsewhere, the

28  defendant,

ROBERT T. BROCKMAN,

did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury, an FBAR for the 2017 calendar year disclosing that he had a financial interest in, and signatory and other authority over, bank, securities, and other financial accounts in foreign countries which had aggregate values of more than $10,000, while violating another law of the United States and as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at Mirabaud Bank in Switzerland and Bermuda Commercial Bank in Bermuda, in the name of Edge, Cabot and Point.

All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

<u>COUNT FOURTEEN</u>:          (31 U.S.C. §§ 5314 & 5322(b) – Failure to File FBAR – 2018)

159.     The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this Indictment are re-alleged and incorporated as if fully set forth here.

160.     On or about April 15, 2019, in the Northern District of California and elsewhere, the defendant,

ROBERT T. BROCKMAN,

did unlawfully, willfully, and knowingly fail to file with the United States Department of the Treasury, an FBAR for the 2018 calendar year disclosing that he had a financial interest in, and signatory and other authority over, bank, securities, and other financial accounts in foreign countries which had aggregate values of more than $10,000, while violating another law of the United States and as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, to wit: accounts at Mirabaud Bank in Switzerland, in the name of Edge, Cabot and Point.

All in violation of Title 31, United States Code, Sections 5314 & 5322(b); and Title 31, Code of Federal Regulations, Sections 1010.350, 1010.306(c, d) & 1010.840(b) (formerly Title 31, Code of Federal Regulations, Sections 103.24, 103.27(c, d) & 103.59(b)).

\\

\\

INDICTMENT                                    27                                    AP0127

COUNTS FIFTEEN TO THIRTY-FOUR:    (18 U.S.C. § 1343 – Wire Fraud Affecting a

Financial Institution)

161.    The allegations set forth in paragraphs 1 through 27, and 30 through 134 of this

Indictment are re-alleged and incorporated as if set forth fully herein.

162.    From on or about October 8, 2008, and continuing through on or about April 21, 2010, in

the Northern District of California and elsewhere, the defendant,

ROBERT T. BROCKMAN,

did knowingly, and with the intent to defraud, participate in, devise, and intend to devise, a scheme and

artifice to defraud purchasers and sellers of the Debt as to a material matter, and to obtain money and

property by means of materially false and fraudulent pretenses, representations, and promises, and by

means of omission and concealment of material facts with a duty to disclose, all affecting a financial

institution, to wit: Deutsche Bank.

163.    On or about October 8, 2008, a Deutsche Bank employee advised BROCKMAN by email

that there was an opportunity to purchase a portion of the Debt at a discount.  At the time, timely interest

payments were being made by Reynolds & Reynolds, UCSH, and DCS on the Debt as required by the

Credit Agreements.

164.    On or about November 24, 2008, a Reynolds & Reynolds employee emailed a Deutsche

Bank employee and advised that BROCKMAN "would like to find a way to purchase the 2nd & 3rd lien

debt" and was willing to invest $300 million.

165.    From on or about October 8, 2008, and continuing through on or about April 21, 2010,

BROCKMAN, together with others known and unknown to the Grand Jury, engaged in a fraudulent

scheme to deceive the purchasers and sellers of the Debt, through the Administrative Agent Deutsche

Bank, using Edge and Tangarra to purchase Debt, and concealing the fact that Edge, Tangarra, and

Individual One were controlled by BROCKMAN, and otherwise affiliated with DCS, UCSH and

Reynolds & Reynolds.

**The Scheme and Artifice to Defraud**

166.    It was part of the scheme and artifice to defraud for BROCKMAN, through Individual

One, to affirmatively conceal from sellers of the Debt the valuable economic information that the Debt

1  purchasers Edge and Tangarra were under common control with DCS, by BROCKMAN, by making

2  material misrepresentations to Deutsche Bank.

3       167.    It was further part of the scheme and artifice to defraud for BROCKMAN to circumvent

4  material provisions of the Credit Agreements, which prohibited any individual or entity directly or

5  indirectly under common control with DCS and Reynolds & Reynolds from purchasing any of the Debt

6  without prior notice, full disclosure, and amendments to the Credit Agreements.

7       168.    It was further part of the scheme and artifice to defraud for BROCKMAN to cause sellers

8  of the Debt to sell portions of the Debt without informing them that the ultimate purchasers of the Debt

9  were affiliated with DCS, Reynolds & Reynolds, and BROCKMAN.

10       169.    It was further part of the scheme and artifice to defraud for BROCKMAN to use material,

11  non-public information about Reynolds & Reynolds to make decisions about purchasing portions of the

12  Debt through Edge and Tangarra.

13       170.    It was further part of the scheme and artifice to defraud for BROCKMAN to cause and

14  direct DCS, UCSH, and Reynolds & Reynolds to provide Deutsche Bank misleading financial

15  information for distribution to holders of the Debt, including audited financial statements for UCSH and

16  its subsidiaries, as well as quarterly compliance certificates, concealing the fact that an entity under

17  common control with DCS and Reynolds & Reynolds had purchased portions of the Debt.

18       171.    It was further part of the scheme and artifice to defraud for BROCKMAN to expose

19  sellers of the Debt, including Deutsche Bank, to multiple risks, including civil and regulatory liability, as

20  well as reputational damage.

21       172.    It was further part of the scheme and artifice to defraud that, from on or about October 8,

22  2008, and continuing through on or about April 21, 2010, and thereafter, BROCKMAN used a

23  proprietary, encrypted email system to communicate with Individual One and others.

24       173.    It was further part of the scheme and artifice to defraud that, on or about December 29,

25  2008, BROCKMAN, having noticed that the price for all three tiers of the Debt on the secondary market

26  had dropped significantly, sent Individual One an encrypted email indicating that BROCKMAN wanted

27  to purchase second and third tiers of the Debt using Edge as the purchasing entity.

28

INDICTMENT                      29

AP0129

174.     It was further part of the scheme and artifice to defraud that, on or about January 9, 2009, BROCKMAN sent Individual One an encrypted email indicating that Reynolds & Reynolds was likely to incur an accounting loss of approximately $1 billion for the 2008 calendar year which would cause the price of the Debt to drop further.  On January 9, 2009, this fact was not available to the public

175.     It was further part of the scheme and artifice to defraud that, on or about January 10, 2009, BROCKMAN sent Individual One an encrypted email instructing Individual One to open an account with Deutsche Bank and purchase the second and third tiers of the Debt using Edge as the purchasing entity, and informed Individual One that BROCKMAN hoped to eventually purchase all of the second and third tiers of the Debt, which had a face value of $770 million.

176.     It was further part of the scheme and artifice to defraud that, in or about January 2009, Individual One falsely represented to employees of Deutsche Bank that he represented a Swiss client interested in purchasing debt of United States companies, particularly the Debt.  As part of these false representations, Individual One sent Deutsche Bank employees at least three emails purporting to describe the ownership and control of Edge and Tangarra, none of which identified BROCKMAN as the person in control of Edge and Tangarra.  Individual One never disclosed to Deutsche Bank that Individual One was employed by BROCKMAN, or that BROCKMAN retained full dominion and control over Edge and Tangarra with respect to transactions involving the Debt.

177.     It was further part of the scheme and artifice to defraud that, on or about January 26, 2009, BROCKMAN directed and caused Individual One to open an account at Deutsche Bank for Edge.

178.     It was further part of the scheme and artifice to defraud that, on or about March 5, 2009, BROCKMAN directed and caused Individual One to use Edge to purchase portions of the third tier of the Debt with a face value of $10,228,750.  Edge purchased this portion of the Debt from Deutsche Bank, which had purchased it from an investor in the Northern District of California specifically to sell it to Edge.

179.     It was further part of the scheme and artifice to defraud that, on or about March 9, 2009, BROCKMAN directed and caused Individual One to use Edge to purchase portions of the third tier of the Debt with a face value of $6,921,500.  Edge purchased this portion of the Debt from Deutsche Bank, which had purchased it from an investor in the Northern District of California specifically to sell it to

AP0130

Edge.

180. It was further part of the scheme and artifice to defraud that, on or about April 6, 2009, in connection with the trades on March 5, 2009, and March 9, 2009, Individual One executed an "Assignment and Assumption" on behalf of Edge, falsely certifying that Edge was an "Eligible Assignee" under the third lien Credit Agreement.

181. It was further part of the scheme and artifice to defraud that, on or about March 9, 2009, BROCKMAN sent Individual One an encrypted email indicating that he wanted to purchase all of the second and third tiers of the Debt.

182. It was further part of the scheme and artifice to defraud that, on or about March 11, 2009, a Deutsche Bank employee emailed BROCKMAN a seven-page presentation entitled, "Loan Repurchase Follow-Up Discussion Materials." The presentation discussed various strategies through which Reynolds & Reynolds, or an affiliated entity, could purchase portions of the Debt in compliance with the applicable Credit Agreements, and noted that ownership of the second and third tiers of the Debt was concentrated among several investors, including an investor located in the Northern District of California. At this time, Deutsche Bank was unaware that BROCKMAN had already purchased portions of the second and third tiers of the Debt through Individual One, Edge, and Tangarra.

183. It was further part of the scheme and artifice to defraud that, on or about March 30, 2009, BROCKMAN directed and caused Individual One to use Edge to purchase portions of the second tier of the Debt with a face value of $3 million. Edge purchased this Debt from Deutsche Bank, which had purchased it from an investor in the Northern District of California specifically to sell it to Edge.

184. It was further part of the scheme and artifice to defraud that, on or about August 7, 2009, in connection with the trade on March 30, 2009, Individual One executed an "Assignment and Assumption" on behalf of Edge, falsely certifying that Edge was an "Eligible Assignee" under the second lien Credit Agreement.

185. It was further part of the scheme and artifice to defraud that, from on or about March 5, 2009, and continuing through on or about April 22, 2009, BROCKMAN directed and caused Individual One to use Edge to purchase portions of the second and third tiers of the Debt with an aggregate face value of more than $67 million.

AP0131

186.     It was further part of the scheme and artifice to defraud that, from about April 2009, and continuing through April 2010, BROCKMAN directed and caused materially false information about Reynolds & Reynolds's financial performance to be distributed to holders of the Debt, including holders in the Northern District of California.  Specifically, each of the following documents, made available to all holders of the Debt on the dates indicated, were materially false because they did not disclose the fact that Edge, an Affiliate of DCS and Reynolds & Reynolds, and under the dominion and control of BROCKMAN, had purchased portions of the Debt, contrary to the terms of the Credit Agreements:

| Date | Description |
| --- | --- |
| April 1, 2009 | Reynolds & Reynolds's 2008 Audited Financial Statements |
| May 14, 2009 | Reynolds & Reynolds's March 31, 2009 Quarterly Compliance Certificate |
| August 11, 2009 | Reynolds & Reynolds's June 30, 2009 Quarterly Compliance Certificate |
| November 12, 2009 | Reynolds & Reynolds's September 30, 2009 Quarterly Compliance Certificate |
| March 24, 2010 | Reynolds & Reynolds's December 31, 2009 Quarterly Compliance Certificate |
| April 6, 2010 | Reynolds & Reynolds's 2009 Audited Financial Statements |

187.     It was further part of the scheme and artifice to defraud that, on or about April 21, 2010, pursuant to a complete refinancing of the Debt through Deutsche Bank, the Debt was repaid in its entirety, at full face value, including a payment of approximately $67,835,129 to Edge.

188.     It was further part of the scheme and artifice to defraud that, on or about April 21, 2010, BROCKMAN had full dominion and control over the approximately $67,835,129 paid to Edge in connection with the retirement of the portions of the Debt purchased by Edge.

**The Use of the Wires**

189.     It was further part of the scheme and artifice to defraud that, on or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the aforementioned scheme, and attempting to do so, the defendant,

ROBERT T. BROCKMAN,

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically:

| Count | Date | Description |
|-------|------|-------------|
| FIFTEEN | March 12, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| SIXTEEN | March 12, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| SEVENTEEN | March 16, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| EIGHTEEN | March 9, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| NINETEEN | March 9, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| TWENTY | March 9, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| TWENTY-ONE | March 11, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| TWENTY-TWO | March 12, 2009 | Email to employees of Entity One, in the Northern District of California, regarding Entity One's sale of third tier Debt to Deutsche Bank AG |
| TWENTY-THREE | March 31, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |
| TWENTY-FOUR | April 1, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |
| TWENTY-FIVE | April 1, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |
| TWENTY-SIX | April 1, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |

AP0133

| TWENTY-SEVEN | April 7, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |
|---|---|---|
| TWENTY-EIGHT | April 7, 2009 | Email to employee of Entity Two, in the Northern District of California, regarding Entity Two's sale of second tier Debt to Deutsche Bank AG |
| TWENTY-NINE | April 1, 2009 | IntraLinks wire transmission of Reynolds & Reynolds's 2008 Audited Financial Statements to Entity One in the Northern District of California |
| THIRTY | May 14, 2009 | IntraLinks wire transmission of Reynolds & Reynolds's March 31, 2009 Quarterly Financial Statements to Entity One in the Northern District of California |
| THIRTY-ONE | August 11, 2009 | IntraLinks wire transmission of Reynolds & Reynolds's June 30, 2009 Quarterly Financial Statements to Entity One in the Northern District of California |
| THIRTY-TWO | November 12, 2009 | IntraLinks wire transmission of Reynolds & Reynolds's September 30, 2009 Quarterly Financial Statements to Entity One in the Northern District of California |
| THIRTY-THREE | March 24, 2010 | IntraLinks wire transmission of Reynolds & Reynolds's December 31, 2009 Quarterly Financial Statements to Entity One in the Northern District of California |
| THIRTY-FOUR | April 6, 2010 | IntraLinks wire transmission of Reynolds & Reynolds's 2009 Audited Financial Statements to Entity One in the Northern District of California |

All in violation of Title 18, United States Code, Section 1343.

<u>COUNTS THIRTY-FIVE AND THIRTY-SIX</u>:     (18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering); (18 U.S.C. § 1956(a)(1)(A)(ii) – Tax Evasion Money Laundering)

190.    The allegations set forth in paragraphs 1 through 27, 30 through 134, and 163 through 189 of this Indictment are re-alleged and incorporated as if fully set forth here.

191.    Among other transactions, on or about March 2, 2016, in the Northern District of California and elsewhere, the defendant,

ROBERT T. BROCKMAN,

INDICTMENT                    34                    AP0134

did knowingly conduct and attempt to conduct the financial transactions described below on the dates and the amounts indicated, affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1344 (Bank Fraud), knowing that the property involved in these financial transaction represented the proceeds of some form of unlawful activity, with the intent to: (A) conceal and disguise the nature, source, ownership and control of the proceeds of said specified unlawful activity; and (B) to engage in conduct constituting a violation of 26 U.S.C. §§ 7201 and 7206(1).

In furtherance of his objectives, BROCKMAN, among others, intentionally and knowingly directed, caused, and engaged in the following financial transactions:

a.      BROCKMAN engaged in a scheme and artifice to defraud purchasers and sellers of the Debt, including financial institutions whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC"), Deutsche Bank, and others, which included the financial transactions described in COUNTS FIFTEEN through THIRTY-FOUR, paragraphs 163 through 189, of this Indictment;

b.      On or about April 21, 2010, BROCKMAN directed and otherwise caused the Debt to be refinanced by Deutsche Bank in the approximate amount of $1.8 billion, resulting in a payment to Edge in the approximate amount of $67,835,129, which amount was deposited in Edge's account at Bermuda Commercial Bank, account number ***703-01, as more particularly described in paragraphs 187 and 188 of this Indictment ("the Proceeds");

c.      On or about December 16, 2010, BROCKMAN directed and otherwise caused approximately $15 million of the Proceeds to be transferred from the Edge account at Bermuda Commercial Bank, account number ***703-01, to the Regency Management, Ltd., account at Bermuda Commercial Bank, account ***717-01, to be used for the December 28, 2010 purchase and subsequent development of the "Frying Pan Canyon Ranch" in Pitkin County, Colorado;

d.      On or about November 16, 2012, BROCKMAN directed and otherwise caused approximately $49,100,000 of the Proceeds to be transferred from Edge's account at Bermuda Commercial Bank, account ***703-01, to an account in the United States at Bank of America, for investment in a Vista Equity Partners Fund III-Parallel ("VEPF III-Parallel") portfolio company named Sumtotal;

INDICTMENT                                    35                                    AP0135

e.      On or about November 19, 2012, BROCKMAN directed and otherwise caused approximately $26,369,672 of capital gains and profits payable on BROCKMAN's investment, through Point, in Sumtotal to be paid from the VEPF III-Parallel account at First Caribbean International Bank ("FCIB"), account ***696, to Point's account at Mirabaud Bank in Switzerland, account ***463, said amount representing a portion of the Proceeds previously invested by BROCKMAN, through Edge and VEPF III-Parallel, in Sumtotal on November 16, 2012;

f.      On or about December 3, 2012, BROCKMAN directed and otherwise caused approximately $14,282,618 of the Proceeds to be transferred from Point's account at Mirabaud Bank in Switzerland, account ***463, to an account held in the name of a Vista fund named Vista Equity Partners Fund IV-Parallel ("VEPF IV-Parallel"), at FCIB, account ***960, for investment in a VEPF IV-Parallel portfolio company named Sovos;

g.      On or about March 2, 2016, BROCKMAN, as more particularly described below, directed and otherwise caused approximately $47,686,187 of capital gains and profits payable on BROCKMAN's investment, through Point, in Sovos, and derived from the Proceeds, to be paid from the VEPF IV-Parallel account at First Republic Bank in San Francisco, account ***447, to VEPF IV-Parallel's account at FCIB, account ***960, concealing BROCKMAN's dominion and control over the Proceeds, Point, and his liability to the IRS for income taxes due and owing on the capital gains realized by him through Point; and

h.      On or about March 2, 2016, BROCKMAN, as more particularly described below, directed and otherwise caused approximately $41,545,359 of capital gains and profits payable on BROCKMAN's investment, through Point, in Sovos, and derived from the Proceeds, to be paid from the VEPF IV-Parallel account at FCIB, account ***960, to Point's account at Mirabaud Bank in Switzerland, account ***463, concealing BROCKMAN's dominion and control over these proceeds, Point, and his liability to the IRS for income taxes due and owing on capital gains realized by him through Point.

\\

\\

\\

INDICTMENT               36

AP0136

| Count | Date | Amount | Origin of Proceeds | Destination of Proceeds |
|-------|------|--------|--------------------|-----------------------|
| THIRTY-FIVE | March 2, 2016 | $47,686,187 | VEPF IV-Parallel First Republic Bank, Account No ***447 | VEPF IV-Parallel FCIB, Account No. ***960 |
| THIRTY-SIX | March 2, 2016 | $41,545,359 | VEPF IV-Parallel FCIB, Account No. ***960 | Point Investment, Ltd., Mirabaud Bank, Account No. ***463 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(ii), 1956(a)(1)(B)(i), and 2.

COUNT THIRTY-SEVEN:   (18 U.S.C. § 1956(a)(2)(B)(i) – International Concealment

Money Laundering)

The allegations set forth in paragraphs 1 through 27, 30 through 134, 163 through 189, and 191 of this Indictment are re-alleged and incorporated as if fully set forth here.

192.   Among other transactions, on or about March 2, 2016, in the Northern District of California and elsewhere, the defendant,

ROBERT T. BROCKMAN,

did knowingly transfer and attempt to transfer funds, that is $41,545,359, from a place in the United States, namely San Francisco, California, to a place outside the United States, namely, Switzerland, in a series of financial transactions, as described in COUNTS THIRTY-FIVE and THIRTY-SIX, paragraph 191 of this Indictment, knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity, and knowing that the transfer was designed in whole and in part to conceal and disguise, the nature, ownership, and control of the proceeds of specified unlawful activity, namely violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1344 (Bank Fraud).

All in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

COUNT THIRTY-EIGHT:        (18 U.S.C. § 1512(b)(2)(B) – Evidence Tampering)

193.   The allegations set forth in paragraphs 1 through 27, 30 through 134, 163 through 189, and 191 of this Indictment are re-alleged and incorporated as if fully set forth here.

AP0137

194.     In or about June 2016, BROCKMAN knew it was likely that there would be a federal grand jury investigation in the Northern District of California to determine whether violations of, among other things, Title 26, United States Code, Section 7201, had been committed involving Point. BROCKMAN further knew that his relationship to AEBCT, Spanish Steps, SJTC, and Point, and their Directors, Officers, and Trustees, would be material to that investigation.

195.     From on or about June 10, 2016, and continuing through on or about October 14, 2016, in the Northern District of California and elsewhere, the defendant,

ROBERT T. BROCKMAN,

did knowingly and corruptly persuade Individual One to alter, destroy, and mutilate documents and computer evidence with the intent to impair their integrity and availability for use in an official proceeding, to wit: a federal grand jury investigation in the Northern District of California.

196.     BROCKMAN's corrupt actions included:

a.     In or about June 2016, BROCKMAN learned that Individual Three, who was the widow of a former nominee, was in possession of materials including documents and electronic media which could reveal that BROCKMAN had complete dominion and control over AEBCT, Spanish Steps, SJTC, and Point, as well as their Directors, Officers, and Trustees, and that BROCKMAN received the benefit of all the income deposited into the bank accounts in these entities' names;

b.     Beginning in or about June 2016, and continuing until in or about October 2016, BROCKMAN engaged in a scheme to obstruct justice by destroying evidence, and causing others to destroy evidence, in an effort to prevent law enforcement authorities from learning of BROCKMAN's true relationship with AEBCT, Spanish Steps, SJTC, and Point, as well as their Directors, Officers, and Trustees;

c.     BROCKMAN engaged in multiple instances of obstructive conduct, including: causing Individual One to make several trips from places outside the United States into the United States for the purpose of destroying documents and electronic media; causing Individual One to physically destroy documents and electronic media, which Individual One did using shredders, hammers, and other means; and causing Individual One to transfer documents and electronic media from Individual Three's possession to BROCKMAN's possession.

AP0138

1     All in violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

2     COUNT THIRTY-NINE:            (18 U.S.C. § 1512(c)(1) – Destruction of Evidence)

3         197.    The allegations set forth in paragraphs 1 through 27, 30 through 134, 163 through 189,

4     191 and 196 of this Indictment are re-alleged and incorporated as if fully set forth here.

5         198.    From on or about June 10, 2016, and continuing through on or about October 14, 2016, in

6     the Northern District of California and elsewhere, the defendant

7                             ROBERT T. BROCKMAN,

8     did knowingly and corruptly alter, destroy, and mutilate documents and computer evidence, with the

9     intent to impair their integrity and availability for use in an official proceeding, to wit: a federal grand

10    jury investigation in the Northern District of California.

11        All in violation of Title 18, United States Code, Sections 1512(c)(1).

12    FORFEITURE ALLEGATION:         (18 U.S.C. 982(a)(2)(A) and 28 U.S.C. § 2461(c) (Forfeiture of

13                                Wire Fraud Proceeds))

14        199.    The allegations contained in this Indictment are re-alleged and incorporated by reference

15    for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A) and

16    Title 28, United States Code, Section 2461(c).

17        200.    Upon conviction for any of the offenses alleged in COUNTS FIFTEEN through

18    THIRTY-FOUR, the defendant,

19                             ROBERT T. BROCKMAN,

20    shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A) and

21    Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes, or is

22    derived from, proceeds the defendant obtained, directly or indirectly, as a result of said offenses.  Such

23    property shall include approximately $67,835,129 in United States currency.

24        201.    If any of the property described in paragraph 200 above, as a result of any act or omission

25    of the defendant:

26            a.      cannot be located upon the exercise of due diligence;

27            b.      has been transferred or sold to, or deposited with a third party;

28            c.      has been placed beyond the jurisdiction of this Court;

INDICTMENT                              39                              AP0139

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without
          difficulty,

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c),
incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant's up to the
value of the property described above.

        All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States
Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

FORFEITURE ALLEGATION:        (18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c) (Forfeiture of
                              Money Laundering Proceeds))

        202.    The allegations contained in this Indictment are re-alleged and incorporated by reference
for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) and
Title 28, United States Code, Section 2461(c).

        203.    Upon conviction for any of the offenses alleged in COUNTS THIRTY-FIVE through
THIRTY-SEVEN, the defendant,

                            ROBERT T. BROCKMAN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1) and Title
28, United States Code, Section 2461(c), all property, real or personal, involved in such an offense, or
any property traceable to such property.  Such property shall include approximately $47,686,187 in
United States currency.

        204.    If any of the property described in paragraph 203 above, as a result of any act or omission
of the defendant:

        a.    cannot be located upon exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without
              difficulty,

INDICTMENT                            40                                    AP0140

1   the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

2   United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

3        All pursuant to Title 18, United States Code, Section 982(a)(1), Title 28, United States Code,

4   Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

5

6   DATED: October 1, 2020                   A TRUE BILL.

7

8                                    /s/

                                 FOREPERSON

9

10   DAVID L. ANDERSON
    United States Attorney

11

12

13   COREY J. SMITH
    Senior Litigation Counsel

14   Tax Division

15

16

17   MICHAEL G. PITMAN
    Assistant United States Attorney

18

19

20

21

22

23

24

25

26

27

28

                                                          AP0141

INDICTMENT                      41

**Exhibit 4**

AP0142

| Form 668-A(ICS) (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/21/2022**

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**401 CONGRESS AVENUE, SUITE 3100**
**AUSTIN, TX 78701**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

Identifying number(s) ████3444

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury**.  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N      www.irs.gov      Form **668-A** (Rev.4-2020)
**Part 4 –** For Taxpayer

AP0143

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**–The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**–Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**–Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.–A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.–Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.–The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.–Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.–Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.–In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.–Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/21/2022**

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**401 CONGRESS AVENUE, SUITE 3100**
**AUSTIN, TX 78701**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

Identifying number(s) ▮▮▮▮**3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to **04/11/2022**

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative **/S/ ROBERT HUNT** | Title **REVENUE OFFICER** |
|---|---|

Catalog Number 20435N          www.irs.gov          Form **668-A** (Rev.4-2020)
**Part 4** – For Taxpayer

AP0145

---

## Excerpts from the Internal Revenue Code

### Sec. 6331. LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(c) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333. PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return-

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form 668-A(ICS)<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/21/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE**<br>**ROBERT HUNT**<br>**8122 DATAPOINT DR 12TH FLOOR**<br>**MS 5434**<br>**SAN ANTONIO, TX 78229** | **(210)326-0313** |
| | Name and address of taxpayer |
| | **POINT INVESTMENTS, LTD. AS NOMINEE OF**<br>**ROBERT T. BROCKMAN** |
| To **VISTA EQUITY PARTNERS, LLC**<br>**ATTN: LEVY PROCESSING**<br>**401 CONGRESS AVENUE, SUITE 3100**<br>**AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027** |
| | Identifying number(s)  ▮▮▮▮**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

**This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** (or are already obligated for) **when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order\*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

\*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |

AP0147

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(c) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/21/2022**

Reply to **INTERNAL REVENUE SERVICE**
  **ROBERT HUNT**
  **8122 DATAPOINT DR 12TH FLOOR**
  **MS 5434**
  **SAN ANTONIO, TX 78229**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To **VISTA EQUITY PARTNERS, LLC**
  **ATTN: LEVY PROCESSING**
  **401 CONGRESS AVENUE, SUITE 3100**
  **AUSTIN, TX 78701**

Identifying number(s)      ▇3444

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time.** Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury.** If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative **/S/ ROBERT HUNT** | Title **REVENUE OFFICER** |
|---|---|

Catalog Number 20435N            www.irs.gov            Form **668-A** (Rev.4-2020)
**Part 4 – For Taxpayer**

AP0149

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer).  Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*   *   *   *   *   *   *   *   *   *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| Date **03/21/2022** | Telephone number of IRS office |
|---|---|

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

**(210)326-0313**

Name and address of taxpayer

**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**4 EMBARCADERO CENTER, 20TH FLOOR**
**SAN FRANCISCO, CA 94111**

Identifying number(s)          ██████3444

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022
   Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

   **Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

   If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

   If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

   If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

   *Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N                           www.irs.gov                       Form **668-A**  (Rev.4-2020)
                                          **Part 4 –** For Taxpayer

---

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

Case 1:23-cv-00630-JFC-TMR Document 10-1-4 Filed 08/03/23 Page 153 of 345 PageID #: 220

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date  **03/21/2022** | Telephone number of IRS office |
| Reply to  **INTERNAL REVENUE SERVICE** | **(210)326-0313** |
| **ROBERT HUNT** | |
| **8122 DATAPOINT DR 12TH FLOOR** | |
| **MS 5434** | Name and address of taxpayer |
| **SAN ANTONIO, TX 78229** | **POINT INVESTMENTS, LTD. AS NOMINEE OF**<br>**ROBERT T. BROCKMAN** |
| To  **VISTA EQUITY PARTNERS, LLC** | **3465 OVERBROOK LN** |
| **ATTN: LEVY PROCESSING** | **HOUSTON, TX 77027** |
| **4 EMBARCADERO CENTER, 20ᵀᴴ FLOOR** | |
| **SAN FRANCISCO, CA  94111** | Identifying number(s)  ▇▇▇▇**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  **04/11/2022**

    Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

    **Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

    If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

    If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

    If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

    *Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/  ROBERT  HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A**  (Rev.4-2020) |

AP0153

## Excerpts from the Internal Revenue Code

### Sec. 6331. LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333. PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*   *   *   *   *   *   *   *   *   *

### Applicable Sections of Internal Revenue Code

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date  **03/21/2022** | Telephone number of IRS office |
| Reply to  **INTERNAL REVENUE SERVICE**<br>        **ROBERT HUNT**<br>        **8122 DATAPOINT DR 12TH FLOOR**<br>        **MS 5434**<br>        **SAN ANTONIO, TX 78229** | **(210)326-0313** |
| | Name and address of taxpayer |
| To  **VISTA EQUITY PARTNERS, LLC**<br>     **ATTN: LEVY PROCESSING**<br>     **4 EMBARCADERO CENTER, 20TH FLOOR**<br>     **SAN FRANCISCO, CA  94111** | **POINT INVESTMENTS, LTD. AS ALTER EGO OF**<br>**ROBERT T. BROCKMAN**<br>**3465 OVERBROOK LN**<br>**HOUSTON, TX 77027** |
| | Identifying number(s)          ▓▓▓▓**3444** |

Special instructions for certain property levied

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  **04/11/2022**

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough from this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, etc. that they have** *(or are already obligated for)* **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4 –** For Taxpayer | Form **668-A**  (Rev.4-2020) |

Case 1:23-cv-00630-TDC Document 26-1 Filed 08/23/23 Page 156 of 345 PageID #: 223

## Excerpts from the Internal Revenue Code

### Sec. 6331.  LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333.  PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

Case 1:23-cv-00630-JLT-D Document 12-1  Filed 08/03/22  Page 157 of 345  PageID #: 224

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| Date **03/21/2022** | Telephone number of IRS office |
|---|---|

Reply to  **INTERNAL REVENUE SERVICE**
       **ROBERT HUNT**
       **8122 DATAPOINT DR 12TH FLOOR**
       **MS 5434**
       **SAN ANTONIO, TX 78229**

**(210)326-0313**

Name and address of taxpayer

**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To  **VISTA EQUITY PARTNERS, LLC**
   **ATTN: LEVY PROCESSING**
   **4 EMBARCADERO CENTER, 20TH FLOOR**
   **SAN FRANCISCO, CA  94111**

Identifying number(s)          ████**3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have (or are already obligated for) when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/  ROBERT  HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N              www.irs.gov              Form **668-A**  (Rev.4-2020)
**Part 4 –** For Taxpayer

---

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(c) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\* \* \* \* \* \* \* \* \* \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/21/2022**

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**1111 BROADWAY, SUITE 1980**
**OAKLAND, CA 94607**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

Identifying number(s)  ████**3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

**This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to **04/11/2022**

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time.** Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N                www.irs.gov                Form **668-A** (Rev.4-2020)
**Part 4** – For Taxpayer

---

## Excerpts from the Internal Revenue Code

### Sec. 6331.  LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer).  Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1).  No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333.  PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*    *    *    *    *    *    *    *    *    *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date  **03/21/2022** | Telephone number of IRS office |
| Reply to  **INTERNAL REVENUE SERVICE**<br>**ROBERT HUNT**<br>**8122 DATAPOINT DR 12TH FLOOR**<br>**MS 5434**<br>**SAN ANTONIO, TX 78229** | **(210)326-0313** |
| | Name and address of taxpayer |
| To  **VISTA EQUITY PARTNERS, LLC**<br>**ATTN: LEVY PROCESSING**<br>**1111 BROADWAY, SUITE 1980**<br>**OAKLAND, CA  94607** | **POINT INVESTMENTS, LTD. AS ALTER EGO OF**<br>**ROBERT T. BROCKMAN**<br>**3465 OVERBROOK LN**<br>**HOUSTON, TX 77027** |
| | Identifying number(s)  ████**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N                   www.irs.gov                   Form **668-A**  (Rev.4-2020)
**Part 4** – For Taxpayer

AP0161

---

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\* \* \* \* \* \* \* \* \* \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/21/2022**

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**1111 BROADWAY, SUITE 1980**
**OAKLAND, CA 94607**

Identifying number(s)  ████**3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  **04/11/2022**

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N         www.irs.gov         Form **668-A** (Rev.4-2020)
**Part 4 –** For Taxpayer

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return-

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*  *  *  *  *  *  *  *  *  *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/21/2022**<br>Reply to **INTERNAL REVENUE SERVICE**<br>    **ROBERT HUNT**<br>    **8122 DATAPOINT DR 12TH FLOOR**<br>    **MS 5434**<br>    **SAN ANTONIO, TX 78229** | Telephone number of IRS office<br>**(210)326-0313**<br><br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN** |
| To **VISTA EQUITY PARTNERS, LLC**<br>    **ATTN: LEVY PROCESSING**<br>    **1111 BROADWAY, SUITE 1980**<br>    **OAKLAND, CA  94607** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)         **3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | **Total Amount Due** | $1,461,337,340.89 |

We figured the interest and late payment penalty to <u>04/11/2022</u>

    Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

    **Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

    If you decide to pay the amount you owe now, please <u>bring</u> a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

    If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

    If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

    *Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A**  (Rev.4-2020) |

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see**: Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/21/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE**<br>    **ROBERT HUNT**<br>    **8122 DATAPOINT DR 12TH FLOOR**<br>    **MS 5434**<br>    **SAN ANTONIO, TX 78229** | **(210)326-0313**<br><br>Name and address of taxpayer |
| To **ROBERT SMITH, AS FOUNDER, CHAIRMAN, AND CEO OF**<br>  **VISTA EQUITY PARTNERS, LLC**<br>  **ATTN: LEVY PROCESSING**<br>  **401 CONGRESS AVENUE, SUITE 3100**<br>  **AUSTIN, TX 78701** | **POINT INVESTMENTS, LTD. AS ALTER EGO OF**<br>**ROBERT T. BROCKMAN**<br>**3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)      ██████**3444** |

Special instructions for certain property levied: Robert Smith, as Founder, Chairman, and CEO of Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

**This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

   Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

   **Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

   If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury**.  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

   If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

   If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

   *Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4 –** For Taxpayer | Form **668-A**  (Rev.4-2020) |

---

## Excerpts from the Internal Revenue Code

### Sec. 6331.  LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(c) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333.  PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that–

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\* \* \* \* \* \* \* \* \* \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| Date **03/21/2022** | Telephone number of IRS office |
|---|---|

Reply to  **INTERNAL REVENUE SERVICE**
    **ROBERT HUNT**
    **8122 DATAPOINT DR 12TH FLOOR**
    **MS 5434**
    **SAN ANTONIO, TX 78229**

Telephone number of IRS office
**(210)326-0313**

Name and address of taxpayer
**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To  **ROBERT SMITH, AS FOUNDER, CHAIRMAN, AND CEO OF**
    **VISTA EQUITY PARTNERS, LLC**
    **ATTN: LEVY PROCESSING**
    **401 CONGRESS AVENUE, SUITE 3100**
    **AUSTIN, TX 78701**

Identifying number(s)    ▮3444

Special instructions for certain property levied: Robert Smith, as Founder, Chairman, and CEO of Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

**This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | **Total Amount Due** | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar Institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order") to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |

AP0169

Case 1:23-cv-00630-TDC Document 12-1 Filed 03/23/22 Page 170 of 345 PageID #: 237

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

* * * * * * * * * *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

AP0170

Case 1:23-cv-00630-JFL-026 Document 12-15-4 Filed 08/03/23 Page 13 of 349 PageID #: 238

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/21/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE**<br>     **ROBERT HUNT**<br>     **8122 DATAPOINT DR 12TH FLOOR**<br>     **MS 5434**<br>     **SAN ANTONIO, TX 78229** | **(210)326-0313**<br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS NOMINEE OF**<br>**ROBERT T. BROCKMAN** |
| To **ROBERT SMITH, AS FOUNDER, CHAIRMAN, AND CEO OF**<br>   **VISTA EQUITY PARTNERS, LLC**<br>   **ATTN: LEVY PROCESSING**<br>   **401 CONGRESS AVENUE, SUITE 3100**<br>   **AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)        ▮▮▮▮**3444** |

Special instructions for certain property levied: Robert Smith, as Founder, Chairman, and CEO of Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P., Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.** Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury**.  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A**  (Rev.4-2020) |

AP0171

---

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for the surrender of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return-

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If-

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

Case 1:23-cv-00630-22-FTD-DomDment1D.6-4 Filed 08/03/23-22 Page107320349 PageID #: 240

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date   **03/21/2022** | Telephone number of IRS office |
| Reply to   **INTERNAL REVENUE SERVICE**<br>         **ROBERT HUNT**<br>         **8122 DATAPOINT DR 12TH FLOOR**<br>         **MS 5434**<br>         **SAN ANTONIO, TX 78229** | **(210)326-0313**<br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN** |
| To   **ROBERT SMITH, AS FOUNDER, CHAIRMAN, AND CEO OF VISTA EQUITY PARTNERS, LLC**<br>    **ATTN: LEVY PROCESSING**<br>    **401 CONGRESS AVENUE, SUITE 3100**<br>    **AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)          █████**3444** |

Special instructions for certain property levied: Robert Smith, as Founder, Chairman, and CEO of Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to <u>04/11/2022</u>

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please <u>bring</u> a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury.** If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States (at a sale pursuant to section 6335(e)) relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

Case 1:23-cv-00630-JDG-TOD-Document-121-5  Filed 08/03/23  Page 175 of 345 PageID #: 242

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date  **03/22/2022** | Telephone number of IRS office |
| Reply to  **INTERNAL REVENUE SERVICE**<br>        **ROBERT HUNT**<br>        **8122 DATAPOINT DR 12TH FLOOR**<br>        **MS 5434**<br>        **SAN ANTONIO, TX 78229** | **(210)326-0313**<br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN** |
| To  **VISTA EQUITY PARTNERS, LLC**<br>     **ATTN: LEVY PROCESSING**<br>     **401 CONGRESS AVENUE, SUITE 3100**<br>     **AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)    ▓▓▓▓**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time.** Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |

Case 1:23-cv-00630-TJM Document 26-1 Filed 08/23/23 Page 176 of 345 PageID #: 243

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*    *    *    *    *    *    *    *    *    *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| Date **03/22/2022** | Telephone number of IRS office |
|---|---|

Reply to **INTERNAL REVENUE SERVICE**
    **ROBERT HUNT**
    **8122 DATAPOINT DR 12TH FLOOR**
    **MS 5434**
    **SAN ANTONIO, TX 78229**

**(210)326-0313**

Name and address of taxpayer

**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To **VISTA EQUITY PARTNERS, LLC**
    **ATTN: LEVY PROCESSING**
    **401 CONGRESS AVENUE, SUITE 3100**
    **AUSTIN, TX 78701**

Identifying number(s)      **3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe. This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  **04/11/2022**

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time.** Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please <u>bring</u> a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury**. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service. You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| Catalog Number 20435N | www.irs.gov<br>**Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |
|---|---|---|

Case 1:23-cv-00630-TDC Document 10-4 Filed 08/23/23 Page 37 of 49 PageID #: 245

___

## Excerpts from the Internal Revenue Code

### Sec. 6331. LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333. PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

   *   *   *   *   *   *   *   *   *   *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

___

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/22/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE** <br> **ROBERT HUNT** <br> **8122 DATAPOINT DR 12TH FLOOR** <br> **MS 5434** <br> **SAN ANTONIO, TX 78229** | **(210)326-0313** <br><br> Name and address of taxpayer |
| To **VISTA EQUITY PARTNERS, LLC** <br> **ATTN: LEVY PROCESSING** <br> **401 CONGRESS AVENUE, SUITE 3100** <br> **AUSTIN, TX 78701** | **POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN** <br> **3465 OVERBROOK LN** <br> **HOUSTON, TX 77027** <br><br> Identifying number(s) ███**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.**  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have *(or are already obligated for)* when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury**.  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| | | |
|---|---|---|
| Catalog Number 20435N | www.irs.gov <br> **Part 4** – For Taxpayer | Form **668-A** (Rev.4-2020) |

AP0179

---

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer).  Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1).  No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

| Form **668-A(ICS)**<br>(April 2020) | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/22/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE**<br>**ROBERT HUNT**<br>**8122 DATAPOINT DR 12TH FLOOR**<br>**MS 5434**<br>**SAN ANTONIO, TX 78229** | **(210)326-0313** |
| | Name and address of taxpayer |
| To **VISTA EQUITY PARTNERS, LLC**<br>**ATTN: LEVY PROCESSING**<br>**401 CONGRESS AVENUE, SUITE 3100**<br>**AUSTIN, TX 78701** | **POINT INVESTMENTS, LTD. AS NOMINEE OF**<br>**ROBERT T. BROCKMAN**<br>**3465 OVERBROOK LN**<br>**HOUSTON, TX 77027** |
| | Identifying number(s) ▮▮▮**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N · www.irs.gov · Form **668-A** (Rev.4-2020)

**Part 4 –** For Taxpayer

AP0181

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer).  Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1).  No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

AP0182

| Form 668-A(ICS) (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/23/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE**<br>**ROBERT HUNT**<br>**8122 DATAPOINT DR 12TH FLOOR**<br>**MS 5434**<br>**SAN ANTONIO, TX 78229** | **(210)326-0313**<br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS ALTER EGO OF ROBERT T. BROCKMAN** |
| To **VISTA EQUITY PARTNERS, LLC**<br>**ATTN: LEVY PROCESSING**<br>**401 CONGRESS AVENUE, SUITE 3100**<br>**AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)  ▉**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | **Total Amount Due** | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** (or are already obligated for) **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| Catalog Number 20435N | www.irs.gov | Form **668-A** (Rev.4-2020) |
|---|---|---|

Part 4 – For Taxpayer

AP0183

Case 1:23-cv-00630-TMC Document 1-1 Filed 08/23/22 Page 184 of 345 PageID #: 251

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If–

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*   *   *   *   *   *   *   *   *   *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this notice.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form 668-A(ICS) (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

Date **03/23/2022**

| Reply to | **INTERNAL REVENUE SERVICE**<br>**ROBERT HUNT**<br>**8122 DATAPOINT DR 12TH FLOOR**<br>**MS 5434**<br>**SAN ANTONIO, TX 78229** | Telephone number of IRS office<br>**(210)326-0313**<br><br>Name and address of taxpayer<br>**POINT INVESTMENTS, LTD. AS ALTER EGO OF**<br>**ROBERT T. BROCKMAN** |
|---|---|---|
| To | **VISTA EQUITY PARTNERS, LLC**<br>**ATTN: LEVY PROCESSING**<br>**401 CONGRESS AVENUE, SUITE 3100**<br>**AUSTIN, TX 78701** | **3465 OVERBROOK LN**<br>**HOUSTON, TX 77027**<br><br>Identifying number(s)            ▮▮▮▮**3444** |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please <u>bring</u> a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N                    www.irs.gov                    Form **668-A** (Rev.4-2020)
**Part 4 –** For Taxpayer

---

## Excerpts from the Internal Revenue Code

**Sec. 6331. LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States (at a sale pursuant to section 6335(e)) relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.–– If–

(1) any property has been levied upon, and

(2) the Secretary determines that––

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

---

Catalog Number 20435N                    www.irs.gov                    Form **668-A**  (Rev.4-2020)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| Date **03/23/2022** | Telephone number of IRS office |
|---|---|

Reply to **INTERNAL REVENUE SERVICE**
**ROBERT HUNT**
**8122 DATAPOINT DR 12TH FLOOR**
**MS 5434**
**SAN ANTONIO, TX 78229**

**(210)326-0313**

Name and address of taxpayer

**POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN**
**3465 OVERBROOK LN**
**HOUSTON, TX 77027**

To **VISTA EQUITY PARTNERS, LLC**
**ATTN: LEVY PROCESSING**
**401 CONGRESS AVENUE, SUITE 3100**
**AUSTIN, TX 78701**

Identifying number(s)          ▮▮▮**3444**

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2004 | $138,769,435.80 | $164,757,613.49 | $303,527,049.29 |
| 1040 | 12/31/2005 | $57,351,596.75 | $57,554,270.62 | $114,905,867.37 |
| 1040 | 12/31/2006 | $68,043,369.22 | $55,985,664.76 | $124,029,033.98 |
| 1040 | 12/31/2007 | $4,410,332.47 | $3,160,008.77 | $7,570,341.24 |
| 1040 | 12/31/2010 | $192,711,260.00 | $101,379,519.19 | $294,090,779.19 |
| 1040 | 12/31/2012 | $38,003,099.50 | $16,553,200.91 | $54,556,300.41 |
| 1040 | 12/31/2013 | $64,644,746.25 | $25,507,316.12 | $90,152,062.37 |
| 1040 | 12/31/2014 | $24,772,817.43 | $,8,784,640.95 | $33,557,458.38 |
| 1040 | 12/31/2015 | $93,556,099.00 | $27,843,510.79 | $121,399,609.79 |
| | | | Total Amount Due | See page 2 |

We figured the interest and late payment penalty to  04/11/2022

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** *(or are already obligated for)* **when they would have paid you. This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury**.  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

*Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

| Catalog Number 20435N | www.irs.gov | Form **668-A** (Rev.4-2020) |
|---|---|---|

**Part 4 –** For Taxpayer

## Excerpts from the Internal Revenue Code

**Sec. 6331.  LEVY AND DISTRAINT.**

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means.  Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof.  In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332.  SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount.  Such organization shall pay over such amount 90 days after service of notice of levy.  Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest therein) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to property or rights to property arising from such surrender or payment.

**Sec. 6333.  PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343.  AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy.  For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

*   *   *   *   *   *   *   *   *   *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

| Form **668-A(ICS)** (April 2020) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

| | |
|---|---|
| Date **03/23/2022** | Telephone number of IRS office |
| Reply to **INTERNAL REVENUE SERVICE** **ROBERT HUNT** **8122 DATAPOINT DR 12TH FLOOR** **MS 5434** **SAN ANTONIO, TX 78229** | **(210)326-0313** |
| | Name and address of taxpayer |
| To **VISTA EQUITY PARTNERS, LLC** **ATTN: LEVY PROCESSING** **401 CONGRESS AVENUE, SUITE 3100** **AUSTIN, TX 78701** | **POINT INVESTMENTS, LTD. AS NOMINEE OF ROBERT T. BROCKMAN** **3465 OVERBROOK LN** **HOUSTON, TX 77027** |
| | Identifying number(s)           ▮3444 |

Special instructions for certain property levied: Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund III (Parallel), L.P.; Vista Equity Partners Fund III (Parallel), L.P.; and VEPF III AIV (Cayman), L.P.

This isn't a bill for taxes you owe.  This is a notice of levy we are using to collect money owed by the taxpayer named above.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/2016 | $41,857,749.50 | $10,972,003.39 | $52,829,752.89 |
| 1040 | 12/31/2017 | $189,267,071.25 | $32,497,110.91 | $229,334,409.58 |
| 1040 | 12/31/2018 | $30,759,335.25 | $4,625,341.15 | $35,384,676.40 |
| | | | | |
| | | | Total Amount Due | $1,461,337,340.89 |

We figured the interest and late payment penalty to  04/11/2022

   Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

   **Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** (or are already obligated for) **when they would have paid you.  This levy does not attach to funds in IRAs, Self-Employed Individuals' Retirement Plans, or any other retirement plans in your possession or control.**

   If you decide to pay the amount you owe now, please <u>bring</u> a guaranteed payment (cash, cashier's check, certified check, or money order*) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money.  Make checks and money orders payable to **United States Treasury.**  If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

   If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

   If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

   *Visit www.irs.gov to determine the closest IRS office that furnishes cash payment processing service.  You will need to make an appointment at the IRS office in order to make a payment.

| Signature of Service Representative | Title |
|---|---|
| **/S/ ROBERT HUNT** | **REVENUE OFFICER** |

Catalog Number 20435N                    www.irs.gov                    Form **668-A** (Rev.4-2020)
                    **Part 4** – For Taxpayer

AP0189

Case 1:23-cv-00630-TMD Document 10-1 Filed 08/23/22 Page 190 of 345 PageID #: 257

## Excerpts from the Internal Revenue Code

### Sec. 6331. LEVY AND DISTRAINT.

(b) **Seizure and Sale of Property.**—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) **Successive Seizures.**—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) **Requirement.**—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333. PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 2 years from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.— If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

**Useful Item You may want to see:** Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceedings. |  |

## MOTION PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002(M) AND (Q) AND 9007 FOR ORDER SCHEDULING RECOGNITION HEARING AND APPROVING FORM AND MANNER OF NOTICE

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as putative foreign representatives and duly-appointed Joint Provisional Liquidators (in such capacity, the "Petitioners") for Point Investments Ltd. (the "Debtor") in respect of the winding up proceeding pending before the Supreme Court of Bermuda, Commercial Court, Case 2020: No. 300, by and through the undersigned counsel, respectfully submit this motion (the "Motion") for entry of an order substantially in the form annexed hereto as Exhibit A (the "Proposed Order"): (i) scheduling April 22, 2022 (or a date as soon thereafter as the Court's schedule permits) (the "Recognition Hearing Date") as the evidentiary hearing (the "Recognition Hearing") on the relief sought in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* (the "Verified Petition") and *Official Form 401, Chapter 15 Petition for Recognition of a Foreign Proceeding* (together, the "Petitions"); (ii) setting the date that is seven days prior to the Recognition Hearing Date as the deadline by which any responses or

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0191

objections to the Petitions must be filed with the Court (the "Objection Deadline"); (iii) approving the form and manner of notice of the Petitions, the Recognition Hearing Date, and the Objection Deadline (the "Notice Procedures"), including the form of notice that is attached as Exhibit 1 to the Proposed Order (the "Recognition Hearing Notice"); (iv) granting related relief as provided herein; and (v) granting such other relief as the Court deems just and proper. In support of this Motion, the Petitioners respectfully represent as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1410.

## BACKGROUND

2.    The relevant factual background with respect to the relief sought in this Motion is set forth in the Verified Petition. The Court may find therein a description of, among other things, the Debtor's corporate structure and U.S. assets, as well as a discussion of the events leading to the filing of the Petitions.

## RELIEF REQUESTED

3.    This Motion seeks entry of an order, substantially in the form of the Proposed Order attached hereto as Exhibit A: (i) scheduling April 22, 2022 at 10:00 a.m. (prevailing Eastern Time), or a date as soon thereafter as the Court's schedule permits, as the Recognition Hearing Date; (ii) setting the Objection Deadline as a date seven days prior to the Recognition Hearing Date; (iii) approving the Notice Procedures, including the Recognition Hearing Notice attached to the Proposed Order as Exhibit 1; (iv) granting related relief as provided herein; and (v) granting such other and further relief as the Court deems just and proper.

AP0192

## BASIS FOR RELIEF REQUESTED

4.     Rule 2002(q)(l) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that at least 21 days' notice of any hearing to consider the Petitions must be given to the "debtor," to "all administrators in foreign proceedings of the debtor, [to all] entities against whom provisional relief is being sought" under section 1519 of title 11 of the United States Code (the "Bankruptcy Code"), to all parties to any pending litigation "in the United States in which the debtor is a party," and to any other parties the Court may direct. Bankruptcy Rules 2002(m) and 9007 state that the form and manner of notice shall be designated by the Court, unless otherwise provided by the Bankruptcy Rules. The Bankruptcy Rules do not prescribe the form and manner of notice to be provided in connection with a hearing on a petition for recognition of a foreign proceeding and, therefore, the Court may do so.

5.     The Petitioners propose to serve a notice substantially in the form of the Recognition Hearing Notice by first class prepaid mail, or by FedEx for parties with an international address, on the parties identified on Exhibit B (collectively, the "Notice Parties") in accordance with Bankruptcy Rules 2002(k) and (q) and Rule 2002-1(h) of the Local Rules for the District of Delaware. The Petitioner proposes to complete such notice by March 31, 2022 and submits that such notice constitutes adequate and sufficient notice of this chapter 15 case, the relief sought in the Petitions, the time fixed for the filing of objections to such relief, and the time, date, and place of the Recognition Hearing.

6.     Additionally, the Petitioners propose to serve upon the Notice Parties the following documents by first class prepaid mail and electronic mail, where an email address is available: (a) this Motion; (b) a notice substantially in the form of the Recognition Hearing Notice; (c) the Petitions; (d) the *Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746*; (e) the *Declaration of Adam M. Lavine Pursuant to 28 U.S.C. § 1746*; and (f) the Proposed Order, once

AP0193

it is entered. The Petitioners will complete such electronic notice within two business days of entry of the Proposed Order.

7.      The Petitioners respectfully request that the Court approve the foregoing Notice Procedures pursuant to Bankruptcy Rules 2002(m) and (q) and 9007, and find that the Recognition Hearing Notice (attached as Exhibit 1 to the Proposed Order) provides adequate information to apprise the Notice Parties of the chapter 15 case, the relief sought in the Petitions, the time fixed for the filing of objections to such relief, and the time, date, and place of the Recognition Hearing.

8.      Bankruptcy Rule 1012(b) provides, among other things, that a party objecting to a chapter 15 petition must present such objection no later than seven days before the date set for the hearing on the petition. In light of this requirement, the Petitioners respectfully submit that it is appropriate for the Court to set: (i) April 22, 2022 (or a date as soon thereafter as the Court's schedule permits) as the Recognition Hearing Date; and (ii) a date seven days prior to the Recognition Hearing Date as the Objection Deadline.

9.      Section 1514(c) of the Bankruptcy Code provides that when notice of the commencement of a case is given to foreign creditors, such notification shall indicate the time and place for filing proofs of claim as well as whether such filing is necessary for secured creditors. It is generally accepted, however, that section 1514 does not apply in a chapter 15 ancillary case. As explained in Collier on Bankruptcy, section 1514 is the "last in a series of sections dealing with the international aspects of cases under chapters other than chapter 15 that began with section 1511." 8 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy 1514.01 (16th ed. rev. 2016). As such, this Court routinely finds inapplicable and/or waives the requirements of section 1514 in chapter 15 cases. *See, e.g., In re JustFly Corp.*, No. 20-11204

AP0194

(JTD) (Bankr. D. Del. May 22, 2019), Dkt. No. 12 (order stating that all notice requirements specified in section 1514(c) of the Bankruptcy Code are waived or otherwise deemed inapplicable to the chapter 15 cases); *In re Motorcycle Tires & Accessories LLC*, No. 19-12706 (KBO) (Bankr. D. Del. Dec. 19, 2019), Dkt. No.19 (same); *In re Syncreon Automotive (UK) Ltd.*, No. 19-11702 (BLS) (Bankr. D. Del. July 30, 2019), Dk. No. 7 (same); *In re Mundo Media Ltd.*, No. 19-11365 (KBO) (Bankr. D. Del. June 18, 2019), Dkt. No. 9 (same); *In re Unique Broadband Systems Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. June 10, 2019), Dkt. No. 11 (same); and *In re SEL Manufacturing Co., Ltd.*, 19-10988 (MFW) (Bankr. D. Del. May 6, 2019), Dkt. No. 16 (same). Given that section 1514(c) does not apply with respect to this chapter 15 case (as the Petitioner has not sought to commence a case under any other chapter of the Bankruptcy Code), the Petitioner respectfully submits that the requirements contained therein are inapplicable or, alternatively, respectfully requests that such requirements be waived by this Court.

## NO PRIOR REQUEST

10.     No prior motion or application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Petitioners respectfully request that the Court: (i) enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit A, granting the relief requested herein; and (ii) grant such other and further relief as the Court may deem just and proper.

AP0195

Dated: March 29, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6456
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (*Pro Hac Vice* Forthcoming)
Evelyn Baltodano Sheehan (*Pro Hac Vice* Forthcoming)
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (*Pro Hac Vice* Forthcoming)
Victor S. Leung (*Pro Hac Vice* Forthcoming)
800 Third Avenue
6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0196

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. [●] |
| Debtor in Foreign Proceeding. | |

## MOTION FOR PROVISIONAL RELIEF
## UNDER SECTION 1519 OF THE BANKRUPTCY CODE

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "Petitioners") for Point Investments, Ltd. (the "Debtor") in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding"), by and through the undersigned counsel, respectfully submit this *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Stay Motion") seeking entry of the proposed order attached hereto as **Exhibit A** (the "Provisional Stay Order") provisionally staying any execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the United States, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, effective as of the filing of the Petition.

In support of this Stay Motion, the Petitioners rely upon the *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "Petition"), the *Verified Petition for (I) Recognition of*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0197

*Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* (the "Verified Petition for Recognition"), the *Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746* (the "Zuill Declaration"), and the *Declaration of Adam M. Lavine Pursuant to 28 U.S.C. § 1746* (the "Lavine Declaration"). In further support of this Stay Motion, the Petitioners respectfully represent to the Court as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1410.

## BACKGROUND

2.  The Verified Petition for Recognition provides relevant factual background concerning the Debtor and the events leading to the commencement of the Bermuda Proceeding and this chapter 15 case. Certain facts stated in the Verified Petition for Recognition that are germane to the relief requested in this Stay Motion are recited below.

### A.   **The Appointment of the Joint Provisional Liquidators**

3.  On September 16, 2020, Spanish Steps Holdings Ltd. ("SSH"), the registered owner of the Debtor's common shares filed a petition with the Bermuda Court seeking the just and equitable winding up of the Debtor. The petition argued, among other things:

- The Debtor's directors repeatedly breached their duties to the Debtor;

- SSH desired to terminate the Debtor's role as its investment vehicle, such that the Debtor would have no continuing purpose after the Debtor's role as investment vehicle was terminated; and

- Any winding up of the affairs of the Debtor should be carried out under the control of independent officeholders, such as joint liquidators, as officers of the court.

-2-

AP0198

The Bermuda Court agreed. On October 29, 2021, the Bermuda Court entered an order appointing the Petitioners as the Joint Provisional Liquidators of the Debtor, thus placing the Debtor in provisional liquidation (the "October 29 Order").[2] And, on November 17, 2021, the Bermuda Court issued a Judgment setting forth detailed reasons for the Petitioners' appointment (the "Bermuda Judgment").[3]

4.     On February 18, 2022, the Bermuda Court issued a further order providing for the Debtor to "be wound up under the provisions of the Companies Act 1981 (Act)", among other relief (the "Winding Up Order").[4] As a result of the Winding Up Order, the Debtor's provisional liquidation was converted to a liquidation. *See* Zuill Decl. ¶ 25.

5.     Under the Winding Up Order, the Bermuda Court vested the Petitioners with the following functions, among others:

- To conduct such investigations and obtain such information as is necessary to locate, protect, secure, take possession of, collect, and get in the assets of the Debtor and determine liabilities;

- To do all such things as may be necessary or expedient for the protection of the Debtor's property or assets;

- To consider, and if thought advisable, to commence such actions as may be necessary to protect, recover, or obtain assets and or money belonging or due to the Debtor, and to commence all other proceedings, whether in Bermuda or in any other jurisdiction outside Bermuda as may be necessary to protect, recover or obtain assets and/or monies belonging or due to the Debtor; and

- To consider and if thought advisable commence such action as may be necessary to have their appointment recognized in jurisdictions outside of Bermuda including for the avoidance of doubt the United States.

---

[2] The October 29 Order is attached as Exhibit 2 to the Lavine Declaration.

[3] The Bermuda Judgment is attached as Exhibit 1 to the Lavine Declaration.

[4] The Winding Up Order is attached as Exhibit 1 to the Petition.

AP0199

*See* Winding Up Order ¶¶ i, j, w, x. The Petitioners file this Stay Motion in furtherance of these court-approved functions, and to protect the Debtor's property located within the United States pending a determination by this Court on the Debtor's Verified Petition for Recognition.

**B.**   **The Debtor's U.S. Assets**

6.   The Petitioners are still investigating the amounts and locations of the Debtor's U.S. assets. The statements contained herein concerning the Debtor's U.S. assets are based upon the Petitioners' review of relevant corporate records obtained as of the date hereof.

7.   As detailed in the Verified Petition for Recognition, the Debtor's June 30, 2021 unaudited financial statements reflect significant U.S. assets, including the following:

- direct minority ownership interests in Solera Global Holding Corp., a Delaware corporation[5];

- a direct investment in "Universal Computer Systems Holding, Inc. (Reynolds & Reynolds)"[6]; and

- an interest in a promissory note issued by Difficult LLC, a Delaware limited liability company, to the Debtor in the principal amount of US $4,643,333.33.

Verified Pet. ¶ 31.

8.   In addition to the foregoing U.S. assets, the Debtor has various foreign assets, including investments in Cayman Islands funds (the "Vista Cayman Funds"), which are managed by entities understood to be affiliated with Vista Equity Partners Management, LLC, a Delaware limited liability company with a principal office and place of business in California ("VEP"). *Id.*

---

[5] The Debtor's unaudited financial statements appear to list this investment as an interest in "Solera Holding LLC." It is unclear to the Petitioners why the Debtor's unaudited financial statements refer to an investment in Solera Holding LLC instead of Solera Global Holding Corp.

[6] The Petitioners have identified a Delaware corporation with the name "Universal Computer Systems Holding, Inc.," which, upon information and belief, is the entity in which the Debtor holds minority ownership interests.

AP0200

¶ 32. The Vista Cayman Funds are currently withholding in excess of U.S. $41 million in cash distributions owed to the Debtor (the "Withheld Cash Distributions"). *Id*. Upon information and belief, the Withheld Cash Distributions are located in a U.S. bank account under VEP's or its affiliate's control. VEP has informed the Petitioners that it will not release those funds because of, among other things, the purported levies issued by the IRS. *Id*.

**C.   Events Leading to the Filing of the Petition**

9.     As detailed in the Verified Petition for Recognition, in direct contravention of principles of international comity and cross-border insolvency law, the Internal Revenue Service ("IRS") has sought to immediately levy and seize the Debtor's assets in the United States (the "Purported Levies"), despite the existence in Bermuda of a statutory provision that voids any such seizure occurring after the commencement of the winding up. Despite being a mere contingent creditor, the IRS maintains that it may immediately seize the Debtor's property in the United States on the basis that the Debtor is the alleged nominee or alter ego of Robert T. Brockman, a U.S. taxpayer who allegedly owes the IRS approximately $1.42 billion. But no court has ever made a finding of nominee or alter ego liability as between the Debtor and Mr. Brockman, and no court has even found Mr. Brockman responsible for the underlying tax liability. Instead, the IRS has invoked a federal tax procedure known as a "jeopardy assessment" to sidestep having to prove its case before levying assets.

10.     From at least March 21, 2022, the IRS commenced serving purported notices of levy targeting the assets of the Debtor. The IRS did not provide notice of the Purported Levies to the Petitioners, despite the IRS being aware of the Bermuda Proceeding and the Petitioners' appointment as Joint Provisional Liquidators.[7] Due to the IRS's lack of notice to the Petitioners,

---

[7] Copies of the Purported Levies are attached as Exhibit 4 to the Lavine Declaration.

the Petitioners cannot be certain as to whether the IRS has issued any additional levies (other than the Purported Levies) to attempt to seize the assets of the Debtor.

11.      The Purported Levies are dated March 21, 22, and 23, 2022. Some are directed to Vista Equity Partners, LLC and some are directed to Robert Smith as Founder, Chairman, and CEO of Vista Equity Partners, LLC. The Purported Levies identify the taxpayer as "Point Investments, Ltd. as alter ego of Robert T. Brockman," or "Point Investments, Ltd. as nominee of Robert T. Brockman." The Petitioners dispute that the Debtor is an alter ego or nominee of Mr. Brockman.

12.      The Purported Levies provide special instruction of the property to be levied, identifying: "Vista Equity Partners, LLC, which includes, but is not limited to the following entities: VEPF IV Co-Invest 1A, L.P. VEPF IV Co-Invest 2-A, L.P. and Affiliated Entities; VEPF IV Co-Invest 1-B, L.P.; VEPF IV Co-Invest 2-B, L.P.; Vista Equity Partners Fund IV (Parallel), L.P.; Vista Equity Partners Fund VI-A, L.P. and Affiliated Entities; Vista Foundation Fund I (Parallel), L.P.; Vista Foundation Fund II-A, L.P.; Vista Equity Partners Fund Ill (Parallel), L.P.; Vista Equity Partners Fund Ill (Parallel), L.P.; and VEPF Ill AIV (Cayman), L.P."

13.      Based on the special instructions found in the Purported Levies, it is not clear to the Petitioners what specific property the IRS is seeking to levy. Nor is it clear to the Petitioners why the Purported Levies were directed to Vista Equity Partners, LLC and Mr. Smith, as their particular relation to funds in which the Debtors are invested is unclear (*e.g.*, they do not appear to be the general partners of such funds and therefore it is unclear what legal basis they could have to possess or control any of the Debtor's interests in the funds). Nevertheless, the Petitioners fear that individuals or entities associated with the Vista funds will deliver the Debtor's property to the IRS and that the IRS will issue additional purported levies against the Debtor's property.

AP0202

## RELIEF REQUESTED

14.     This Stay Motion seeks entry of an order, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, provisionally staying execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States until such time as the Court rules on the Verified Petition for Recognition. The Petitioners request that such relief apply effective as of the filing of the Petition so that any execution by the IRS, or distribution from Vista to the IRS, will be deemed a violation of the stay and void if it occurs during the pendency of the Court's consideration of this Stay Motion.[8]

15.     For the avoidance of doubt, the Petitioners do not seek a provisional stay of any exercise of a police or regulatory act of a governmental unit against the Debtor or the property of the Debtor, nor do the Petitioners seek a provisional stay of the criminal or civil court proceedings involving Robert T. Brockman pending before the United States Tax Court and the District Court for the Southern District of Texas, or of the civil asset forfeiture proceeding pending in the District Court for the District of Colorado (each described more fully in the Verified Petition for Recognition).

## BASIS FOR RELIEF REQUESTED

16.     Section 1519(a) of the Bankruptcy Code permits the Court to grant "relief of a provisional nature" from the time of filing of a petition for recognition until the Court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interests of

---

[8] As the IRS acknowledges in its Internal Revenue Manual, the automatic stay applies to "all seizure and levy action directed to property of the estate," which is not considered an exercise of a police and regulatory power when such action is directed to collecting on a civil tax liability. I.R.M. § 5.17.8.10.

AP0203

the creditors." The provisional relief that may be sought under section 1519(a) includes, among

other relief, "staying execution against the debtor's assets" as well as any relief referred to in

section 1521(a)(7) of the Bankruptcy Code. 11 U.S.C. §§ 1519(a)(1) and (3). Section 1521(a)(7)

of the Bankruptcy Code, in turn, provides that the Court may grant "any additional relief that may

be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550,

and 724(a)."

17.      It is axiomatic that the automatic stay set forth in section 362 of the Bankruptcy

Code "is available to a trustee," and, therefore, bankruptcy courts in this district have repeatedly

found that such relief is also available to a foreign representative on a provisional basis in

accordance with sections 1519(a) and 1521(a)(7) of the Bankruptcy Code. *In re Hematite Holdings

Inc.*, Case No. 20-12387 (MFW) (Bankr. D. Del. Sept. 23, 2020), Dkt. No. 10; *In re The Aldo

Group, Inc.*, Case No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020), Dkt. No. 29; *In re Groupe

Dynamite Inc.*, No. 20-12085 (CSS) (Bankr. D. Del. Sept. 9, 2020), Dkt. No. 25.

18.      Here, provisional relief in the form of the automatic stay is urgently needed to

protect the Debtor's U.S. assets. Specifically, the automatic stay will prevent individuals or entities

associated with the Vista funds from delivering the Debtor's property to the IRS in response to the

Purported Levies. The distribution of such property would be inconsistent with the principles of

international comity and cross-border insolvency law upon which chapter 15 is based and would

result in the piecemeal administration and distribution of the Debtor's assets in preference to a

single contingent creditor.

19.      In addition, a provisional order staying execution against the Debtor's assets and

otherwise applying the automatic stay will ensure that the Debtor and its substantial U.S. assets,

including its interests in Solera Global Holding Corp. and Universal Computer Systems Holding,

Inc., will not be subject to additional purported levies by the IRS, to the imposition of liens or levies by other creditors, or to the commencement of legal process or proceedings. Maintenance of the status quo is of particular importance at this juncture given the Bermuda Court's recent entry of the Winding Up Order, and the Joint Provisional Liquidator's continuing investigation into the assets and affairs of the Debtor.

20.　　For these reasons alone, the relief sought in this Stay Motion is urgently needed to protect and preserve the value of the Debtor's U.S. assets, and the Court should therefore grant a provisional order applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States from the time of the filing of the Petition until a ruling on recognition. *See, e.g.*, *In re Zhejiang Topoint Photovoltaic Co., Ltd*, No. 14-24549-GMB (Bankr. D.N.J. July 24, 2014), Dkt. No. 18 (granting, among other relief, a provisional stay under sections 362, 1519, and 1521 of the Bankruptcy Code to a foreign representative of a Chinese debtor); *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (finding that the imposition of the section 362 automatic stay as provisional relief under section 1519 is not "injunctive relief" that is subject to the section 1519(e) requirement imposing the standards for an injunction, and that a judgment creditor's argument to the contrary "would impose procedural barriers that are unknown in the bankruptcy law to the availability of at least some § 1519 remedies.").

21.　　However, even under the injunctive relief standard required by certain courts for the imposition of a provisional stay under sections 1519(a) and 1521(a), the Debtor is able to satisfy the requirements for a provisional stay, as set forth below.

AP0205

**A.**    <u>Likelihood of Success on the Merits</u>

22.    There is a significant likelihood that the Debtor's Bermuda Proceeding will be recognized here. Recognition of a foreign proceeding is relatively straightforward and indeed has been characterized as "formulaic." *In re Bear Stearns High Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). As set forth under section 1517, a foreign proceeding shall be recognized if (1) the foreign proceeding is a foreign main or foreign non-main proceeding, (2) the petition for recognition was filed by a foreign representative, and (3) the petition satisfies section 1515. All three of these requirements have been met, as set forth in the Verified Petition for Recognition. First, the Bermuda Proceeding is both a "foreign proceeding" and "foreign main proceeding" because the Bermuda Proceeding is a collective judicial proceeding relating to insolvency or the adjustment of debts for the purpose of liquidating the Debtor, which is an entity that has its center of main interests in Bermuda. Second, the Petition was filed by the Joint Provisional Liquidators who are "foreign representatives" as that term is defined in the Bankruptcy Code. Third, all of the requirements of section 1515 have been satisfied as detailed in the Verified Petition for Recognition. Accordingly, there is a very high likelihood that recognition of the Bermuda Proceeding will be granted in this chapter 15 case.

**B.**    <u>Irreparable Harm to the Debtor if Provisional Relief is Denied</u>

23.    The stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law, halting all collection efforts and harassment against the Debtor, and providing trustees with necessary breathing room to investigate the debtor's affairs and liquidate or reorganize the debtor's assets. Although Bermuda law provides for a statutory stay of actions and proceedings against the Debtor, *see* Zuill Decl. ¶ 16, the practical implementation

-10-

of that stay outside of Bermuda typically requires the assistance of a foreign court, as creditors or litigants may not believe they are bound by Bermuda law.

24. Courts in this district have recognized the need to provide provisional stay relief in chapter 15 cases to prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re The Aldo Group, Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020), Dkt. No. 29 (granting provisional relief, including application of section 362); *In re Groupe Dynamite Inc.*, No. 20-12085 (CSS) (Bankr. D. Del. Sept. 9, 2020), Dkt. No. 25 (granting provisional relief, including application of section 362); *In re Unique Broadband Sys. Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. June 13, 2019), Dkt. No. 12 (granting recognition on a provisional basis); *In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018), Dkt. No. 17 (same); *In re RCR Int'l Inc.*, No. 18-10112 (LSS) (Bankr. D. Del. Jan. 24, 2018), Dkt. No. 11 (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015), Dkt. No. 30 (same). Courts have also found that recent commencement of lawsuits against a foreign debtor may result in potential dissipation or diminution in value of the debtor's assets and therefore constituted irreparable harm for purposes of obtaining a provisional stay. *In re Innua Canada Ltd.*, No. 09-16362 (DHS), 2009 WL 1025090, at *4 (Bankr. D.N.J. Apr. 15, 2009).

25. Here, absent a stay, it is possible the Debtor's assets will be distributed to a single contingent creditor in response to the Purported Levies. It is also possible that the IRS will seek to impose liens on the Debtor's other U.S. assets, attempt to levy or execute upon the Debtor's other U.S. assets, or otherwise commence proceedings against the Debtor. As such, if the Bankruptcy Court does not grant the protections afforded by a stay to the Debtor on a provisional basis, there is a continuing risk of dilution and interference with the Debtor's assets, and an ensuing "race to the courthouse" that U.S. bankruptcy laws are designed to protect against. In order to avoid this

-11-

result, which will cause irreparable harm, including by potentially granting the IRS a preference over other creditors and by compromising the orderly administration and integrity of the Debtor's winding up in the Bermuda Proceeding, immediate injunctive relief is necessary and appropriate.

## C.   Balance of Equities

26.     The balance of equities favors imposing a provisional stay because the Debtor's stakeholders will not be harmed by a stay, which will simply preserve the status quo. In fact, granting a stay will benefit the Debtor's stakeholders because it will ensure that the value of the Debtor's assets is preserved for the benefit of all interested parties. Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297.

27.     Because the status quo would be maintained pending a hearing on recognition, a stay also would not harm the Debtor's stakeholders insofar as they will all be placed on a level playing field. *See In re Innua Can., Ltd.*, No. 09-16362 (DHS) (Bankr. D.N.J. March 25, 2009), Dkt. No. 20 (agreeing with the foreign representative's contention that maintaining the status quo pending recognition of the Chapter 15 petition "will actually serve to benefit the estates' creditors by allowing for an orderly administration of the Foreign Debtors' financial affairs under the Canadian Proceeding . . .").

28.     Further, where the moving party has demonstrated a likelihood of success on the merits of the underlying issue, the balance of harms is tipped in its favor because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 597

AP0208

(3d Cir. 2002) (citation omitted). Here, the Petitioners have demonstrated with reasonable certainty that they are likely to be granted recognition with respect to the Bermuda Proceeding.

**D.**     **Furthering the Public Interest**.

29.     The public interest—specifically, the goals of comity and cooperation embodied in chapter 15 of the Bankruptcy Code and the underlying spirit of the UNCITRAL Model Law on Cross-Border Insolvency (1997) upon which chapter 15 was based—are served best by granting the Petitioners the provisional relief sought herein. "[The Debtor's] assets located in the United States are in danger without the provisional relief, which is precisely the harm Chapter 15 is designed to prevent. Clearly, section 1525 promotes cooperation between the United States Bankruptcy Court and the foreign court where the foreign proceeding is located and imposition of the automatic stay furthers such cooperation and policy." *In re Innua Can., Ltd.*, No. 09-16362 (DHS) (Bankr. D.N.J. March 25, 2009), Dkt. No. 20. The Bankruptcy Court's imposition of a provisional stay pending recognition furthers the goals of the Bermuda Proceeding and allows for the appropriate cooperation and deference with respect to such "foreign main proceeding." Indeed, the provisional stay will help to effectuate the statutory stay of collection already in place in Bermuda.

## NOTICE

30.     The Petitioners will provide notice of this Stay Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m). By separate motion, the Petitioners are seeking to shorten the time for notice and a hearing on this Stay Motion.

## CONCLUSION

31.     For the reasons described above, Petitioners respectfully request that the Court (i) provisionally stay any execution against the Debtor's assets pursuant to section

-13-

1519(a)(1) of the Bankruptcy Code and (ii) provisionally apply the automatic stay to the Debtor

and the property of the Debtor within the territorial jurisdiction of the United States pursuant to

sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, in each case, until such time as the

Court renders a decision on the Verified Petition for Recognition. The Petitioners respectfully

request that such provisional relief be provided effective as of the filing of the Petition.

Dated: March 29, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Jacob R. Kirkham*
Jacob R. Kirkham (#5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (*Pro Hac Vice* Forthcoming)
Evelyn Baltodano Sheehan (*Pro Hac Vice* Forthcoming)
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (*Pro Hac Vice* Forthcoming)
Victor S. Leung (*Pro Hac Vice* Forthcoming)
800 Third Avenue
6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0210

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re

POINT INVESTMENTS, LTD.
(IN LIQUIDATION),[1]

      Debtor in a Foreign Proceeding.

Chapter 15

Case No. [●]

**MOTION TO SHORTEN TIME WITH RESPECT TO MOTION FOR**
**PROVISIONAL RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE**

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys &

Associates (Bermuda) Ltd., in their capacity as the duly appointed Joint Provisional Liquidators

and putative foreign representatives (in such capacity, the "Petitioners") for Point Investments,

Ltd. (the "Debtor") in respect of the winding-up proceeding pending before the Supreme Court of

Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda

Proceeding"), by and through the undersigned counsel, respectfully submit this *Motion to Shorten

Time With Respect to Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code*

(the "Motion to Shorten Time") seeking entry of the proposed order attached hereto as **Exhibit A**

(the "Order to Shorten Time") scheduling a hearing on the *Motion for Provisional Relief Under

Section 1519 of the Bankruptcy Code* (the "Stay Motion") and shortening the time to object or

respond to the Stay Motion as set forth herein.

In support of this Stay Motion, the Petitioners rely upon the *Chapter 15 Petition for

Recognition of a Foreign Proceeding* (the "Petition"), the *Verified Petition for (I) Recognition of

Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in
Bermuda under registration number 43769. The Debtor's registered office is located at Chancery
Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

Under Chapter 15 (the "Verified Petition for Recognition"), the *Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746* (the "Zuill Declaration"), and the *Declaration of Adam M. Lavine Pursuant to 28 U.S.C. § 1746* (the "Lavine Declaration"). In further support of this Stay Motion, the Petitioners respectfully represent to the Court as follows:

## JURISDICTION AND VENUE

1.      The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1410.

## BACKGROUND

2.      The Verified Petition for Recognition provides relevant factual background concerning the Debtor and the events leading to the commencement of the Bermuda Proceeding and this chapter 15 case. Facts germane to the Stay Motion are stated therein and supported by the Verified Petition for Recognition, the Zuill Declaration, and the Lavine Declaration.

## RELIEF REQUESTED

3.      By this Motion to Shorten Time, the Petitioners request that the Court (a) schedule a hearing on the Stay Motion for Thursday, March 31, 2022, at 10:00 a.m. ET or as soon thereafter as practicable, (b) shorten the time to respond or object to the Stay Motion to Thursday, March 31, 2022, at 8:00 a.m. ET, and (c) find that the manner of service proposed herein shall be adequate for all purposes and that no further notice shall be necessary.

## BASIS FOR RELIEF REQUESTED

4.      Local Rule 9006-1(c) requires at least 14 days' notice prior to a hearing date where

time for notice and hearing is not otherwise specified in the Local Rules or the Bankruptcy Rules. *See* Del. Bankr. L. R. 9006-1(c). Pursuant to Local Rule 9006-1(e), however, such periods may be shortened by order of the Court upon written motion specifying the exigencies supporting shortened notice. As set forth in the Stay Motion, sufficient cause exists to justify shortening the notice period for, and scheduling an expedited hearing on, the relief requested in the Stay Motion. Moreover, section 1519(a) of the Bankruptcy Code, by its nature, contemplates a hearing on the sort of relief requested in the Stay Motion on an expedited basis.

5.      The Debtor filed the Petition to protect and preserve the value of its assets in the face of attempts by a contingent creditor—the Internal Revenue Service ("IRS")—to levy the Debtor's property. As described in the Stay Motion, the Debtor seeks the entry of an order, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, provisionally staying execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States to prevent any execution by the IRS, or any distribution of the Debtor's property to the IRS. In addition, a provisional order staying execution against the Debtor's assets and otherwise applying the automatic stay will ensure that the Debtor and its substantial U.S. assets will not be subject to additional purported levies by the IRS, to the imposition of liens or levies by other creditors, or to the commencement of legal process or proceedings.  Prior to the filing of this Motion to Shorten Time, counsel for the Debtor attempted to contact the Office of the United States Trustee to inform them of the impending filing and of the provisional relief to be sought.

6.      For these reasons and those set forth in the Stay Motion, the Petitioners request that the Court schedule a hearing on the Stay Motion for Thursday, March 31, 2022, at 10:00 a.m. ET or as soon thereafter as reasonably practicable, with objections to be filed no later than

Thursday, March 31, 2022, at 8:00 a.m. ET.

## NOTICE

7.       Petitioners submit that notice of this Motion to Shorten Time and the Stay Motion, which was provided by electronic mail where available and otherwise by overnight mail to the IRS, Vista Equity Partners Management, LLC, and the Office of the United States Trustee, is adequate for all purposes. Petitioners respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given. If the Court grants this Motion to Shorten Time and enters an order fixing a hearing date and shortening the time to object or respond to the Stay Motion, the Petitioners will serve a copy of such order and a notice of hearing for the Stay Motion on the same parties by electronic mail where available, and otherwise by overnight mail.

## NO PRIOR REQUEST

8.       No previous request for the relief sought herein has been made by the Petitioners to this or any other court.

WHEREFORE, the Petitioners respectfully request that the Court enter the proposed order attached hereto as **Exhibit A**, granting the relief requested in this Motion to Shorten Time and such other and further relief that the Court deems appropriate.

Dated: March 29, 2022
Wilmington, Delaware

                                   Respectfully submitted,

                                   **KOBRE & KIM LLP**

                                   /s/ Jacob R. Kirkham

                                   Jacob R. Kirkham (#5768)
                                   600 North King Street, Suite 501
                                   Wilmington, Delaware 19801
                                   Tel: (302) 518-6460
                                   Jacob.Kirkham@kobrekim.com

AP0214

Adriana Riviere-Badell (Pro Hac Vice Forthcoming)
Evelyn Baltodano Sheehan (Pro Hac Vice Forthcoming)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Pro Hac Vice Forthcoming)
Victor S. Leung (Pro Hac Vice Forthcoming)
800 Third Avenue, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0215

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

POINT INVESTMENTS, LTD.,
(IN LIQUIDATION)[1]

Debtor in a Foreign Proceeding.

Chapter 15

Case No. 22-10261 (JKS)

### ORDER GRANTING MOTION TO
### SHORTEN TIME WITH RESPECT TO MOTION FOR PROVISIONAL
### RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE

Upon the Petitioners' *Motion to Shorten Time With Respect to Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Motion to Shorten Time")[2] requesting, in their capacity as the duly appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") scheduling a hearing on the Stay Motion and shortening the time to respond or object to the Stay Motion; and the Court having considered the Motion to Shorten Time; and the Court having found good cause for granting the relief requested therein; and the Court having found that the Court has jurisdiction to consider the Motion to Shorten Time and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue is proper before this

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed before them in the Motion to Shorten Time.

AP0216

Court pursuant to section 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion to Shorten Time having been provided; and no other or further notice being required; it is hereby:

**ORDERED** that the Motion to Shorten Time is granted as set forth herein; and it is further

**ORDERED** that a hearing on the Stay Motion shall be scheduled for Thursday, March 31, 2022, at 1:00 p.m. ET; and it is further

**ORDERED** that all responses or objections to the Stay Motion shall be presented at the hearing on Thursday, March 31, 2022, at 1:00 p.m. ET; and it is further

**ORDERED** that the manner of service set for in the Motion to Shorten Time shall be adequate for all purposes and no further notice is required.

Dated: March 31, 2022

J. Kate Stickles
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                        )   Case No. 22-bk-10261-JKS
                                              )   Chapter 15
POINT INVESTMENTS, LTD.                        )   Judge J. Kate Stickles
(IN LIQUIDATION),                              )
                                              )   **Response Deadline: 3/31/22 @ 8 AM**
                Debtor in a Foreign Proceeding. )   **Hearing: 3/31/22 @ 10 AM**
_____           )

### UNITED STATES' OPPOSITION TO MOTION TO SHORTEN NOTICE
### <u>AND MOTION TO VACTE ORDER</u>

The Court should deny the Petitioners' *Motion to Shorten Time with Respect to Motion*

*for Provisional Relief under Section 1519 of The Bankruptcy Code*" and reconsider the *Order*

granting the Motion.  (Dkt. No. 8, 13).  Their motion for provisional relief is not a genuine

emergent matter.  It is instead an attempt to seek relief that has thus far failed to secure in

ongoing litigation with the United States in another court.  *See Robert T. Brockman v. United*

*States of America*, 4:22-cv-00202 (S.D. Tex.).  The IRS made a jeopardy assessment against

Brockman for income taxes, fraud penalties, and interest totaling $1.4 billion.  (*See* Dkt. No. 7,

¶ 9.)  Robert Brockman is challenging the IRS jeopardy assessment in *Robert T. Brockman v.*

*United States of America*, 4:22-cv-00202 (S.D. Tex.) and that is currently pending.   Apart from

that proceeding itself, there is the criminal proceeding against Robert Brockmnan which is just

one part of a large individual tax evasion case, that is also pending in the Southern District of

Texas.  *See United States v. Robert T. Brockman*, 4:21-cr-00009 (S.D. Tex.).  Given the

complexity of the issues involved, the minimal notice given to the United States, the lack of any

immediate need for relief, and the potential jurisdictional barriers to the granting of the relief

1

sought, the court should not grant the motion to shorten notice. It should instead permit the United States at least fourteen days to prepare an adequate response.

The United States received inadequate notice of the motion for provisional relief. It was served by email shortly before midnight last night on the Department of Justice attorneys representing the United States in the above-mentioned civil proceeding in Texas. That is not proper service under the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7004(i)(1). Thirty-two hours is also insufficient to prepare an adequate response given the factual and legal complexity of the underlying dispute this proceeding is meant to disrupt.

Denying the motion to permit the United States more time to respond also will not harm the debtor. It appears that the debtor is currently in liquidation and has no ongoing business that can be harmed by the IRS's collection efforts. Any funds actually collected through the IRS's levies will be held by the U.S. Treasury. The debtor thus has no valid concerns that it will eventually be unable to recover the money if a court determines the levies were improper or the underlying taxes were not owed.

Finally, the Court should exercise caution in granting any relief due to the potential jurisdictional barriers to enjoining the IRS's activities. The automatic stay does not apply upon the filing of a petition for recognition, and the United States has not waived sovereign immunity as to the provision under which the debtor seeks relief from the Court. *See* 11 U.S.C. § 106(a)(1). The Tax Anti-Injunction Act also provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The Act's principal purpose is "'the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference,'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-737 (1974)

AP0219

(quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)), and it bars injunctive relief even if the threatened collection action "would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." *Bob Jones Univ.*, 416 U.S. at 745. The Act applies to bankruptcy courts notwithstanding § 105's broad grant to issue injunctive relief. *In re Becker's Motor Trans., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980), *cert. denied*, 450 U.S. 916 (1981). While undersigned counsel has not had time to meaningfully research the issue, it stands to reason that the Tax Anti-Injunction Act should take precedence over § 1519(a) just as it does over § 105(a). These potential jurisdictional obstacles counsel against granting the requested relief without more time for the parties to research and brief the issues.

In its motion to shorten notice, the Debtor asked for opposition to the motion to be filed by March 31, 2022, at 8:00 am. (Dkt. 8, ¶ 6.) The Court, however, granted the Order on March 30 at 5:02 pm. (Dkt. 13.) This occurred as the United States was preparing to file this opposition. The United States would ask the Court vacate the Order to allow it to consider this Opposition. To the extent necessary, the United States opposes any other relief that may be granted before it has had time to adequately prepare a response.

//

//

//

3

AP0220

For the foregoing reasons, the United States respectfully requests that the Court vacate the Order, deny the Debtor's motion to shorten time, and grant the United States at least fourteen days to respond to the motion for provisional relief.

Date:  March 30, 2022,

                                    Respectfully submitted,

                                    DAVID A. HUBBERT
                                    Deputy Assistant Attorney General

                                    /s/ Ari D. Kunofsky
                                    WARD W. BENSON
                                    ARI D. KUNOFSKY
                                    Trial Attorneys, Tax Division
                                    U.S. Department of Justice
                                    Post Office Box 227
                                    Ben Franklin Station
                                    Washington, D.C. 20044
                                    Telephone: 202-353-9187
                                    Email: Ari.D.Kunofsky@usdoj.gov

AP0221

**CERTIFICATE OF SERVICE**

I certify that the foregoing OPPOSITION was filed with the clerk of the court on March

30, 2022, using the CM/ECF system, which will send notification of such filing to all parties

appearing in said system.

/s/ Ari D. Kunofsky
ARI D. KUNOFSKY
Trial Attorney, Tax Division

AP0222

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

POINT INVESTMENTS, LTD.
(IN LIQUIDATION),[1]

          Debtor in a Foreign Proceeding.

Chapter 15

Case No. 22-10261-JKS

**NOTICE OF (I) FILING OF CHAPTER 15 PETITION AND RELATED DOCUMENTS AND (II) AGENDA FOR VIDEO HEARING ON FIRST DAY MOTIONS SCHEDULED FOR MARCH 31, 2022 AT 1:00 P.M. (PREVAILING EASTERN TIME) BEFORE THE HONORABLE J. KATE STICKLES AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**THE REMOTE HEARING WILL BE CONDUCTED ENTIRELY BY ZOOM AND REQUIRES ALL PARTICIPANTS TO REGISTER IN ADVANCE. COURTCALL WILL NOT BE USED TO DIAL IN.**

**ALL PARTIES MUST REGISTER BY 12:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 31, 2022.**

**PLEASE USE THE FOLLOWING LINK TO REGISTER FOR THE HEARING:**

https://debuscourts.zoomgov.com/meeting/register/vJItdO2pqzgiG1x6qL-KTthhdrf_KyCcFH0

**ONCE REGISTERED, PARTIES WILL RECEIVE A CONFIRMATION EMAIL CONTAINING PERSONAL LOG-IN INFORMATION FOR THE HEARING.**

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

**PLEASE TAKE NOTICE** that on March 29, 2022, Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "**Petitioners**") filed the following chapter 15 petition for recognition of a foreign proceeding (the "**Petition**"):

A.    Chapter 15 Petition:

1.    Point Investments, Ltd. [Docket No. 1 – filed March 29, 2022]

**PLEASE TAKE FURTHER NOTICE** that in addition to filing the Petition, the Petitioners filed the following first day motions and related documents (collectively, the "**First Day Motions**"):

B.    Verified Petition and First Day Declarations:

1.    Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 [Docket No. 3 – filed March 29, 2022]

2.    Declaration of Lilla Zuill Pursuant to 28 U.S.C. §1746 [Docket No. 4 – filed March 29, 2022]

3.    Declaration of Adam M. Lavine Pursuant to 28 U.S.C. §1746 [Docket No. 5 – filed March 29, 2022]

**Status**:      The Verified Petition and Declarations will be relied upon as evidentiary support for the first day matters listed below. A recognition hearing will be scheduled for a later date as determined by the Court.

C.    First Day Motions:

1.    Motion to Shorten Time with Respect to Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code [Docket No. 8 – filed March 29, 2022]

**Related**:      Order Granting Motion to Shorten Time with Respect to Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code [Docket No. 13 – entered March 30, 2022]

United States' Opposition to Motion to Shorten Notice and Vacate Order [Docket No. 14 – filed March 30, 2022]

**Status**:      This matter is going forward.

-1-

AP0224

2. Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code [Docket No. 7 – filed March 29, 2022]

   **Status**:      This matter is going forward.

3. Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 for Order Scheduling Recognition Hearing and Approving Form and Manner of Notice [Docket No. 6 – filed March 29, 2022]

   **Status**:      This matter is going forward.

     **PLEASE TAKE FURTHER NOTICE** that a video hearing with respect to the First Day Motions is scheduled for March 31, 2022 at 1:00 p.m. (prevailing Eastern Time) before The Honorable J. Kate Stickles, United States Bankruptcy Judge for the District of Delaware (the "**First Day Hearing**"). Parties who wish to participate in the First Day Hearing may do so by joining the Zoom hearing by 12:00 p.m. (prevailing Eastern Time) on March 31, 2022 by registering at the link below:

https://debuscourts.zoomgov.com/meeting/register/vJItdO2pqzgiG1x6qL-KTthhdrf_KyCcFH0

     **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the First Day Motions may be made at the First Day Hearing.

AP0225

Dated: March 30, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**


/s/ *Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (*Pro Hac Vice* Pending)
Evelyn Baltodano Sheehan (*Pro Hac Vice* Pending)
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (*Pro Hac Vice* Pending)
Victor S. Leung (*Pro Hac Vice* Pending)
800 Third Avenue
6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0226

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>POINT INVESTMENTS, LTD.<br>(IN LIQUIDATION),[1]<br><br>                 Debtor in a Foreign Proceeding. | Chapter 15<br><br><br>Case No. 22-10261-JKS |

## NOTICE OF FILING OF AGREED REVISED PROPOSED ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002(M) AND (Q) AND 9007 FOR ORDER SCHEDULING RECOGNITION HEARING AND APPROVING FORM AND MANNER OF SERVICE

**PLEASE TAKE NOTICE** that on March 31, 2022 the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") held a hearing (the "First Day Hearing") to consider the Petitioners' *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 for Order Scheduling Recognition Hearing and Approving Form and Manner of Notice* [Docket No. 6] (the "Procedures Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is the revised proposed *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 Scheduling Recognition Hearing and Approving Form and Manner of Service* (the "Revised Proposed Order"). A blackline copy of the Revised Proposed Order showing changes made from the proposed order attached to the Provisional Relief Motion is attached hereto as **Exhibit B**.

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Procedures Motion.

AP0227

**PLEASE TAKE FURTHER NOTICE** that the Petitioners shared a draft of the Revised Proposed Order with (i) the Office of the United States Trustee's Office for the District of Delaware (the "United States Trustee"), and (ii) the United States Department of Justice, Tax Division (the "DOJ"). The United States Trustee has agreed to the form of the Revised Proposed Order attached hereto and the DOJ has not objected to the Procedures Motion or the Revised Proposed Order.

Accordingly, the Petitioners respectfully request that the Court enter the Revised Proposed Order at the Court's earliest convenience.

Dated: April 1, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**

*/s/ Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (Admitted *Pro Hac Vice*)
Evelyn Baltodano Sheehan (Admitted *Pro Hac Vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Admitted *Pro Hac Vice*)
Victor S. Leung (Admitted *Pro Hac Vice*)
800 Third Avenue, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0228

## Exhibit A

Proposed Order

AP0229

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>POINT INVESTMENTS LTD.,<br>(IN LIQUIDATION)[1]<br><br>       Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 22-10261-JKS |

### ORDER PURSUANT TO
### FEDERAL RULES OF BANKRUPTCY PROCEDURE
### 2002(M) AND (Q) AND 9007 SCHEDULING RECOGNITION
### HEARING AND APPROVING FORM AND MANNER OF NOTICE

Upon the Petitioners' *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 for Order Scheduling Recognition Hearing and Approving Form and Manner of Notice* (the "Motion"),[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") (i) scheduling the Recognition Hearing, (ii) setting the Objection Deadline, (iii) approving the Notice Procedures, including the form of Recognition Hearing Notice, (iv) granting related relief as provided in the Motion, and (v) granting such other and further relief as the Court deems just and proper; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022; and the Court having found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Recognition Hearing shall be held before this Court in the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, Delaware 19801, on Monday, April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

**ORDERED** that the Objection Deadline shall be Monday, April 18, 2022, at 4:00 p.m. (ET); and it is further

**ORDERED** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice; and it is further

**ORDERED** that the Recognition Hearing, or any part thereof, may be adjourned from time to time without further notice other than a notice of adjournment on the docket in this chapter 15 case or an announcement in open court of the adjourned date or dates of any further adjourned hearings; and it is further

**ORDERED** that the Notice Procedures set forth in the Motion (as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order) constitute due and sufficient notice of the Petitions and the relief requested therein, and are hereby approved; and it is further

**ORDERED** that the form of Recognition Hearing Notice annexed hereto as <u>Exhibit 1</u> provides adequate information to the Notice Parties of the chapter 15 case (as set forth on <u>Exhibit 2</u> attached hereto), the relief sought in the Petitions, the time fixed for the filing of objections to such relief, and the time, date, and place of the Recognition Hearing, and is hereby approved; and it is further

**ORDERED** that the Recognition Hearing Notice (and other documents specified in the Motion) shall be served upon the Notice Parties (as set forth on <u>Exhibit 2</u> attached hereto) in the manner set forth in the Motion (as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order); and it is further

**ORDERED** that responses or objections, if any, to the Petitions be made in writing and set forth the basis therefor, and such responses or objections must (i) be in writing, (ii) detail the factual and legal basis for the response or objection, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, (iv) be filed with the Office of the Clerk of the Court, 824 N. Market Street, Third Floor, Wilmington, Delaware 19801, and (v) be served upon the following persons so as to be received no later than April 18, 2022 at 4:00 p.m. (ET): Kobre & Kim LLP, 600 North King Street, Suite 501, Wilmington, Delaware 19801 (Attention: Jacob Kirkham, Adam M. Lavine, Victor S. Leung); the Office of the United States Trustee for the District of Delaware, 844 King Street Suite 2207 Lockbox 35 Wilmington, DE 19801; and it is further

**ORDERED** that the service pursuant to this Order shall be good and sufficient service, and constitute adequate notice of the Petitions and Recognition Hearing; and it is further

**ORDERED** that the notice requirements set forth in section 1514(c) of the Bankruptcy Code are inapplicable in the context of this chapter 15 case or, to the extent applicable, are hereby waived; and it is further

**ORDERED** that the Petitioners are authorized to take all action necessary to carry out this Order; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____       _____
         Wilmington, Delaware                  UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

Recognition Hearing Notice

AP0234

# IN THE UNITED STATES BANKRUPTCY
## FOR THE COURT DISTRICT OF DELAWARE

| | |
|---|---|
| In re | |
| | Chapter 15 |
| POINT INVESTMENTS LTD. | |
| (IN LIQUIDATION),[1] | |
| | Case No. 22-10261-JKS |
| Debtor in a Foreign Proceeding. | |

## NOTICE OF FILING AND HEARING ON PETITION UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE AND MOTION FOR RELATED RELIEF

**PLEASE TAKE NOTICE** that, on March 29, 2022, Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "Petitioners") of Point Investments Ltd (the "Debtor") filed the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 3] (the "Verified Petition"), together with *Official Form 401, Chapter 15 Petition for Recognition of a Foreign Proceeding* [D.I. 1] (together with the Verified Petition, the "Petitions") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the Petitions seek, among other things, the entry of an order: (i) recognizing as the "foreign main proceeding" the Debtor's winding up proceeding commenced pursuant to section 161(g) of the Companies Act 1981 before the Supreme Court of Bermuda, Commercial Court (the "Bermuda Court"), Case 2020: No. 300 (the "Bermuda Proceeding"); (ii) recognizing the Petitioners as the "foreign representatives" of the Debtor; and (iii) granting related relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled an evidentiary hearing (the "Recognition Hearing") to consider the relief requested in the Petitions at 1:00 p.m. (ET) on Monday, April 25, 2022 by remote means according to such procedures as shall be set forth in the Agenda to be filed by the Petitioners no later than 12:00 p.m. (ET) on Thursday, April 21, 2022.

**PLEASE TAKE FURTHER NOTICE** that copies of the Petitions and all accompanying documentation are available to parties in interest through the Bankruptcy Court's Electronic Case Filing System, which can be accessed from the Bankruptcy Court's website at

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

https://www.deb.uscourts.gov/ (a PACER login and password are required to retrieve a document) or upon written request to the Petitioner's counsel (including by e-mail) addressed to:

> Kobre & Kim LLP
> 600 North King Street, Suite 501
> Wilmington, Delaware 19801
> Tel: (302) 518-6460
> Attn: Jacob Kirkham (Jacob.Kirkham@kobrekim.com)
>       Adam M. Lavine (Adam.Lavine@kobrekim.com)
>       Victor S. Leung (Victor.Leung@kobrekim.com)

     **PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response or objection to the Petitions, or the relief requested therein, must do so in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the District of Delaware, setting forth in writing the basis thereof. Any such response or objection must be filed with the Bankruptcy Court and served upon the following so as to be received **no later than 4:00 p.m. (ET) on April 18, 2022** (the "Objection Deadline"): (i) counsel to Petitioners at Kobre & Kim LLP (Attn: Jacob Kirkham, Adam M. Lavine, Victor S. Leung), 600 North King Street, Suite 501, Wilmington, Delaware 19801; and (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

     **PLEASE TAKE FURTHER NOTICE** that all parties in interest opposing the Petitions or the relief requested therein must appear at the Recognition Hearing at the time and place set forth above.

     **PLEASE TAKE FURTHER NOTICE** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice.

     **PLEASE TAKE FURTHER NOTICE** that, at the Recognition Hearing, the Court may order the scheduling of a case management conference to consider the efficient administration of the case.

     **PLEASE TAKE FURTHER NOTICE** that the Recognition Hearing may be adjourned from time to time without further notice other than an announcement in open court, or a notice of adjournment filed with the Bankruptcy Court, of the adjourned date or dates or any other further adjourned hearing.

*[Remainder of page intentionally left blank]*

Dated: April 1, 2022
Wilmington, Delaware

**KOBRE & KIM LLP**

*/s/Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6456
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (Admitted *Pro Hac Vice*)
Evelyn Baltodano Sheehan (Admitted *Pro Hac Vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Admitted *Pro Hac Vice*)
Victor S. Leung (Admitted *Pro Hac Vice*)
800 Third Avenue, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

**Exhibit 2**
Notice Party List

| Notice Party | Notice Party Address |
|---|---|
| | |
| **Debtor via the Administrators of its Foreign Proceeding** | |
| Andrew Childe, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Richard Lewis, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Mathew Clingerman, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | Chancery Hall 1st Floor 52 Reid Street, Hamilton, HM 12 PO Box 671, HM CX Bermuda |
| **Courts and Regulators** | |
| Office of the United States Trustee for the District of Delaware | Office of The United States Trustee J. Caleb Boggs Federal Building 844 King Street, Suite 2207 Lockbox 35 Wilmington, DE 19801 302-573-6491 |
| Supreme Court of Bermuda | Attn: Commercial Division 2nd Floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda |
| **Parties in Interest** | |
| Internal Revenue Service | Centralized Insolvency Operation P. O. Box 7346 Philadelphia, PA 19101-7346 |
| Internal Revenue Service | 2970 Market St. Mail Stop 5-Q30-133 Philadelphia, PA 19104-5016 |
| Internal Revenue Service | c/o Robert Hunt 8122 Datapoint Dr 12th Floor MS 5434 San Antonio, TX 78229 |

AP0238

| Notice Party | Notice Party Address |
|---|---|
| Department of Justice | c/o Herbert W Linder<br>United States Department of Justice<br>Tax Division<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75242<br>214-880-9754<br>herbert.w.linder@usdoj.gov |
| Department of Justice | c/o Jonathan L Blacker<br>Attorney at Law<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75201<br>214-880-9765<br>214-880-9741 (facsimile)<br>jonathan.blacker2@usdoj.gov |
| Department of Justice District of Delaware | Hercules Building<br>U.S. Attorney's Office<br>1313 N Market Street<br>Wilmington, DE, 19801 |
| Point Investments LLC | Suite 556<br>Hunkins Waterfront Plaza<br>Main Street<br>Charlestown<br>Nevis |
| Spanish Steps Holdings Ltd. | c/o Carey Olsen Bermuda Limited<br>5th Floor, Rosebank Centre<br>11 Bermudiana Road<br>Pembroke HM, 08, Bermuda |
| Solera Global Holding Corp. | c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| Universal Computer Systems Holding, Inc. | c/o CT Corporation System<br>111 Eighth Avenue<br>New York, New York, 10011 |
| Difficult LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| Vista Equity Partners Management, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |

| Notice Party | Notice Party Address |
|---|---|
| Vista Equity Partners Management, LLC | c/o Christina S. Lema<br>4 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>CLema@vistaequitypartners.com |
| Vista Equity Partners, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| VEPF IV Co-Invest 1A, L.P. | VEPF IV GP (Cayman), L.P., acting in its capacity as general partner of VEPF IV Co-Invest 1A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF IV Co-Invest 2-A, L.P. | VEPF IV Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 1-B, L.P. | VEPF V Co-Invest 1 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 1-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 2-B, L.P. | VEPF V Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund IV (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund IV GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund IV (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund VI-A, L.P. | FAO David A. Breach<br>Vista Equity Partners Fund VI GP, L.P., acting in its capacity as general partner of Vista Equity Partners Fund VI-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |

AP0240

| Notice Party | Notice Party Address |
|---|---|
| Vista Foundation Fund I (Parallel), L.P. | FAO David A. Breach<br>Vista Foundation Fund I GP, LLC, acting in its capacity as general partner of Vista Foundation Fund I (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Foundation Fund II-A, L.P. | FAO David A. Breach<br>Vista Foundation Fund II GP, LLC, acting in its capacity as general partner of Vista Foundation Fund II-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund III (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund III GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund III (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| SD Rollover Vehicle, L.P. | SD Rollover Vehicle Limited, acting in its capacity as general partner of SD Rollover Vehicle, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Krypton Fund Services (Bermuda) Ltd. | BCB Building, Penthouse<br>34 Bermudiana Road<br>Hamilton HM11<br>Bermuda<br>Hamiltonrwhite@kryptonfs.com |
| PricewaterhouseCoopers | FAO Robert J. Osborne<br>4th Floor, Washington House<br>16 Church Street<br>Hamilton HM 11<br>Bermuda<br>robert.osborne@pwc.com |
| St. John's Trust Company (PVT) Limited | c/o Alexander Management Ltd.<br>69 Pitts Bay Road<br>Belvedere Building, Ground Floor<br>Pembroke HM 08<br>Bermuda |
| FC Lawyers | Brisbane Club Tower<br>Level 8, 241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>office@fclawyers.com.au |

AP0241

| Notice Party | Notice Party Address |
|---|---|
| James A. F. Watlington | Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Glenn Ferguson | Brisbane Club Tower, Level 8<br>241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>glenn@fclawyers.com.au |
| Alexander Management Ltd. | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Limited | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Solutions Limited | 189 Hamilton Avenue,<br>Surbiton<br>KT6 7QA<br>United Kingdom<br>jafw@alexanders.bm |
| Paul Hastings LLP | FAO Matthew J. Herrington<br>2050 M Street NW<br>Washington, DC 20036<br>mattherrington@paulhastings.com<br><br>FAO Peter B. Axelrod<br>200 Park Ave<br>New York, NY 10166<br>peteraxelrod@paulhastings.com |
| XXIV Barristers' Chambers | XXIV Old Buildings<br>Lincoln's Inn<br>London WC2A 3UP<br>DX 307 LDE<br>United Kingdom<br>edward.cumming@xxiv.co.uk |

| Notice Party | Notice Party Address |
|---|---|
| Lenz & Staehelin | FAO Shelby du Pasquier<br>Route de Chêne 30<br>CH-1211 Geneva 6<br>Switzerland<br>Shelby.dupasquier@lenzstaehelin.com<br>Hikmat.maleh@lenzstaehelin.com |
| Bermuda Monetary Authority | BMA House<br>43 Victoria Street<br>Hamilton, HM JX<br>Bermuda |
| Ward W. Benson | U.S. Department of Justice<br>Post Office Box 227<br>Washington, DC 20044<br>wardlow.w.benson@usdoj.com |
| Joyce A Tan & Partners | 8 Temasek Boulevard<br>#15-04<br>038988<br>Singapore |
| Marshall Diel & Myers Limited | c/o Apex Corporate Services Ltd.<br>58 Par-La-Ville Road<br>4th Floor Vallis Building<br>Hamilton, Pembroke HM11<br>Bermuda |

**Exhibit B**

Blackline

AP0244

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>POINT INVESTMENTS LTD.,<br>(IN LIQUIDATION)[1]<br><br>          Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. [●]22-10261-JKS |

**ORDER PURSUANT TO**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**2002(M) AND (Q) AND 9007 SCHEDULING RECOGNITION**
**HEARING AND APPROVING FORM AND MANNER OF NOTICE**

Upon the Petitioners' *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 for Order Scheduling Recognition Hearing and Approving Form and Manner of Notice* (the "Motion"),[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") (i) scheduling the Recognition Hearing, (ii) setting the Objection Deadline, (iii) approving the Notice Procedures, including the form of Recognition Hearing Notice, (iv) granting related relief as provided in the Motion, and (v) granting such other and further relief as the Court deems just and proper; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022; and the Court having found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Recognition Hearing shall be held before this Court in the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, Delaware 19801, on ~~_____ at _____~~ Monday, April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

**ORDERED** that the Objection Deadline shall be ~~_____;~~ Monday, April 18, 2022, at ~~_____~~ 4:00 p.m. (ET); and it is further

**ORDERED** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice; and it is further

**ORDERED** that the Recognition Hearing, or any part thereof, may be adjourned from time to time without further notice other than a notice of adjournment on the docket in this chapter 15 case or an announcement in open court of the adjourned date or dates of any further adjourned hearings; and it is further

**ORDERED** that the Notice Procedures set forth in the Motion (as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order) constitute due and sufficient notice of the Petitions and the relief requested therein, and are hereby approved; and it is further

**ORDERED** that the form of Recognition Hearing Notice annexed hereto as <u>Exhibit 1</u> provides adequate information to the Notice Parties of the chapter 15 case<s>.</s> <u>(as set forth on Exhibit 2 attached hereto),</u> the relief sought in the Petitions, the time fixed for the filing of objections to such relief, and the time, date, and place of the Recognition Hearing, and is hereby approved; and it is further

**ORDERED** that the Recognition Hearing Notice (and other documents specified in the Motion) shall be served upon the Notice Parties <u>(as set forth on Exhibit 2 attached hereto)</u> in the manner set forth in the Motion<s>.</s> <u>(as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order);</u> and it is further

**ORDERED** that responses or objections, if any, to the Petitions be made in writing and set forth the basis therefor, and such responses or objections must (i) be in writing, (ii) detail the factual and legal basis for the response or objection, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, (iv) be filed with the Office of the Clerk of the Court, 824 N. Market Street, Third Floor, Wilmington, Delaware 19801, and (v) be served upon the following persons so as to be received <u>no later than April 18, 2022</u> at <s>least seven days prior to the Recognition Hearing:</s><u>4:00 p.m. (ET):</u> Kobre & Kim LLP, 600 North King Street, Suite 501, Wilmington, Delaware 19801 (Attention: Jacob Kirkham, Adam M. Lavine, Victor S. Leung); the Office of the United States Trustee for the District of Delaware, 844 King Street Suite 2207 Lockbox 35 Wilmington, DE 19801; and it is further

**ORDERED** that the service pursuant to this Order shall be good and sufficient service, and constitute adequate notice of the Petitions and Recognition Hearing; and it is further

**ORDERED** that the notice requirements set forth in section 1514(c) of the Bankruptcy Code are inapplicable in the context of this chapter 15 case or, to the extent applicable, are hereby waived; and it is further

**ORDERED** that the Petitioners are authorized to take all action necessary to carry out this Order; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____     _____
       Wilmington, Delaware          UNITED STATES BANKRUPTCY JUDGE

AP0248

## **Exhibit 1**

Recognition Hearing Notice

AP0249

**Hearing Date:** April 25, 2022 at 1:00 p.m. (ET)
**Objection Deadline:** April 18, 2022 at 4:00 p.m. (ET)

# IN THE UNITED STATES BANKRUPTCY
# FOR THE COURT DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS LTD. (IN LIQUIDATION),[1] | |
| Debtor in a Foreign Proceeding. | Case No. [●]22-10261-JKS |

## NOTICE OF FILING AND HEARING ON PETITION UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE AND MOTION FOR RELATED RELIEF

**PLEASE TAKE NOTICE** that, on March 29, 2022, Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "Petitioners") of Point Investments Ltd (the "Debtor") filed the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 23] (the "Verified Petition"), together with *Official Form 401, Chapter 15 Petition for Recognition of a Foreign Proceeding* [D.I. 1] (together with the Verified Petition, the "Petitions") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the Petitions seek, among other things, the entry of an order: (i) recognizing as the "foreign main proceeding" the Debtor's winding up proceeding commenced pursuant to section 161(g) of the Companies Act 1981 before the Supreme Court of Bermuda, Commercial Court (the "Bermuda Court"), Case 2020: No. 300 (the "Bermuda Proceeding"); (ii) recognizing the Petitioners as the "foreign representatives" of the Debtor; and (iii) granting related relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled an evidentiary hearing (the "Recognition Hearing") to consider the relief requested in the Petitions at ~~(prevailing Eastern Time~~1:00 p.m. (ET) on Monday, April ~~22~~25, 2022 by remote means according to such procedures as shall be set forth in ~~Room ___ of~~ the ~~United States Bankruptcy Court for~~Agenda to be filed by the ~~District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, Delaware 19801~~Petitioners no later than 12:00 p.m. (ET) on Thursday, April 21, 2022.

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

AP0250

**Hearing Date:** April 25, 2022 at 1:00 p.m. (ET)
**Objection Deadline:** April 18, 2022 at 4:00 p.m. (ET)

**PLEASE TAKE FURTHER NOTICE** that copies of the Petitions and all accompanying documentation are available to parties in interest through the Bankruptcy Court's Electronic Case Filing System, which can be accessed from the Bankruptcy Court's website at https://www.deb.uscourts.gov/ (a PACER login and password are required to retrieve a document) or upon written request to the Petitioner's counsel (including by e-mail) addressed to:

> Kobre & Kim LLP
> 600 North King Street, Suite 501
> Wilmington, Delaware 19801
> Tel: (302) 518-6460
> Attn: Jacob Kirkham (Jacob.Kirkham@kobrekim.com)
>     Adam M. Lavine (Adam.Lavine@kobrekim.com)
>     Victor S. Leung (Victor.Leung@kobrekim.com)

**PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response or objection to the Petitions, or the relief requested therein, must do so in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the District of Delaware, setting forth in writing the basis thereof. Any such response or objection must be filed with the Bankruptcy Court and served upon the following so as to be received **no later than 4:00 p.m. (~~prevailing Eastern time~~ET) on April ~~15~~18, 2022** (the "Objection Deadline"): (i) counsel to Petitioners at Kobre & Kim LLP (Attn: Jacob Kirkham, Adam M. Lavine, Victor S. Leung), 600 North King Street, Suite 501, Wilmington, Delaware 19801; and (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that all parties in interest opposing the Petitions or the relief requested therein must appear at the Recognition Hearing at the time and place set forth above.

**PLEASE TAKE FURTHER NOTICE** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice.

**PLEASE TAKE FURTHER NOTICE** that, at the Recognition Hearing, the Court may order the scheduling of a case management conference to consider the efficient administration of the case.

**PLEASE TAKE FURTHER NOTICE** that the Recognition Hearing may be adjourned from time to time without further notice other than an announcement in open court, or a notice of adjournment filed with the Bankruptcy Court, of the adjourned date or dates or any other further adjourned hearing.

*[Remainder of page intentionally left blank]*

Dated: ~~March 29~~April 1, 2022
Wilmington, Delaware

**KOBRE & KIM LLP**

/**s**/  *Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6456
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (Admitted *Pro Hac Vice*
~~Forthcoming~~)
Evelyn Baltodano Sheehan (Admitted *Pro Hac Vice*
~~Forthcoming~~)
201 South Biscayne Boulevard
, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Admitted *Pro Hac Vice* ~~Forthcoming~~)
Victor S. Leung (Admitted *Pro Hac Vice* ~~Forthcoming~~)
800 Third Avenue
, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

**Exhibit 2**
Notice Party List

| Notice Party | Notice Party Address |
|---|---|
| **Debtor via the Administrators of its Foreign Proceeding** | |
| Andrew Childe, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Richard Lewis, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Mathew Clingerman, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | Chancery Hall 1st Floor 52 Reid Street, Hamilton, HM 12 PO Box 671, HM CX Bermuda |
| **Courts and Regulators** | |
| Office of the United States Trustee for the District of Delaware | Office of The United States Trustee J. Caleb Boggs Federal Building 844 King Street, Suite 2207 Lockbox 35 Wilmington, DE 19801 302-573-6491 |
| Supreme Court of Bermuda | Attn: Commercial Division 2nd Floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda |
| **Parties in Interest** | |
| Internal Revenue Service | Centralized Insolvency Operation P. O. Box 7346 Philadelphia, PA 19101-7346 |
| Internal Revenue Service | 2970 Market St. Mail Stop 5-Q30-133 Philadelphia, PA 19104-5016 |
| Internal Revenue Service | c/o Robert Hunt 8122 Datapoint Dr 12th Floor MS 5434 San Antonio, TX 78229 |

AP0253

Case 1:23-cv-06003-FB Document 12-4 Filed 08/24/23 Page 254 of 345 PageID #: 321

**Objection Deadline:** April 15, 2022

~~**Hearing Date:** April 22, 2022 at 10:00 a.m. (ET)~~

| Notice Party | Notice Party Address |
|---|---|
| Department of Justice | c/o Herbert W Linder<br>United States Department of Justice<br>Tax Division<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75242<br>214-880-9754<br>herbert.w.linder@usdoj.gov |
| Department of Justice | c/o Jonathan L Blacker<br>Attorney at Law<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75201<br>214-880-9765<br>214-880-9741 (facsimile)<br>jonathan.blacker2@usdoj.gov |
| Department of Justice District of Delaware | Hercules Building<br>U.S. Attorney's Office<br>1313 N Market Street<br>Wilmington, DE 19801 |
| Point Investments LLC | Suite 556<br>Hunkins Waterfront Plaza<br>Main Street<br>Charlestown<br>Nevis |
| Spanish Steps Holdings Ltd. | c/o Carey Olsen Bermuda Limited<br>5th Floor, Rosebank Centre<br>11 Bermudiana Road<br>Pembroke HM, 08, Bermuda |
| Solera Global Holding Corp. | c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| Universal Computer Systems Holding, Inc. | c/o CT Corporation System<br>111 Eighth Avenue<br>New York, New York, 10011 |
| Difficult LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| Vista Equity Partners Management, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |

Objection Deadline: April 15, 2022     ~~Hearing Date: April 22, 2022 at 10:00 a.m. (ET)~~

| Notice Party | Notice Party Address |
|---|---|
| Vista Equity Partners Management, LLC | c/o Christina S. Lema<br>4 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>CLema@vistaequitypartners.com |
| Vista Equity Partners, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| VEPF IV Co-Invest 1A, L.P. | VEPF IV GP (Cayman), L.P., acting in its capacity as general partner of VEPF IV Co-Invest 1A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF IV Co-Invest 2-A, L.P. | VEPF IV Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 1-B, L.P. | VEPF V Co-Invest 1 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 1-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 2-B, L.P. | VEPF V Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund IV (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund IV GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund IV (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund VI-A, L.P. | FAO David A. Breach<br>Vista Equity Partners Fund VI GP, L.P., acting in its capacity as general partner of Vista Equity Partners Fund VI-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |

| Notice Party | Notice Party Address |
|---|---|
| Vista Foundation Fund I (Parallel), L.P. | FAO David A. Breach<br>Vista Foundation Fund I GP, LLC, acting in its capacity as general partner of Vista Foundation Fund I (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Foundation Fund II-A, L.P. | FAO David A. Breach<br>Vista Foundation Fund II GP, LLC, acting in its capacity as general partner of Vista Foundation Fund II-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund III (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund III GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund III (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| SD Rollover Vehicle, L.P. | SD Rollover Vehicle Limited, acting in its capacity as general partner of SD Rollover Vehicle, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Krypton Fund Services (Bermuda) Ltd. | BCB Building, Penthouse<br>34 Bermudiana Road<br>Hamilton HM11<br>Bermuda<br>Hamiltonrwhite@kryptonfs.com |
| PricewaterhouseCoopers | FAO Robert J. Osborne<br>4th Floor, Washington House<br>16 Church Street<br>Hamilton HM 11<br>Bermuda<br>robert.osborne@pwc.com |
| St. John's Trust Company (PVT) Limited | c/o Alexander Management Ltd.<br>69 Pitts Bay Road<br>Belvedere Building, Ground Floor<br>Pembroke HM 08<br>Bermuda |
| FC Lawyers | Brisbane Club Tower<br>Level 8, 241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>office@fclawyers.com.au |

Case 1:22-cv-10260-Jouhen Doc 12-4 Filed 04/01/22 Page 257 of 345 PageID #: 324

~~**Hearing Date:** April 22, 2022 at 10:00 a.m. (ET)~~

~~**Objection Deadline:** April 15, 2022~~

| Notice Party | Notice Party Address |
|---|---|
| James A. F. Watlington | Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Glenn Ferguson | Brisbane Club Tower, Level 8<br>241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>glenn@fclawyers.com.au |
| Alexander Management Ltd. | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Limited | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Solutions Limited | 189 Hamilton Avenue,<br>Surbiton<br>KT6 7QA<br>United Kingdom<br>jafw@alexanders.bm |
| Paul Hastings LLP | FAO Matthew J. Herrington<br>2050 M Street NW<br>Washington, DC 20036<br>mattherrington@paulhastings.com<br><br>FAO Peter B. Axelrod<br>200 Park Ave<br>New York, NY 10166<br>peteraxelrod@paulhastings.com |
| XXIV Barristers' Chambers | XXIV Old Buildings<br>Lincoln's Inn<br>London WC2A 3UP<br>DX 307 LDE<br>United Kingdom<br>edward.cumming@xxiv.co.uk |

Hearing Date: April 22, 2022 at 10:00 a.m. (ET)

Objection Deadline: April 15, 2022

| Notice Party | Notice Party Address |
|---|---|
| Lenz & Staehelin | FAO Shelby du Pasquier<br>Route de Chêne 30<br>CH-1211 Geneva 6<br>Switzerland<br>Shelby.dupasquier@lenzstaehelin.com<br>Hikmat.maleh@lenzstaehelin.com |
| Bermuda Monetary Authority | BMA House<br>43 Victoria Street<br>Hamilton, HM JX<br>Bermuda |
| Ward W. Benson | U.S. Department of Justice<br>Post Office Box 227<br>Washington, DC 20044<br>wardlow.w.benson@usdoj.com |
| Joyce A Tan & Partners | 8 Temasek Boulevard<br>#15-04<br>038988<br>Singapore |
| Marshall Diel & Myers Limited | c/o Apex Corporate Services Ltd.<br>58 Par-La-Ville Road<br>4th Floor Vallis Building<br>Hamilton, Pembroke HM11<br>Bermuda |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

POINT INVESTMENTS LTD.,
(IN LIQUIDATION)[1]

          Debtor in a Foreign Proceeding.

Chapter 15

Case No. 22-10261-JKS

### ORDER PURSUANT TO
### FEDERAL RULES OF BANKRUPTCY PROCEDURE
### 2002(M) AND (Q) AND 9007 SCHEDULING RECOGNITION
### HEARING AND APPROVING FORM AND MANNER OF NOTICE

Upon the Petitioners' *Motion Pursuant to Federal Rules of Bankruptcy Procedure 2002(m) and (q) and 9007 for Order Scheduling Recognition Hearing and Approving Form and Manner of Notice* (the "Motion"),[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") (i) scheduling the Recognition Hearing, (ii) setting the Objection Deadline, (iii) approving the Notice Procedures, including the form of Recognition Hearing Notice, (iv) granting related relief as provided in the Motion, and (v) granting such other and further relief as the Court deems just and proper; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022; and the Court having found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

AP0259

*United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Recognition Hearing shall be held before this Court in the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, Delaware 19801, on Monday, April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

**ORDERED** that the Objection Deadline shall be Monday, April 18, 2022, at 4:00 p.m. (ET); and it is further

**ORDERED** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice; and it is further

**ORDERED** that the Recognition Hearing, or any part thereof, may be adjourned from time to time without further notice other than a notice of adjournment on the docket in this chapter 15 case or an announcement in open court of the adjourned date or dates of any further adjourned hearings; and it is further

**ORDERED** that the Notice Procedures set forth in the Motion (as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order) constitute due and sufficient notice of the Petitions and the relief requested therein, and are hereby approved; and it is further

**ORDERED** that the form of Recognition Hearing Notice annexed hereto as <u>Exhibit 1</u> provides adequate information to the Notice Parties of the chapter 15 case (as set forth on <u>Exhibit 2</u> attached hereto), the relief sought in the Petitions, the time fixed for the filing of objections to such relief, and the time, date, and place of the Recognition Hearing, and is hereby approved; and it is further

**ORDERED** that the Recognition Hearing Notice (and other documents specified in the Motion) shall be served upon the Notice Parties (as set forth on <u>Exhibit 2</u> attached hereto) in the manner set forth in the Motion (as revised to include the Notice Parties as set forth in Exhibit 2 annexed hereto and the service of all notices within one (1) business day of entry of this Order); and it is further

**ORDERED** that responses or objections, if any, to the Petitions be made in writing and set forth the basis therefor, and such responses or objections must (i) be in writing, (ii) detail the factual and legal basis for the response or objection, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, (iv) be filed with the Office of the Clerk of the Court, 824 N. Market Street, Third Floor, Wilmington, Delaware 19801, and (v) be served upon the following persons so as to be received no later than April 18, 2022 at 4:00 p.m. (ET): Kobre & Kim LLP, 600 North King Street, Suite 501, Wilmington, Delaware 19801 (Attention: Jacob Kirkham, Adam M. Lavine, Victor S. Leung); the Office of the United States Trustee for the District of Delaware, 844 King Street Suite 2207 Lockbox 35 Wilmington, DE 19801; and it is further

**ORDERED** that the service pursuant to this Order shall be good and sufficient service, and constitute adequate notice of the Petitions and Recognition Hearing; and it is further

**ORDERED** that the notice requirements set forth in section 1514(c) of the Bankruptcy Code are inapplicable in the context of this chapter 15 case or, to the extent applicable, are hereby waived; and it is further

**ORDERED** that the Petitioners are authorized to take all action necessary to carry out this Order; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: April 1, 2022

J. Kate Stickles
United States Bankruptcy Judge

AP0262

**Exhibit 1**

Recognition Hearing Notice

AP0263

## IN THE UNITED STATES BANKRUPTCY
## FOR THE COURT DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS LTD. (IN LIQUIDATION),[1] | |
| Debtor in a Foreign Proceeding. | Case No. 22-10261-JKS |

### NOTICE OF FILING AND HEARING ON PETITION UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE AND MOTION FOR RELATED RELIEF

**PLEASE TAKE NOTICE** that, on March 29, 2022, Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Krys & Associates (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives (in such capacity, the "Petitioners") of Point Investments Ltd (the "Debtor") filed the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 3] (the "Verified Petition"), together with *Official Form 401, Chapter 15 Petition for Recognition of a Foreign Proceeding* [D.I. 1] (together with the Verified Petition, the "Petitions") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the Petitions seek, among other things, the entry of an order: (i) recognizing as the "foreign main proceeding" the Debtor's winding up proceeding commenced pursuant to section 161(g) of the Companies Act 1981 before the Supreme Court of Bermuda, Commercial Court (the "Bermuda Court"), Case 2020: No. 300 (the "Bermuda Proceeding"); (ii) recognizing the Petitioners as the "foreign representatives" of the Debtor; and (iii) granting related relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled an evidentiary hearing (the "Recognition Hearing") to consider the relief requested in the Petitions at 1:00 p.m. (ET) on Monday, April 25, 2022 by remote means according to such procedures as shall be set forth in the Agenda to be filed by the Petitioners no later than 12:00 p.m. (ET) on Thursday, April 21, 2022.

**PLEASE TAKE FURTHER NOTICE** that copies of the Petitions and all accompanying documentation are available to parties in interest through the Bankruptcy Court's Electronic Case Filing System, which can be accessed from the Bankruptcy Court's website at

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda underregistration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

**Hearing Date:** April 25, 2022 at 1:00 p.m. (ET)
**Objection Deadline:** April 18, 2022 at 4:00 p.m. (ET)

https://www.deb.uscourts.gov/ (a PACER login and password are required to retrieve a document) or upon written request to the Petitioner's counsel (including by e-mail) addressed to:

> Kobre & Kim LLP
> 600 North King Street, Suite 501
> Wilmington, Delaware 19801
> Tel: (302) 518-6460
> Attn: Jacob Kirkham (Jacob.Kirkham@kobrekim.com)
>     Adam M. Lavine (Adam.Lavine@kobrekim.com)
>     Victor S. Leung (Victor.Leung@kobrekim.com)

**PLEASE TAKE FURTHER NOTICE** that any party in interest wishing to submit a response or objection to the Petitions, or the relief requested therein, must do so in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the District of Delaware, setting forth in writing the basis thereof. Any such response or objection must be filed with the Bankruptcy Court and served upon the following so as to be received **no later than 4:00 p.m. (ET) on April 18, 2022** (the "Objection Deadline"): (i) counsel to Petitioners at Kobre & Kim LLP (Attn: Jacob Kirkham, Adam M. Lavine, Victor S. Leung), 600 North King Street, Suite 501, Wilmington, Delaware 19801; and (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that all parties in interest opposing the Petitions or the relief requested therein must appear at the Recognition Hearing at the time and place set forth above.

**PLEASE TAKE FURTHER NOTICE** that if no response or objection is timely filed and served as provided above, the Court may grant the relief requested in the Petitions without further notice.

**PLEASE TAKE FURTHER NOTICE** that, at the Recognition Hearing, the Court may order the scheduling of a case management conference to consider the efficient administration of the case.

**PLEASE TAKE FURTHER NOTICE** that the Recognition Hearing may be adjourned from time to time without further notice other than an announcement in open court, or a notice of adjournment filed with the Bankruptcy Court, of the adjourned date or dates or any other further adjourned hearing.

*[Remainder of page intentionally left blank]*

AP0265

Dated: April 1, 2022
Wilmington, Delaware

**KOBRE & KIM LLP**

*/s/Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6456
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (Admitted *Pro Hac Vice*)
Evelyn Baltodano Sheehan (Admitted *Pro Hac Vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Admitted *Pro Hac Vice*)
Victor S. Leung (Admitted *Pro Hac Vice*)
800 Third Avenue, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

**Exhibit 2**
Notice Party List

| Notice Party | Notice Party Address |
|---|---|
| | |
| **Debtor via the Administrators of its Foreign Proceeding** | |
| Andrew Childe, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Richard Lewis, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands |
| Mathew Clingerman, in his capacity as Joint Provisional Liquidator and putative foreign representative of Point Investments, Ltd. | Chancery Hall 1st Floor 52 Reid Street, Hamilton, HM 12 PO Box 671, HM CX Bermuda |
| **Courts and Regulators** | |
| Office of the United States Trustee for the District of Delaware | Office of The United States Trustee J. Caleb Boggs Federal Building 844 King Street, Suite 2207 Lockbox 35 Wilmington, DE 19801 302-573-6491 |
| Supreme Court of Bermuda | Attn: Commercial Division 2nd Floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda |
| **Parties in Interest** | |
| Internal Revenue Service | Centralized Insolvency Operation P. O. Box 7346 Philadelphia, PA 19101-7346 |
| Internal Revenue Service | 2970 Market St. Mail Stop 5-Q30-133 Philadelphia, PA 19104-5016 |
| Internal Revenue Service | c/o Robert Hunt 8122 Datapoint Dr 12th Floor MS 5434 San Antonio, TX 78229 |

| Notice Party | Notice Party Address |
|---|---|
| Department of Justice | c/o Herbert W Linder<br>United States Department of Justice<br>Tax Division<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75242<br>214-880-9754<br>herbert.w.linder@usdoj.gov |
| Department of Justice | c/o Jonathan L Blacker<br>Attorney at Law<br>717 N Harwood<br>Ste 400<br>Dallas, TX 75201<br>214-880-9765<br>214-880-9741 (facsimile)<br>jonathan.blacker2@usdoj.gov |
| Department of Justice District of Delaware | Hercules Building<br>U.S. Attorney's Office<br>1313 N Market Street<br>Wilmington, DE, 19801 |
| Point Investments LLC | Suite 556<br>Hunkins Waterfront Plaza<br>Main Street<br>Charlestown<br>Nevis |
| Spanish Steps Holdings Ltd. | c/o Carey Olsen Bermuda Limited<br>5th Floor, Rosebank Centre<br>11 Bermudiana Road<br>Pembroke HM, 08, Bermuda |
| Solera Global Holding Corp. | c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| Universal Computer Systems Holding, Inc. | c/o CT Corporation System<br>111 Eighth Avenue<br>New York, New York, 10011 |
| Difficult LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| Vista Equity Partners Management, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |

| Notice Party | Notice Party Address |
|---|---|
| Vista Equity Partners Management, LLC | c/o Christina S. Lema<br>4 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>CLema@vistaequitypartners.com |
| Vista Equity Partners, LLC | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| VEPF IV Co-Invest 1A, L.P. | VEPF IV GP (Cayman), L.P., acting in its capacity as general partner of VEPF IV Co-Invest 1A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF IV Co-Invest 2-A, L.P. | VEPF IV Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 1-B, L.P. | VEPF V Co-Invest 1 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 1-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| VEPF V Co-Invest 2-B, L.P. | VEPF V Co-Invest 2 GP, LLC, acting in its capacity as general partner of VEPF IV Co-Invest 2-B, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund IV (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund IV GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund IV (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund VI-A, L.P. | FAO David A. Breach<br>Vista Equity Partners Fund VI GP, L.P., acting in its capacity as general partner of Vista Equity Partners Fund VI-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |

| Notice Party | Notice Party Address |
|---|---|
| Vista Foundation Fund I (Parallel), L.P. | FAO David A. Breach<br>Vista Foundation Fund I GP, LLC, acting in its capacity as general partner of Vista Foundation Fund I (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Foundation Fund II-A, L.P. | FAO David A. Breach<br>Vista Foundation Fund II GP, LLC, acting in its capacity as general partner of Vista Foundation Fund II-A, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Vista Equity Partners Fund III (Parallel), L.P. | FAO David A. Breach<br>Vista Equity Partners Fund III GP, LLC, acting in its capacity as general partner of Vista Equity Partners Fund III (Parallel), L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| SD Rollover Vehicle, L.P. | SD Rollover Vehicle Limited, acting in its capacity as general partner of SD Rollover Vehicle, L.P.<br>4 Embarcadero Center 20th Floor<br>San Francisco, CA 94111 |
| Krypton Fund Services (Bermuda) Ltd. | BCB Building, Penthouse<br>34 Bermudiana Road<br>Hamilton HM11<br>Bermuda<br>Hamiltonrwhite@kryptonfs.com |
| PricewaterhouseCoopers | FAO Robert J. Osborne<br>4th Floor, Washington House<br>16 Church Street<br>Hamilton HM 11<br>Bermuda<br>robert.osborne@pwc.com |
| St. John's Trust Company (PVT) Limited | c/o Alexander Management Ltd.<br>69 Pitts Bay Road<br>Belvedere Building, Ground Floor<br>Pembroke HM 08<br>Bermuda |
| FC Lawyers | Brisbane Club Tower<br>Level 8, 241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>office@fclawyers.com.au |

| Notice Party | Notice Party Address |
|---|---|
| James A. F. Watlington | Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Glenn Ferguson | Brisbane Club Tower, Level 8<br>241 Adelaide Street<br>Brisbane, QLD 4000<br>Australia<br>glenn@fclawyers.com.au |
| Alexander Management Ltd. | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Limited | FAO James Watlington<br>Belvedere Building<br>Ground Floor, 69 Pitts Bay Road<br>Pembroke HM 08<br>Bermuda<br>jafw@alexanders.bm |
| Alexander Advisory Solutions Limited | 189 Hamilton Avenue,<br>Surbiton<br>KT6 7QA<br>United Kingdom<br>jafw@alexanders.bm |
| Paul Hastings LLP | FAO Matthew J. Herrington<br>2050 M Street NW<br>Washington, DC 20036<br>mattherrington@paulhastings.com<br><br>FAO Peter B. Axelrod<br>200 Park Ave<br>New York, NY 10166<br>peteraxelrod@paulhastings.com |
| XXIV Barristers' Chambers | XXIV Old Buildings<br>Lincoln's Inn<br>London WC2A 3UP<br>DX 307 LDE<br>United Kingdom<br>edward.cumming@xxiv.co.uk |

| Notice Party | Notice Party Address |
|---|---|
| Lenz & Staehelin | FAO Shelby du Pasquier<br>Route de Chêne 30<br>CH-1211 Geneva 6<br>Switzerland<br>Shelby.dupasquier@lenzstaehelin.com<br>Hikmat.maleh@lenzstaehelin.com |
| Bermuda Monetary Authority | BMA House<br>43 Victoria Street<br>Hamilton, HM JX<br>Bermuda |
| Ward W. Benson | U.S. Department of Justice<br>Post Office Box 227<br>Washington, DC 20044<br>wardlow.w.benson@usdoj.com |
| Joyce A Tan & Partners | 8 Temasek Boulevard<br>#15-04<br>038988<br>Singapore |
| Marshall Diel & Myers Limited | c/o Apex Corporate Services Ltd.<br>58 Par-La-Ville Road<br>4th Floor Vallis Building<br>Hamilton, Pembroke HM11<br>Bermuda |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re

POINT INVESTMENTS, LTD.
(IN LIQUIDATION),[1]

            Debtor in a Foreign Proceeding.

Chapter 15

Case No. 22-10261-JKS

## NOTICE OF FILING OF AGREED REVISED PROPOSED ORDER GRANTING PROVISIONAL RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that on March 31, 2022 the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") held a hearing (the "First Day Hearing") to consider the Petitioners' *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* [Docket No. 7] (the "Provisional Relief Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is the revised proposed *Order Granting Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Revised Proposed Order"). A blackline copy of the Revised Proposed Order showing changes made from the proposed order attached to the Provisional Relief Motion is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the record at the First Day Hearing, the Petitioners shared a draft of the Revised Proposed Order with (i) the Office of the United States Trustee's Office for the District of Delaware (the "United States Trustee"), and

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

2 Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Provisional Relief Motion.

AP0273

(ii) the United States Department of Justice, Tax Division (the "DOJ").  The Revised Proposed

Order reflects negotiated revisions made at the request of the DOJ to avoid further disputes as to

the form of order.

**PLEASE TAKE FURTHER NOTICE** that the United States Trustee and the DOJ have

agreed to the form of the Revised Proposed Order attached hereto.

Accordingly, the Petitioners respectfully request that the Court enter the Revised Proposed

Order at the Court's earliest convenience.

Dated: April 4, 2022
Wilmington, Delaware

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Jacob R. Kirkham*
Jacob R. Kirkham (No. #5768)
600 North King Street
Suite 501
Wilmington, Delaware 19801
Tel: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Adriana Riviere-Badell (Admitted *Pro Hac Vice*)
Evelyn Baltodano Sheehan (Admitted *Pro Hac Vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Tel: (305) 967-6117
Adriana.Riviere-Badell@kobrekim.com
Evelyn.Sheehan@kobrekim.com

Adam M. Lavine (Admitted *Pro Hac Vice*)
Victor S. Leung (Admitted *Pro Hac Vice*)
800 Third Avenue, 6th Floor
New York, New York 10022
Tel: (212) 488-1200
Adam.Lavine@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioners*

AP0274

## **Exhibit A**

Revised Proposed Order

**Exhibit B**

Blackline

AP0276

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| POINT INVESTMENTS, LTD., | |
| (IN LIQUIDATION)[1] | |
| Debtor in a Foreign Proceeding. | Case No. 22-10261 (JKS) |

**ORDER GRANTING PROVISIONAL RELIEF**
**UNDER SECTION 1519 OF THE BANKRUPTCY CODE**

Upon the Petitioners' *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Motion")[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") provisionally staying any execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the United States, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code; and whereas the Joint Provisional Liquidators have represented that they do not seek a provisional stay of any exercise of a police or regulatory act of a governmental unit, and do not seek enforcement of a provisional stay as to the criminal or civil court proceedings involving Robert T. Brockman pending before the United States Tax Court and the District Court for the Southern District of Texas, or of the civil asset forfeiture proceeding pending in the District Court for the District of Colorado; and whereas the Joint Provisional Liquidators have not sought, on a provisional basis, relief under sections 1519(a)(2) or 1521(b) of the Bankruptcy Code; and whereas the Joint

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Provisional Liquidators have represented that, currently, they are not seeking to repatriate assets to Bermuda; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022 (the "First Day Hearing"); and the Court having preliminarily found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby:

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that any execution against the Debtor's assets is provisionally stayed starting as of March 31, 2022, pursuant to section 1519(a)(1) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

ORDERED that the automatic stay set forth in section 362 of the Bankruptcy Code shall apply provisionally to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States, starting as of March 31, 2022, pursuant to section 1519(a)(3) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

ORDERED that the Joint Provisional Liquidators and United States Department of Justice, Tax Division (the "DOJ") shall each file a brief on the docket no later than April 14, 2022 at 4:00 p.m. (prevailing Eastern Time), that addresses the sovereign immunity and Tax Anti-

AP0278

Injunction Act issues raised by the DOJ on the record at the First Day Hearing and in the *United States' Opposition to Motion to Shorten Notice and Motion to Vacate Order* [D.I. 14]; and it is further

      **ORDERED** that prior to a decision on the Petition, Petitioners will not direct the transfer of the Debtor's assets located within the territorial jurisdiction of the United States to a location outside the territorial jurisdiction of the United States, except after notice to the DOJ and approval from the Court; and it is further

      **ORDERED** that the Court shall hold a hearing to consider the Motion on a final basis on April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

      **ORDERED** that this Order shall be immediately effective and enforceable upon its entry.


Dated: _____      _____
      Wilmington, Delaware            UNITED STATES BANKRUPTCY JUDGE

AP0279

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re

POINT INVESTMENTS, LTD.,
(IN LIQUIDATION)[1]

       Debtor in a Foreign Proceeding.

Chapter 15

Case No. [●]22-10261 (JKS)

---

**ORDER GRANTING PROVISIONAL RELIEF**
**UNDER SECTION 1519 OF THE BANKRUPTCY CODE**

Upon the Petitioners' *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "~~Stay~~ Motion")[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") provisionally staying any execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the United States, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, ~~effective~~; and whereas the Joint Provisional Liquidators have represented that they do not seek a provisional stay of any exercise of a police or regulatory act of a governmental unit, and do not seek enforcement of a provisional stay as ~~of~~ to the ~~filing of the Petition~~ criminal or civil court proceedings involving Robert T. Brockman pending before the United States Tax Court and the District Court for the Southern District of Texas, or of the civil asset forfeiture

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proceeding pending in the District Court for the District of Colorado; and whereas the Joint Provisional Liquidators have not sought, on a provisional basis, relief under sections 1519(a)(2) or 1521(b) of the Bankruptcy Code; and whereas the Joint Provisional Liquidators have represented that, currently, they are not seeking to repatriate assets to Bermuda; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022 (the "First Day Hearing"); and the Court having preliminarily found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby:

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that any execution against the Debtor's assets is provisionally stayed starting as of March 31, 2022, pursuant to section 1519(a)(1) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

**ORDERED** that the automatic stay set forth in section 362 of the Bankruptcy Code shall apply provisionally to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States, starting as of March 31, 2022, pursuant to sections section 1519(a) and

AP0281

~~1521~~(a3) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

~~ORDERED that such provisional relief shall apply effective as of the date of the filing of the Petition such that any execution against~~

ORDERED that the Joint Provisional Liquidators and United States Department of Justice, Tax Division (the "DOJ") shall each file a brief on the docket no later than April 14, 2022 at 4:00 p.m. (prevailing Eastern Time), that addresses the sovereign immunity and Tax Anti-Injunction Act issues raised by the DOJ on the record at the First Day Hearing and in the *United States' Opposition to Motion to Shorten Notice and Motion to Vacate Order* [D.I. 14]; and it is further

ORDERED that prior to a decision on the Petition, Petitioners will not direct the transfer of the Debtor's assets~~, and any act taken with respect to the Debtor and the property of the Debtor~~ located within the territorial jurisdiction of the United States ~~in contravention of section 362 of the Bankruptcy Code shall be deemed null and void~~ to a location outside the territorial jurisdiction of the United States, except after notice to the DOJ and approval from the Court; and it is further

ORDERED that the Court shall hold a hearing to consider the Motion on a final basis on April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

ORDERED that this Order shall be immediately effective and enforceable upon its entry.

Dated: _____        _____
       Wilmington, Delaware                   UNITED STATES BANKRUPTCY JUDGE

AP0282

Document comparison by Workshare 10.0 on Monday, April 4, 2022 2:19:28 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\JConte\OneDrive - KobreKimLLP\Desktop\FA - Proposed Order on Provisional Stay Motion.DOCX |
| Description | FA - Proposed Order on Provisional Stay Motion |
| Document 2 ID | iManage://WORK10.KOBREKIM.COM/ACTIVE/3882430/12 |
| Description | #3882430v12<ACTIVE> - FA - Proposed Order on Provisional Stay Motion |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 31 |

AP0283

AP0284

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>POINT INVESTMENTS, LTD.,<br>(IN LIQUIDATION)[1]<br><br>      Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 22-10261 (JKS) |

**ORDER GRANTING PROVISIONAL RELIEF**
**UNDER SECTION 1519 OF THE BANKRUPTCY CODE**

Upon the Petitioners' *Motion for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "Motion")[2] requesting, in their capacity as the duly-appointed Joint Provisional Liquidators and putative foreign representatives of Point Investments, Ltd. (the "Debtor"), the entry of this order (this "Order") provisionally staying any execution against the Debtor's assets and applying section 362 of the Bankruptcy Code to the Debtor and the property of the Debtor within the United States, pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code; and whereas the Joint Provisional Liquidators have represented that they do not seek a provisional stay of any exercise of a police or regulatory act of a governmental unit, and do not seek enforcement of a provisional stay as to the criminal or civil court proceedings involving Robert T. Brockman pending before the United States Tax Court and the District Court for the Southern District of Texas, or of the civil asset forfeiture proceeding pending in the District Court for the District of Colorado; and whereas the Joint Provisional Liquidators have not sought, on a provisional basis, relief under sections 1519(a)(2) or 1521(b) of the Bankruptcy Code; and whereas the Joint

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Provisional Liquidators have represented that, currently, they are not seeking to repatriate assets to Bermuda; and the Court having considered the Motion; and the Court having found good cause for granting the relief requested therein; and the Court having held a hearing on the Motion on March 31, 2022 (the "First Day Hearing"); and the Court having preliminarily found that the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); and the Court having found that this is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code; and the Court having found that venue of this proceeding is proper before this Court pursuant to sections 1410 of title 28 of the United States Code; and the Court having found adequate and sufficient notice of the Motion having been provided; and no other or further notice being required; it is hereby:

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that any execution against the Debtor's assets is provisionally stayed starting as of March 31, 2022, pursuant to section 1519(a)(1) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

**ORDERED** that the automatic stay set forth in section 362 of the Bankruptcy Code shall apply provisionally to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States, starting as of March 31, 2022, pursuant to section 1519(a)(3) of the Bankruptcy Code, and until such time as the Court rules on the Petition; and it is further

**ORDERED** that the Joint Provisional Liquidators and United States Department of Justice, Tax Division (the "DOJ") shall each file a brief on the docket no later than April 14, 2022 at 4:00 p.m. (prevailing Eastern Time), that addresses the sovereign immunity and Tax Anti-

2

AP0286

Injunction Act issues raised by the DOJ on the record at the First Day Hearing and in the *United States' Opposition to Motion to Shorten Notice and Motion to Vacate Order* [D.I. 14]; and it is further

     **ORDERED** that prior to a decision on the Petition, Petitioners will not direct the transfer of the Debtor's assets located within the territorial jurisdiction of the United States to a location outside the territorial jurisdiction of the United States, except after notice to the DOJ and approval from the Court; and it is further

     **ORDERED** that the Court shall hold a hearing to consider the Motion on a final basis on April 25, 2022 at 1:00 p.m. (prevailing Eastern Time); and it is further

     **ORDERED** that this Order shall be immediately effective and enforceable upon its entry.

**Dated: April 5th, 2022**
**Wilmington, Delaware**

                                       **J. KATE STICKLES**
                                       **UNITED STATES BANKRUPTCY JUDGE**

AP0287

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 22-10261-JKS |
| | ) | Chapter 15 |
| | ) | |
| | ) | |
| | ) | |
| POINT INVESTMENTS, LTD. | ) | |
| (IN LIQUIDATION), | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | Wilmington, Delaware |
| | ) | March 31, 2022 |
| | ) | 1:11 p.m. |

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Petitioners:     JACOB R. KIRKHAM, ESQUIRE
KOBRE & KIM, LLP
600 North King Street, Suite 501
Wilmington, DE  19801

ADAM M. LAVINE, ESQUIRE
KOBRE & KIM, LLP
800 Third Avenue
New York, NY  10022

For the U.S. Trustee:    TIMOTHY J. FOX, JR., ESQUIRE
U.S. TRUSTEE PROGRAM
844 N. King Street, Suite 2207
Wilmington, DE  19801-3519

For the United States    WARD W. BENSON, ESQUIRE
of America:    DEPT. OF JUSTICE, TAX DIVISION
Post Office Box 227
Washington, DC  20044

Audio Operator:    Unidentified

AP0288

2

Transcribed by:    DIANA DOMAN TRANSCRIBING, LLC
               P.O. Box 129
               Gibbsboro, New Jersey  08026-0129
               Phone:   (856) 435-7172
               Fax:     (856) 435-7124
               Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

1                           I N D E X

2

3    ARGUMENT:                                      PAGE

4         By Mr. Lavine                               8

5         By Mr. Benson                              32

6         By Mr. Lavine                              38

7

8    RULING:

9         By the Court                               43

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AP0290

4

1          (The following was heard at 1:11 p.m.:)

2          COURTROOM DEPUTY:  Counsel, you are live in the

3    courtroom, and the hearing is about to begin.  Please remember

4    to state your name for the record when you speak and every

5    time you speak.  Please keep your video off and stay muted if

6    you are not speaking to the Judge, so the Judge can

7    concentrate on the parties that are presenting at the time.

8          Thank you.

9          THE COURT:  Good afternoon, everyone.  This is Judge

10   Stickles.  First, my sincerest apologies for the delay today.

11   We are on the record in the matter of Point Investments,

12   Limited, Case No. 22-10261, a Chapter 15 case.

13          And I will hear from counsel for the foreign

14   representative.

15          MR. KIRKHAM:  Good afternoon, Your Honor.  This is

16   Jacob Kirkham from Kobre in Delaware on behalf of --

17          THE COURT:  Good afternoon.

18          MR. KIRKHAM:  Thank you, Your Honor.  I'm here on

19   behalf of Mathew Clingerman, Richard Lewis and Andrew Childe,

20   as the Joint Provisional Liquidators of Point Investments,

21   Limited, who are the Petitioners in this Chapter 15 action.

22          First, Your Honor, we want to say thank you for

23   giving us such a prompt hearing.  I know it's been a tight

24   turnaround, so we're very appreciative of you making time to

25   hear us today.  Your Honor, I am joined today by my colleague

1    from our New York office, Adam Lavine.  Mr. Lavine has been

2    admitted pro hac vice, and with the Court's permission, he

3    will address the merits of the substantiative motions that are

4    listed on the agenda for later today.

5         Also, Your Honor, I am joined by Mathew Clingerman

6    and Andrew Childe who are representing the Joint Provisional

7    Liquidators.  They're independent fiduciaries of the Debtor's

8    estate, and they were duly appointed by the Supreme Court of

9    Bermuda in connection with the Debtor's foreign liquidation

10   proceeding.

11        As we will discuss later today, evidence of the

12   liquidation proceeding and the Joint Provisional Liquidators's

13   appointment is attached as Exhibit 1 to the Petition.  If --

14   if --

15        THE COURT:  Welcome, all.

16        MR. KIRKHAM:  Thank you, Your Honor.  If it's all

17   right, I have one or two items of business with regard to

18   notice that I just wanted to bring to the Court's attention,

19   and then I can turn it over to either Mr. Lavine or others for

20   making appearances.

21        On the substance of the agenda, I just want to

22   update Your Honor on what we've done.  We've filed the

23   certificate of service in advance of the hearing.  That's

24   Docket Number 20.  As reflected on the certificate of service,

25   shortly after we filed the Chapter 15 application, we provided

6

1  notice of the motion to shorten time and the motion for

2  provisional relief by email and by overnight mail to

3  representatives of the U.S. Trustee's Office, the IRS and to

4  Vista Equity Partners, Management.

5      Then yesterday, when we filed the notice of hearing

6  and the agenda on the docket, we served it by email on the

7  same parties in interest.  I'm just browsing the names, and I

8  see that there are representatives from the U.S. Trustee's

9  Office, from the DOJ, Tax Division, IRS, so I don't think

10  there's any issues of actual notice for the hearing today.

11  And with regard to notice for the recognition hearing, if it's

12  all right with Your Honor, we'll deal with that later on when

13  we get to Item C-3, and we address that motion more generally.

14      THE COURT:  Okay.  And if it would be acceptable to

15  counsel, I think it would be appropriate to address the

16  procedures motion first, given what's up today.

17      MR. KIRKHAM:  I think that's fine with us.  If it's

18  all right with Your Honor, I will then turn it over to Mr.

19  Lavine.

20      THE COURT:  That's fine.  Thank you.

21      Good afternoon, Mr. Lavine.

22      MR. LAVINE:  Good afternoon, Your Honor, and thank

23  you for hearing us again.  Adam Lavine, Kobre and Kim, on

24  behalf of the Petitioners, the Joint Provisional Liquidators.

25  Your Honor, we'll start -- at your direction, we'll start with

1      the motion to shorten time.  Your Honor already granted this

2      motion, but we have listed it here to acknowledge that the IRS

3      filed an opposition and a request to vacate shortly after Your

4      Honor's order was issued.

5              And so, well, frankly, Your Honor, what we could do,

6      if it's all right with you, is hear the motion to shorten

7      time, together with argument on the substantiative motion.

8      And the reason why I suggest that is because I actually think

9      the substantiative motion will provide all of the necessary

10     background and context for why the motion to shorten -- or why

11     the substantiative motion was needed on shortened notice.  So

12     I hear your direction, and I'm totally fine to address it in

13     that order, as you suggested, but I'll -- I just want to throw

14     out the alternative of hearing --

15             THE COURT:  Let me --

16             MR. LAVINE:  -- them together.

17             THE COURT:  -- let me clarify.  I wasn't referring

18     to the motion to shorten or the motion for provisional relief.

19     I was actually suggesting that maybe you wanted to proceed

20     with your unopposed procedures motion, first.

21             MR. LAVINE:  Oh, I understand.  Thank you, Your

22     Honor.

23             THE COURT:  And, certainly, you are more than

24     welcome to provide any background that you think might be

25     helpful to the Court in terms of a presentation before you

1    commence presentment of motions.

2              MR. LAVINE:  Understood.  Thank you.  Well, on the

3    procedures motion -- and so I guess this is Agenda Item D --

4    sorry, C-3, if I have that correct.  I will begin by saying

5    that we received a comment from the U.S. Trustee's Office on

6    the noticed-party list.  And based on the comment received

7    from the U.S. Trustee's Office, what we do intend to do is

8    submit to Your Honor a revised version of the noticed-party

9    list.

10             The revised version will now include each party that

11   is listed as a creditor on what was filed in the Bermuda

12   proceeding as what's called a statement of affairs, which is

13   not too dissimilar from a schedule of creditors in a

14   bankruptcy case in Chapter 11.  And so, based on the U.S.

15   Trustee's comment, we will be submitting a slightly revised

16   order which provides for the addition of certain additional

17   parties in interest.

18             THE COURT:  Okay.  Because that is one of the

19   questions I had is whether or not Exhibit B to your motion is

20   representative of the matrix in this case, meaning, does it

21   represent your entire creditor body?

22             MR. LAVINE:  The revised -- well, I should say this,

23   the Joint Provisional Liquidators have not called for claims

24   to be submitted as part of that proceeding just yet, and so

25   the claims reconciliation process has yet to really commence.

1    However, yes, they did, around the time of the winding-up

2    proceedings getting commenced, filed a statement of affairs.

3    The statement of affairs included what's the equivalent of a

4    creditor matrix, and we do intend to notice this Chapter 15

5    case to all of the individuals on that statement of affairs.

6              THE COURT:  Okay.  And are there more than 200

7    entities or people --

8              MR. LAVINE:  No, Your Honor.

9              THE COURT:  -- on that list?  Okay.  And is the --

10   is there a separate noticing agent in this case or will the

11   counsel for the foreign representative be handling the notice

12   in this matter?

13             MR. LAVINE:  We intend to handle it as counsel to

14   the foreign representatives.  I think the number is somewhere

15   between -- somewhere around 50 parties, and that includes

16   certain entities that received notice through agents where it

17   would be duplicative, frankly, to send 20 copies to the same

18   individual on behalf of a certain fund, so it's more than

19   manageable for us to handle on the Joint Liquidators's behalf.

20             THE COURT:  Okay.  I'm sorry.  You were presenting a

21   motion.  I think I interrupted you with questions.

22             MR. LAVINE:  Sure.

23             THE COURT:  So, please continue to present your

24   motion.

25             MR. LAVINE:  Certainly.  So we -- we -- as we

1   proposed in the motion, we intend to serve a copy of the

2   Chapter 15 petition, the verified petition, the declaration of

3   Lilla Zuill and the declaration of myself and the proposed

4   order on this motion, the scheduling motion, once it is

5   entered.  And we will do that upon, you know, the parties in

6   the -- what will become the amended service list.

7           We will do that by first-class, prepaid mail and by

8   email where an electronic email address is available.  We have

9   also submitted a notice which is known as the recognition

10  hearing notice.  We have appended that notice to the proposed

11  order and are seeking Your Honor's approval for that order.

12          That recognition hearing notice will also be served

13  upon foreign creditors via FedEx, and our intent there -- or,

14  sorry, not just foreign creditors, any foreign parties, and

15  our intent there is to insure that foreign parties are getting

16  immediate notice or as quick notice as possible, under the

17  circumstances, of the recognition hearing date and of the

18  evidentiary hearing on that date.

19          And we have proposed to Your Honor, subject to your

20  schedule, of course, April 22nd for the recognition hearing

21  notice.  But what we intend to do is serve the recognition

22  hearing notice tomorrow, and then serve everybody else via

23  first-class mail the additional papers that I mentioned, such

24  as the petition, the verified petition and the declarations.

25  We would do that within two business days of entry of an order

1    approving this motion.

2           So unless Your Honor has any other questions, we ask

3    that this procedural order be entered as, kind of, the first

4    matter of business for today.

5           THE COURT:  Does anyone wish to be heard with

6    respect to the motion scheduling a recognition hearing?

7           (No audible response.)

8           THE COURT:  Have there been modifications to the

9    proposed form of order in conjunction with your discussions

10   with the United States Trustee's Office?

11          MR. LAVINE:  Your Honor, we first -- not into the

12   substance, solely to the notice of the parties in interest --

13   I'm sorry, the list of parties in interest, and so what we can

14   do is provide -- I know the U.S. Trustee is on the line.

15   We're happy to provide the U.S. Trustee's Office a copy of the

16   amended list before we submit it to Your Honor, but whatever

17   the Court and the U.S. Trustee's Office would prefer in this

18   instance.  That's the only change.

19          THE COURT:  Okay.  Well, I have some concerns with

20   respect to timing, because tomorrow is April 1, and you're

21   seeking a hearing on April 22, and you need to provide 21 days

22   notice.  And my concern is, is that with your revised list of

23   parties in interest, your matrix, are you in a position where

24   you're going to get this to everybody so that they're provided

25   21 days notice?

1        I'm not comfortable with paragraph six, where you

2   are proposing to provide email notice, two business days after

3   the entry.

4        MR. LAVINE:  Your Honor, we're happy to do one --

5   assuming the order were to get entered today, we will endeavor

6   to get everything out today, and we can put one business day's

7   notice so that -- and at the latest, things get out tomorrow,

8   if that is acceptable to Your Honor.

9        THE COURT:  Yes.  And let me, also, add that you

10  have proposed an objection deadline of April 15th which is a

11  Court holiday in Delaware so that objections by -- you know,

12  by rule would be the next business day.  And I bring that to

13  your attention so that you can confirm that the Debtors would

14  be prepared to go forward on the 22nd if you got responses

15  that week.

16       MR. LAVINE:  Thank you for --

17       THE COURT:  And if you need to confer with your co-

18  counsel, please, we can take a minute for you to confer.

19       MR. LAVINE:  Thank you, Your Honor.  I think

20  somebody else wanted to be heard on this point.  I heard some

21  murmuring, but -- no?  Okay.

22       I believe that the requirement is, objections are to

23  be filed no later than seven days, so I know we have most of

24  the interested parties in this case already on the line.

25  Rather than move the recognition hearing date to the -- from

Lavine - Argument                                                    13

1      the 22nd to, let's say something like the 25th, I think our
2      preference would be to move the objection deadline up one day
3      to April 14th, but I think that's -- I'm happy to hear if the
4      Judge has a different perspective on that.
5              THE COURT:  Well, under the Federal Rules, it would
6      move forward to the 18th.  So that's why I'm bringing it to
7      your attention.  So you can have the hearing on the 22nd, but
8      the objection deadline, under the Federal Rules would be the
9      20 -- I mean, would be the 18th.
10             MR. LAVINE:  Okay.  Perhaps we can come back to
11     this, because I think part of my concern is that, frankly,
12     Your Honor, if we obtain the provisional relief that we are
13     seeking today, then I see no issue with moving the recognition
14     hearing by one business day.  However, if the provisional
15     relief were not to be granted, I think every effort on our end
16     will be to have a hearing as soon as humanly possible.
17             THE COURT:  Okay.  And let me -- let me just add,
18     the other, just factor to consider is, that under the Local
19     Rules, your hearing being April 22nd would require an agenda
20     to be filed by April 21 at noon.  Any reply that you would
21     want to file, you, meaning the firm representative, would be
22     due on the 20th by 4:00 p.m.
23             MR. LAVINE:  Understood, Your Honor.
24             THE COURT:  Okay.
25             MR. LAVINE:  So, if you don't mind, then I think

1    we're all aligned on the motion -- the scheduling motion and

2    notice procedures other than this open question of when will

3    the hearing date be.  And if it's acceptable to Your Honor, I

4    think we ought to come back to that after we see how these

5    other motions progress.

6              THE COURT:  That's certainly fine, and just for

7    purposes of your consideration, I am looking at April -- and

8    let me just -- April 22nd at 1:00, and I misspoke.  Your

9    agenda is due April 20th at noon, and your reply would be 4:00

10   p.m. on the 19th.  I would consider moving your reply deadline

11   to midnight on the 19th.

12             MR. LAVINE:  Okay.  Thank you, Your Honor.  So we're

13   happy to address the remaining items on the agenda then circle

14   back to this.

15             THE COURT:  Okay.

16             MR. LAVINE:  Okay.  And as I was previewing before,

17   there are two additional items on the agenda.  There's the --

18   both the motion to shorten time, as well as the motion for

19   provisional relief.  My suggestion is to, frankly, handle oral

20   argument on them together, because argument on the motion for

21   provisional relief will certainly inform the exigencies for

22   why we filed a motion to shorten time.

23             THE COURT:  That is acceptable.  I think it would be

24   prudent to address both at the same time.

25             MR. LAVINE:  Okay.  So, and before I forget, in

1    support of today's motions, we have filed the declaration of

2    Lilla Zuill.  That's at Docket Number 4.  Again, I mentioned

3    that we also -- or my colleague mentioned the declaration of

4    Adam Lavine, which attached certain exhibits.  That's at

5    Docket Number 5.

6           We also filed the verified petition at Docket Number

7    6, and the verified petition was sworn under penalty of

8    perjury by the Joint Provisional Liquidators under the laws of

9    the United States as to the factual matters set forth therein.

10   And so, to the extent necessary, you know, we request that

11   these declarations be moved into evidence.

12          THE COURT:  Okay.  Does anyone object to the

13   admission of the -- did you say Zuill declaration?

14          MR. LAVINE:  Yes.  Well, apologies, Your Honor, I

15   know her as Lilla, and I've always called her as Lilla, and

16   I've never had the courtesy of asking for her last name, but I

17   believe it is Zuill.

18          THE COURT:  Zuill declaration at Docket Number 4 or

19   the Lavine declaration at Docket Number 5?

20          Okay, hearing no objection, those declarations are

21   admitted, subject to the parties' rights to cross-examine the

22   declarants and, of course, any redirect that would be

23   necessary.

24          MR. LAVINE:  Okay.  Thank you, Your Honor.  Well,

25   we'll move straight to the motion for provisional relief or

1    the same motion, as we refer to it.  The motion seeks entry of

2    an order from the Court, provisionally staying an execution

3    against the Debtor's assets and to apply the automatic stay

4    under Section 362 of the Bankruptcy Code.

5         In effect, Your Honor, the Petitioners are seeking

6    interim relief, similar to any first-day hearing in the

7    Bankruptcy Court.  But here, we are seeking to effectuate the

8    preservation of the Debtor's U.S. assets by the stay, and

9    we're doing it until such time as the Court rules on the

10   verified petition for recognition, which, as we've been

11   discussing, will be in just a few short weeks.

12        In broad terms, Your Honor, the reason for the

13   Petitioners requesting this relief is because they believe

14   that, and they fear that there is a severe risk of dissipation

15   of the Debtor's U.S. assets based on the activities, in

16   particular, of the IRS.  The IRS is a purported contingent

17   creditor.  And I'd like to pause on that for a moment, because

18   the Debtor's assets are at risk here, despite the IRS's status

19   as a mere contingent creditor.

20        Essentially, the IRS is attempting to seize the

21   Debtor's assets on a theory that has not been proven by any

22   court.  It's an alter-ego or nominee theory regarding the

23   status of this Debtor.  And they're also attempting to collect

24   on a tax liability through that theory.  And that tax

25   liability, itself, has not been determined by any court.

1    And so we're here today because the Debtor does not

2    want its assets seized without any due process.  And they

3    don't want the assets seized in a manner that would limit the

4    Debtor's ability to distribute the Debtor's assets to

5    stakeholders through a valid bankruptcy proceeding commenced

6    pursuant to cross-border insolvency law.

7         And preventing asset dissipation is particularly

8    important here in the context of this Chapter 15 case because

9    the Bermuda liquidation proceeding already has a stay in place

10   as to the institution of lawsuits against the Debtor, and

11   there was a separate provision of the Bermuda liquidation law

12   that voids all acts to seize the Debtor's property.

13        This is discussed in the Zuill declaration.  An

14   international commodity, a core principal of Chapter 15

15   dictates that this Court should assist in giving effect to the

16   Bermuda statutory provisions to protect the rights of the

17   Debtor's stakeholders globally.

18        And while these are kind of the big-picture concepts

19   that underlie this Chapter 15 case and the reason we're here

20   today, it's important to note that there is a clear and

21   express statutory path for the Court to apply the stay on a

22   provisional basis here.  And that's Section 1519(a) of the

23   Bankruptcy Code.

24        And under Section 1519(a), relief is available when

25   there is -- "relief is urgently needed to protect the assets

1    of the debtor or the interests of the creditors."   And some

2    courts have held that under Section 1519(e), the standard to

3    apply here is equivalent to the standard on an injunction.

4    And so, I'd like to present on the four factors that courts

5    consider for injunctions, which we believe the Petitioners

6    clearly meet.

7          And those four factors are the likelihood of success

8    on the merits; irreparable harm; a balance of the equities and

9    public policy considerations, of course.  And so, before I

10   present on these four factors, I want to note that I also

11   intend to address certain tax-related arguments that was

12   raised by the IRS in their opposition to the motion to shorten

13   time.  But I -- I hope to do that after I present, first, on

14   these four factors.

15         First, likelihood of success on the merits.  Here,

16   as we outlined in our papers, and in the verified petition,

17   itself, there is a significant likelihood that the Debtor's

18   Bermuda proceeding will be recognized.  Recognition is a

19   straightforward process.  Indeed, it's been characterized as

20   formulaic.

21         And under Section 1517 of the Bankruptcy Code, it

22   only requires that there be a foreign proceeding, that the

23   petition for recognition was filed by a foreign

24   representative, and that the petition satisfies the procedural

25   requirements of Section 1515 of the Bankruptcy Code.  And

 1   here, all of these requirements have been met, as set forth in

 2   the verified petition, but, of course, to rule today, Your

 3   Honor doesn't even need to find that.  You just need to find

 4   that there would be a high likelihood of success.

 5         Briefly, Your Honor, with respect to this being a

 6   foreign proceeding and a foreign name proceeding, this is

 7   clearly supported by the Zuill declaration, including at

 8   paragraphs 21, 22 and 26, and it's also supported -- the fact

 9   that this is a foreign name proceeding is supported by the

10   verified petition at paragraph 56, which describes many of the

11   factors which clearly indicates that this Debtor's center of

12   main interest is in Bermuda.

13         The second factor for -- or formulaic element

14   required for recognition is that it be -- the petition be

15   filed by the Joint Provisional Liquidators.  Here, those

16   liquidators are fiduciaries.  They are, in fact, foreign

17   representatives.  And not only that, but the winding-up order,

18   itself, which was attached to the petition as Exhibit 1,

19   expressly provides that the foreign representatives may seek

20   recognition in foreign countries, including in the United

21   States.  So, clearly, that element is met or will be met.

22         And, then, finally, all of the requirements of

23   Section 1515 are met, as detailed in the verified petition, at

24   paragraphs 61 through 63, and so we believe there is a very

25   high likelihood of success that recognition will be granted

1   here.

2            Next, irreparable harm, and I think this is where

3   the IRS, at least, has indicated it disagrees, but I will

4   explain why, frankly, they're wrong, and there is such

5   dramatic and, frankly, Draconian impact to the Debtor if

6   relief is not provisionally granted today.

7            So, in their opposition, the IRS appears to be

8   arguing that there will be no immediate harm to the Debtor

9   from their activities.  But that's refuted by the evidence

10  before Your Honor which are the tax levies, themselves.  And

11  so those levies are attached as Exhibit 4 to my declaration,

12  and they were submitted in connection with this hearing at

13  Docket Number 5.

14           These levies were served on entities or individuals

15  affiliated with certain of the Debtor's investments.  And let

16  me just read from these levies, as well as certain of the

17  Internal Revenue Code sections that are cited in the levies.

18  And so, again, this is Exhibit 4 to the Lavine declaration.

19  And on the first page of the first levy, in bold font, the

20  levy reads "this isn't a bill for taxes you owe.  This is a

21  notice of levy we are using to collect money owed by the

22  taxpayer named above."

23           And here, they name as the taxpayer, Point

24  Investment, Limited, as alleged alter-ego and nominee.  Then,

25  on the next page, the levy quotes from certain sections of the

1   Internal Revenue Code.  There is Section 6332.  It's titled,

2   "surrender of property subject to levy", and it provides -- I

3   have to squint -- "except as otherwise provided in this

4   section, any person in possession or obligated with respect to

5   property or rights, to property subject to levy upon which a

6   levy has been made, shall -- they shall, upon demand of the

7   Secretary, surrender such property or rights or discharge some

8   obligations to the Secretary."

9           And so what this says is, is effectively, a

10  surrender order.  But what -- and so what is the enforcement

11  mechanism to insure that the IRS collects on this levy?

12  That's further down the page.  It's in Section 6332(d).  It's

13  titled "enforcement of levy".  And it provides -- and I'm

14  quoting -- "any person who fails or refuses to surrender any

15  property or rights to property, subject to levy, upon demand

16  by the Secretary, shall be liable in his own person and estate

17  to the United States in a sum equal to the value of the

18  property or rights not so surrendered."

19          So circling back, not only do these levies require

20  the surrender of property, but they actually provide personal

21  liability to anyone who fails to comply.  These are quite

22  Draconian remedies.  And what's worse is that the Joint

23  Provisional Liquidators sitting here today have already

24  attached as exhibits the levies that they've become aware of.

25          And it appears, you know, based on, you know, the

1   IRS's opposition to the relief requested today, it seems that

2   the IRS may be intent on serving more of these.  That can't

3   happen if the assets of the Debtor are to be protected for the

4   benefit of all creditors and other stakeholders.

5          So, now, in its opposition papers, the Government,

6   quite amazingly, they argue that levying on special property,

7   which includes, you know, multiple interests in funds that the

8   Debtor is invested through, through limited partnerships, they

9   claim that this is not a real threat to the Debtor's ongoing

10  business.

11         But stated in the verified petition, the Debtor

12  exists as an investment vehicle.  And threatening to unwind

13  significant investments and limited partnership interests as

14  part of what would essentially become a fire sale process if

15  the IRS gets their hands on these interests, that clearly will

16  cause irreparable harm to the Debtor.

17         And the fact that the Debtor is in liquidation does

18  not mean that it is liquidating substantial investments at

19  fire sale prices.  And the Government, you know, does not

20  point to anything to substantiate its statement that there

21  won't be harm to the Debtor.

22         THE COURT:  Well, excuse me, Mr. Lavine, is the

23  Debtor still operating as an investment vehicle?

24         MR. LAVINE:  It -- it has.  It is -- it is in

25  liquidation, so yes, it has an order to liquidate.  However,

1    just like in a Chapter 11 or Chapter 7 case, they still have

2    an obligation, the Joint Provisional Liquidators, to maximize

3    the value for stakeholders.

4           And, clearly, value maximizing -- what would not be

5    value maximizing is the IRS seizing interests in investments

6    and holding it until the tax court case in Texas resolves

7    itself over a period of many years.  And that's --

8           THE COURT:  What is -- and I'm sorry, this is a

9    little bit of a side issue, but what is the status of the

10   Texas litigation?

11          MR. LAVINE:  Sure.  I'm happy to report on that, but

12   before I do, I just want to reiterate --

13          THE COURT:  Yes, just at some point.

14          MR. LAVINE:  -- that -- sure.  I'd like to reiterate

15   that on a provisional basis, we're not seeking a stay of any

16   litigation in any other court.  We are seeking -- at least

17   we're not -- let me rephrase.  None of the existing tax cases

18   of which we are aware, we're not seeking to stay on a

19   provisional basis.  And there are -- there are two tax court

20   cases of which I am aware.

21          The first is Mr. Brockman, and we are not -- we, the

22   Debtor, are not a party to any of those proceedings, any of

23   the proceedings we've now described.  But the first tax court

24   case is Mr. Brockman, who has challenged the IRS's assessment

25   of an underlying liability here.

1          Separately, there is what's called the jeopardy

2     assessment case, where, again, Mr. Brockman has challenged,

3     essentially, the IRS from invoking the federal tax procedure

4     known as the jeopardy assessment, which, as a matter of, you

5     know, federal tax law allows the IRS to basically skip ahead

6     in its tax court case, which I understand it could take many

7     years, and start grabbing assets.

8          And it grabs assets under the theory that the tax

9     payer is at risk of flight or is at risk of dissipation of

10    assets.  Well, Mr. Brockman disputes that there is any such

11    risk.  I think, importantly for our case, and -- and Chapter

12    15, generally, the Debtor is not currently seeking -- and is

13    certainly on a provisional basis -- to repatriate any assets

14    outside of the United States.

15         So, certainly from -- from our perspective, we don't

16    see the rush in the IRS attempting to grab assets today or in

17    the next three weeks until the recognition hearing is held.

18    Frankly, Your Honor, you know -- and with all due respect to

19    the Government, I think the Government can afford -- the U.S.

20    Treasury can afford to wait three weeks before it tries to

21    seize cash or other assets.

22         I hope that answered your question.  I'll also --

23    you know, in the interest of full disclosure, and we talked

24    about this in our papers, there is separately the criminal

25    court case against Mr. Brockman, of which the Debtor is not

1   charged.  And then, there is a separate, what's known as a

2   civil asset forfeiture case.  The civil asset forfeiture case

3   is in the nature of an in rem proceeding.  So I don't think,

4   actually, Mr. Brockman or the Debtor is named as a defendant.

5   Instead, there is specific property that's named.

6           And, again, we're not seeking to stay either of

7   those proceedings.

8           THE COURT:  Okay.  Thank you.

9           MR. LAVINE:  So, just finishing off the factors, you

10  know, clearly we believe that the balance of the equities

11  favors imposing a provisional stay, which will simply preserve

12  the status quo.  It will insure that the value of the Debtor's

13  assets are preserved for the benefit of all interested

14  parties.  And I mentioned, you know, the severe consequences,

15  obviously, to the Debtor, but also, the lack of consequences

16  to the IRS insofar as we're not seeking to repatriate assets

17  on a provisional basis.

18          And then, finally, there is the public interest.

19  And the public interest also clearly favors a provisional

20  stay.  The goal of Chapter 15 is to promote commonty and

21  cooperation as embodied in the UNCITRAL Model Law on

22  Cross-Border Insolvency, upon which Chapter 15 is based.

23  And, here, those goals are best served by granting the

24  Petitioners the provisional relief sought in the stay motion.

25          The Bankruptcy Court's imposition of a stay pending

AP0312

1    recognition, it also furthers the goal of the Bermuda

2    proceeding, and it allows for the appropriate cooperation and

3    deference to that foreign name proceeding.  And what I mean by

4    that specifically is that a provisional stay here will help to

5    effectuate the statutory stay of collection already in place

6    in Bermuda, which we fear that creditors, frankly, will not

7    abide by because they don't believe that Bermuda law applies

8    to them.

9           So, finally, Your Honor, unless Your Honor has

10   questions on the balance of the factors, the four factors, I'm

11   happy to address the Government's -- I'll call them the tax-

12   related arguments.

13          THE COURT:  Oh, yes, please, thank you.

14          MR. LAVINE:  So first, Your Honor, I think it's

15   important to note that nowhere does the IRS contend that the

16   automatic stay doesn't apply upon recognition of a foreign

17   proceeding.  And they can't argue this, because case law and

18   the IRS's own manual is clear that the automatic stay applies

19   to the IRS when it's seeking to enforce a civil tax liability

20   or collect on a civil tax liability.

21          So because the IRS can't argue that the automatic

22   stay won't apply upon recognition, they appear to be arguing

23   that, well, the stay just shouldn't apply now.  It shouldn't

24   apply now under Section 1519 on a provisional basis.  And it

25   says it shouldn't apply because of the Tax Injunction Act,

1    right?  So stated simply, it can't be the case for both

2    doctrinal and policy reasons that the Tax Injunction Act

3    prohibits Your Honor from ordering the provisional relief

4    today.

5           So, first, let's start with policy reasons.  As a

6    matter of policy, the IRS, alone, should not have free reign

7    to seize Debtor assets within the 21 days before a hearing on

8    a recognition.  Were that to be the case, you know, the right

9    to request a stay of execution would be heavily undermined.

10   And in every case in which a provisional stay is requested and

11   granted, which happens often, in every one future Chapter 15

12   case, there would somehow need to be an exception for the IRS,

13   because that's what the IRS is arguing here that the automatic

14   stay can't apply provisionally to it.

15          And so since, again, the automatic stay often gets

16   applied provisionally, essentially, the IRS is arguing for an

17   exception specific to it.  We think it would be inconsistent

18   with Chapter 15 for the IRS to have a more favored position

19   than any other creditor globally.  The purpose of Chapter 15,

20   according to Congress, is to protect the interests of all

21   creditors and other interested entities.  That's at Section

22   1501(a) of the Bankruptcy Code, the very first provision of

23   Chapter 15.

24          So that's the policy arguments.  Now, let's talk

25   about the doctrinal arguments.  What we're asking for is

1    consistent with the powers of the Bankruptcy Court to preserve

2    the status quo pending recognition.  This does not implicate

3    or violate the Tax Injunction Act.  And the cases cited by the

4    Government are not analogous to the situation we face here.

5         The Petitioners have not filed any suit.  That's

6    what's that key word in the Tax Injunction Act, a suit, to

7    seek an injunction for the purpose of restraining IRS

8    collection activity.  Rather, we seek a stay consistent with

9    the powers of the Bankruptcy Court in any bankruptcy

10   proceeding to prevent execution on any of the Debtor's U.S.

11   assets.

12        And we also seek this case for other reasons.  We

13   seek this case to obtain discovery of the Debtor's U.S. assets

14   from interested parties.  And we seek this case to administer

15   the Debtor's U.S. assets, as I alluded to before.

16        I also want to point, Your Honor, to a particular

17   provision of the Tax Injunction Act, which is 26 U.S.C.

18   7426(b)(1).  This provision is part of the Tax Injunction Act.

19   It's an exception to it.  And what it says is that it is not a

20   violation of the Tax Injunction Act for a party to commence a

21   wrongful levy action.

22        And moreover, in a wrongful levy action, a party who

23   thinks its assets are wrongfully levied may seek an

24   injunction.  We think this is an analogous provision to what

25   we're trying to accomplish here.  And we think the Debtor

1    meets the three requirements for a wrongful levy action even

2    under the Tax Injunction Act.

3          One, this is an action by a party other than the

4    taxpayer who owes the taxes, because here the party who we

5    believe owes the taxes is Mr. Brockman.  Two, the third party

6    -- that's us -- we have an interest in the levied property.

7    And three, the IRS has issued a levy.

8          So, essentially, the Debtor is expressly permitted

9    by statute to bring a wrongful levy action in another court.

10   And the same argument and idea behind this exception to the

11   Tax Injunction Act should operate within this Chapter 15 case

12   for all of the reasons we've previously been discussing.

13         Unless Your Honor has any other questions, I think

14   I've addressed each of the items that I intended to address

15   today, and for all of the reasons discussed, we do believe

16   it's critical to this Debtor to obtain the provisional stay.

17         THE COURT:  Bear with me just one second, Mr.

18   Lavine.  I'd like you to comment on the IRS's position that

19   they could levy and then hold the funds for the benefit of

20   creditors.

21         MR. LAVINE:  Sure.  It's important to talk about

22   what they're trying to seek to levy, then, the IRS.  First

23   off, we don't quite know because if you just read the face of

24   the levy -- and this is why we call it a purported levy.

25   We're not trying to be cute.  We literally are not clear, nor

1    do we think the levy, on its face, is clear about what it's

2    attempt -- what the IRS is attempting to levy.

3            But they do list a number of Cayman-based funds.

4    The Cayman-based funds are investment vehicles themselves,

5    right, or they're interests in limited partnerships. So it's

6    not like the IRS is merely trying to seek cash that the Debtor

7    can get back in the future. The IRS is trying to attach

8    actual partnership interests in other funds.

9            And as I understand it, the -- it can be completely

10   destructive to those interests -- those limited partnership

11   interests if they come into the hands of a party other than

12   the holder. And moreover, the Debtor, through its liquidation

13   proceedings in Bermuda, has every interest in the world of

14   liquidating those assets on the timeline that would maximize

15   value for all stakeholders.

16           And so this idea that those assets ought to just sit

17   with the IRS until the tax court case concludes, which may

18   take many years, is completely untenable and would potentially

19   be value-destructive.

20           THE COURT: Could you, please, address the

21   Government's argument with respect to sovereign immunity?

22           MR. LAVINE: Sure. Well, I think this one is

23   actually easy, because I think the Government's argument

24   regarding sovereign immunity contravenes Supreme Court

25   precedent. United States vs. Galletti, 541 U.S. 114, footnote

1    five.  It explicitly noted that -- and I'm going to quote from

2    this case -- it explicitly noted that "when Respondents filed

3    for bankruptcy, an automatic stay barred the Government from

4    bringing suit outside the Bankruptcy Court to enforce

5    Respondent's secondary liability."

6            What I think the Court -- the Supreme Court is

7    getting at is that it is -- it is almost accepted by the IRS

8    under every circumstance that sovereign immunity does not

9    apply in the context of a bankruptcy automatic stay.  And

10   that's precisely the relief that we're seeking here.

11           THE COURT:  And one more question before I let you

12   go.  Do you have any precedent or cases holding that the Tax

13   Anti-Injunction Act takes precedent over Section 1519?

14           MR. LAVINE:  Your Honor, I'm not aware of any, and I

15   think, frankly, what Your Honor ought to do is read 1519 on

16   its face.  And on its face, it's certainly clear about what

17   relief and under what conditions the Debtor is entitled to in

18   a Chapter 15 case, as compared to the lack of case law saying

19   otherwise, and also the Anti-Injunction Act, which obviously

20   is silent as to what happens in a Chapter 15 case.

21           And so here, I think the answer is clear.  I would

22   note, however, that -- as I have before, and we noted in the

23   papers, that provisional stays in Chapter 15s have become

24   quite common.  I'm not aware of the IRS ever coming into a

25   Chapter 15 case and saying that bankruptcy courts around the

1    country have been violating another federal statute.  I'm not

2    aware of the U.S. Trustee's Office ever taking that position.

3           I think what has happened here is that the IRS is

4    very keen to progress their interests against Mr. Brockman.

5    And, again, the Joint Provisional Liquidators are independent

6    fiduciaries appointed by a foreign bankruptcy court who do not

7    take direction from Mr. Brockman.  And despite the IRS's

8    contention that -- or their implication that everybody here is

9    related, they're clearly not.  And it cannot be the case that

10   the Debtor is not afforded appropriate due process or that the

11   Bankruptcy Code should bow to another act of the federal law,

12   which clearly is not as directly applicable as 1519, so --

13          THE COURT:  Thank you.  Is -- does the IRS want to

14   be heard or the United States, excuse me?

15          MR. BENSON:  Yes, Your Honor, this is Ward Benson

16   from the Department of Justice Tax Division.  To begin with, I

17   have a little trouble responding to much of what was said,

18   which is the basis of our opposition to the motion to shorten

19   notice.  I found out about this case just over 24 hours ago,

20   and we are -- you know, we had tried to get prepared, but it's

21   really quite prejudicial.  The IRS do have to mount a defense

22   to everything that was just said on such short notice.

23          But to the extent we have to, this is where I'll go.

24   I think it's -- one of the most interesting things that was

25   just said was the response to your question about hiring of an

1    outside noticing company.  In my experience, it's quite

2    unusual that a Delaware bankruptcy case does not have an

3    outside claims agent and noticing company.  And I think that

4    just speaks to what's the real nature of this dispute.

5           The Debtor is just one of any number of entities

6    that Mr. Brockman has hid behind to commit what appears to be

7    the largest individual tax evasion case in history.  That's

8    why they don't need to hire Epiq or anyone to serve as claims

9    agent or a noticing agent.  Simply put, Mr. Brockman has not

10   and the Debtor have not been denied due process.  Yes, the IRS

11   has many powers to collect.  Everything that was mentioned,

12   however Draconian it seems, comes from the Internal Revenue

13   Code.  It's not just something an IRS agent made up.

14          I would note that those Draconian notices are being

15   sent, as I understand it, to a series of funds, all of which

16   are controlled by a cooperating witness, that's a witness

17   cooperating with the United States, who I understand is also

18   cooperating with levy activity.  So the idea that regular

19   individuals are going to be put in grave jeopardy because of

20   what the IRS is doing, that's not the case.

21          Most importantly, one of those Texas actions is a

22   suit brought by Mr. Brockman to challenge the jeopardy

23   assessments.  My understanding is that dispute brought by Mr.

24   Brockman has been fully argued, briefed, and what's

25   essentially happening is, Mr. Brockman has not gotten the

AP0320

1    relief he wanted fast enough.  The court in Texas is not

2    giving him the decisions he wanted in the timeframe he wanted,

3    so he has created this proceeding in order to get another shot

4    at a hearing.  So I think that's sort of the broader context.

5            And regardless of what has been said about not

6    repatriating assets, that is one of the biggest fears here.

7    For all the talk about the importance of commonty, the

8    motivation for having all of these entities offshore is that

9    they are jurisdictions that will not necessarily -- well,

10   probably not, by their own law, enforce U.S. tax judgments.

11           And so, all of this is about trying to get money

12   either offshore or as close to offshore as possible so that if

13   any of these cases that Mr. Brockman has brought or we have

14   brought against him don't go in his favor, he, at least, will

15   be able to keep that money abroad and away from the tax

16   collector.

17           I cannot speak to the -- the likelihood of success

18   on the merits, not having had a chance to review the papers or

19   any of the law.  I can say that -- well, what I just said

20   really speaks to the relative balance of the harms.  Mr.

21   Brockman is an extremely wealthy individual, so he is not

22   going to be harmed.  I don't know who else would be, because

23   if there's nobody to notice in this proceeding, I don't know

24   whoever else will be harmed by a delay of assets being

25   liquidated in Bermuda.

1        For the reasons I've just said, the United States

2   would suffer great harm if any money is either brought

3   offshore or is put in some other onshore entity that we are

4   not aware of or it gets past the number of entities, so that

5   we cannot eventually trace it.

6        I am not prepared to talk about what potential

7   assets could be levied on and how much they would be

8   diminished in value if held by the IRS versus someone in

9   Bermuda. My guess is that we're talking about intangible

10  property.  We're not, you know -- 1519 talks about the

11  turnover of assets that, by their nature, are perishable or

12  subject to devaluation.

13       Limited partnership interests don't perish.

14  Whatever legal implications would happen, I just don't

15  understand the concern.  And then in terms of the public

16  interest, there is Third Circuit case law.  I'm not prepared

17  to cite names off the top of my head, but I know there is case

18  law talking about how when a fellow government or a state is a

19  party, the public interest and the -- onto the governmental

20  interests merge.  And regardless, the enforcement of taxes is

21  in the public interest.

22       I'll touch on the Tax Anti-Injunction Act.  As I --

23  as I said in our brief, I was not able to find a case on the

24  Anti-Injunction Act versus 1519, but it strikes me that there

25  is any number of cases regarding Section 105.  And contrary to

1    what Mr. Lavine said, suit in 7421 is not a District Court

2    lawsuit.  It refers to any proceeding -- basically, any

3    request for relief.

4         And there is plenty of Circuit Court cases finding

5    it applicable to, for example, plan confirmation orders or

6    motions to enforce plan confirmation orders.  So this is

7    exactly the kind of relief that it has been found to be barred

8    by the Anti-Injunction Act under -- in cases under other

9    chapters.

10        In terms of the idea that this is a wrongful levy

11   proceeding, a wrongful levy proceeding is a specific type of

12   proceeding provided for by the Internal Revenue Code.  I am

13   not prepared to give you the exact cites, but I am very

14   confident that if you follow Title 28, a wrongful levy action

15   is something that a Federal District Court would have

16   exclusive jurisdiction over, and it would not -- a Federal

17   Bankruptcy Court would not have jurisdiction over, so however

18   potentially analogous, I don't think that works out

19   jurisdictionally.

20        And then, as for the sovereign immunity argument,

21   Mr. Lavine essentially started with policy argument.  And that

22   -- you know, this is a statutory thing.  The Supreme Court and

23   the Superior Courts have been clear that sovereign immunity

24   waivers have to be expressed; they can't be implied.  And even

25   if there is any ambiguity, the line is that the ties go to the

1    Government.  And so, I recognize that everyone agrees that the

2    U.S. -- the IRS is bound by 362, but that's because 106

3    expressly says that 362 -- that there's a waiver of sovereign

4    immunity as to 362.  It doesn't say that as to anything in 15,

5    so I just don't see how policy can override the doctrine that

6    sovereign immunity waivers are strictly construed.

7         And so unless Your Honor has any other questions, I

8    just -- I guess, I again, rest, and we would like more time to

9    respond, but if not, that is our position on the actual

10   substantive motion for a provisional stay.

11        THE COURT:  Let me ask you, in your pleading, you

12   cited to <u>Becker</u>, and I'm just -- I'm a little confused,

13   because wasn't that case decided under the Bankruptcy Act and

14   not the Bankruptcy Code, and doesn't that make a difference?

15        MR. BENSON:  I cited <u>Becker</u> because that is the only

16   Third Circuit case that I know of.  There are -- if Your Honor

17   would give me a minute, I can come up with other cases.

18        THE COURT:  Well, let me ask you this, are you

19   familiar -- and I'll just ask you the same question that I

20   asked Mr. Lavine -- are you familiar with any cases

21   interpreting the TAIA in respect to Chapter 15?

22        MR. BENSON:  I had looked last night, and, again,

23   Your Honor, if you'd like, there are a number of bankruptcy,

24   post-1978 decisions, Circuit Court decisions, not on the Third

25   Circuit, saying that 7124 trumps 105.  But I, in the 24 hours

1    I had, I could not find anything on this specific issue.

2              THE COURT:  Okay.  I think that you've answered my

3    question.  Mr. Fox, did you want to be heard?

4              MR. FOX:  Yes, Your Honor, can you hear me all

5    right?

6              THE COURT:  I can.  Good afternoon.

7              MR. FOX:  Good afternoon.  May it please the Court,

8    Timothy Fox, on behalf of the United States Trustee.  I just

9    wanted to rise, virtually, to indicate that the U.S. Trustee

10   did not have any objections with regard to the specific

11   language in the forms of order, but wanted to highlight that

12   the circumstances of this Chapter 15 case are very unusual as

13   compared to the number of cases that we see in this District,

14   and that the foreign representatives bear the burden, here, of

15   establishing that relief is appropriate.  And should Your

16   Honor find that they have not met that burden, then relief

17   should not be granted for purposes of today's provisional

18   hearing.

19             THE COURT:  Thank you, Mr. Fox.

20             Mr. Lavine, does the Debtor want to be -- does the

21   Debtor have any further comment, any rebuttal?

22             MR. LAVINE:  Yes, Your Honor, just a few quick

23   points.  First, I -- I didn't quite understand the argument

24   related to the noticing agent.  I think the implication was

25   somehow that this is not a real case or not a real Debtor

1    because we don't have a significant amount of creditors.  We

2    can look at the schedules.  But in any event, it doesn't

3    matter.

4                THE COURT:  Well --

5                MR. LAVINE:  There are many cases in -- in --

6                THE COURT:  But -- I'm sorry -- but, and I apologize

7    for interrupting you, but didn't you state to me that there

8    are, approximately, 50 creditors?  Are there less than 200?

9                MR. LAVINE:  Yes, Your Honor, there are -- there are

10   less than 200.  That's what I --

11               THE COURT:  So and that -- well, the 200 creditors

12   is what triggers Local Rule 2002 with respect to having a

13   claims agent.

14               MR. LAVINE:  Correct.  And where I was going with

15   this, Your Honor knows, not every case uses a claims and

16   noticing agent, and many cases do not.  And, here, we're --

17   we're being very forthright with the Court and in our papers

18   that this Debtor is an investment vehicle.  It would not be

19   uncommon for an investment vehicle to not have more than --

20   you know, to have more than 200 creditors.

21                    That would be -- that would be unique for an

22   investment vehicle to have that.  But just because this is an

23   investment vehicle does not mean that the provisions of the

24   Bankruptcy Code do not apply to it, nor does it mean that the

25   Bermuda Court and a Bermuda judge and these Joint Provisional

1    Liquidators are not entitled to commonty and to, you know,

2    international cooperation, as provided by statute in Chapter

3    15.

4            A quick note on Section 105.  As the Court is aware,

5    Section 105 is -- in and of itself, doesn't provide any

6    specific relief or provision.  And in that sense, it is

7    completely different than Section 1519.  In fact, I know that

8    there is Supreme Court precedent which has said that some --

9    that at times, Section 105 cannot be invoked without reference

10   to another provision of the Bankruptcy Code, and, here, we

11   have another provision of the Bankruptcy Code, and nor are we

12   even seeking relief under 105.

13           And, finally, with regard to sovereign immunity,

14   what I think I -- we eventually heard from counsel for the IRS

15   is that there is no sovereign immunity issue once Section 362

16   applies.  That is what we're asking for here.  We're asking

17   for, pursuant to Section 1519(a)(7), for the Court to apply

18   Section 362.

19           And if that were to occur, then there would be no

20   issue to sovereign immunity.  Your Honor, that's -- that's all

21   I have for today.

22           THE COURT:  Okay.

23           MR. LAVINE:  Thank you very much again for the

24   hearing.

25           THE COURT:  You're welcome.  Does anyone else wish

1  to be heard?  Okay.  I'm going to take a brief recess.  I

2  would like to take until 3:00 p.m.  Is everyone available to

3  return at 3:00 p.m. on the same Zoom?

4           MR. LAVINE:  Yes, Your Honor.

5           MR. BENSON:  Yes, Your Honor.

6           MR. FOX:  Yes, Your Honor.

7           THE COURT:  Okay.  Before we break, Mr. Fox made a

8  comment that he had provided comment on the proposed form of

9  order.  And I just -- I wanted clarity with respect to, are

10 those revisions on the record for other people to see at this

11 point?

12          Were those -- I guess my question, more directly is,

13 were those modifications made before the proposed form of

14 order was filed with the Court?

15          MR. LAVINE:  My understanding, from Mr. Fox, is that

16 what he was referencing was the same thing I was referencing

17 in that we will be adding additional parties in interest as

18 noted.

19          THE COURT:  Okay.  All right.

20          MR. LAVINE:  But, Mr. Fox, please feel free to

21 correct me.

22          MR. FOX:  Your Honor, may it please the Court, Tim

23 Fox on behalf of the United States Trustee.  The foreign

24 representatives's counsel's comments are accurate.  There were

25 not any additional changes to the forms of order.  They were

1    in a form that was filed that the U.S. Trustee did not object

2    to.

3            So, outside of the noticed-party list item that has

4    been discussed, there is not any further changes on account of

5    my informal comments.

6            THE COURT:  Okay.  I am going to take a brief

7    recess.  We'll reconvene at 3:00 p.m., and I will rule on the

8    motion to shorten and the motion for provisional relief.

9    Excuse me.  Okay?

10           MR. LAVINE:  Thank you, Your Honor.

11           THE COURT:  We stand adjourned.  Thank you.

12           (Recess, 2:16 p.m. to 3:04 p.m.)

13           THE COURT:  Good afternoon, this is Judge Stickles.

14   We are back on the record in the matter of Point Investment,

15   Limited, Case No. 22-10261.  First of all, I would like to

16   thank counsel for their very thoughtful and helpful arguments

17   this afternoon.

18           In reviewing my notes, I did have one question that

19   I'd like to raise, and that is, post-petition, by virtue of

20   the appointment of the independent provisional liquidators,

21   Mr. Brockman has no ability to access the Debtor's assets, is

22   that correct?

23           MR. LAVINE:  Your Honor, that's correct.

24           THE COURT:  Okay.

25           Let me first rule on -- and I just want to make sure

1    that counsel for the United States was on this afternoon, when

2    we reconvened?  There's Mr. Benson.  Okay.  I just --

3            MR. BENSON:  Yes, Your Honor.

4            THE COURT:  You don't have to turn your camera on.

5    I just wanted to make sure that I didn't start without you.

6            So, yesterday, the Court entered an order shortening

7    notice with respect to Petitioner's motion for provisional

8    relief.  And after that order was entered, the United States

9    filed an opposition to the motion, which also contained a

10   request to vacate or reconsider the order.  The United States'

11   request is denied.

12           Local Rule 9013-1(m) applies to Chapter 15 cases.

13   And that rule addresses motions filed with the Petition in a

14   Chapter 15 case and states that "requests for relief under

15   Local Rule 9013-1 shall be confined to matters of a genuinely

16   emergent nature required to preserve the assets of the estate

17   and to maintain ongoing business operations and such other

18   matters as the Court may determine appropriate."

19           The Court found that the motion specified

20   emergencies justifying and showed cause for shortening the

21   notice, and therefore, entered the order yesterday.  The

22   Debtor's need to prevent distribution of its assets to a

23   creditor is an emergency justifying relief because premature

24   distribution of Debtor's assets could negate the Bermuda

25   insolvency proceeding.

Ruling by the Court                                           44

1        The fact that the Debtor is liquidating does not

2   lessen the harm of seizure of the Debtor's assets because the

3   Debtor will need to distribute those funds to its creditors at

4   the direction of the Court in Bermuda.

5        Additionally, under Local Rule 9013-1(m)(iv), any

6   party in interest may file a motion to reconsider a

7   provisional relief motion within 28 days of the entry of the

8   order.  With respect to the provisional relief motion, the

9   Petitioner's motion for provisional relief implicates complex

10  issues that require additional research and pleading.

11       Are the parties agreeable to maintaining the status

12  quo pending briefing on the issues raised by the United States

13  Trustee, namely sovereign immunity and an application of TAIA?

14       MR. BENSON:  Your Honor, I hope this answers your

15  question.  My understanding, based on very brief discussions,

16  is that first, all that is being levied by the IRS is

17  distributions from private equity companies, cash

18  distributions as they become owed, so it's not a limited

19  partnership interest.  We're not attempting to actually

20  foreclose.

21       Am I -- a more direct answer to your question, Your

22  Honor, my understanding is, this, the equity, under an

23  agreement with the IRS is holding the cash distributions

24  subject to a levy for 45 days.  I'm not sure if it's 45 days

25  from the Levy being served or whatever.  But it is my

1   understanding that the money is just sitting with Vista,

2   subject to our levies.  And I don't have settlement authority,

3   but I can just say that as long as money sits with Vista, I

4   assume we okay with it.

5          I can't make that concession, but that is the lay of

6   the land.  And I assume that if the lay of the land stays the

7   way that is, DOJ would not be -- would not strenuously object.

8          THE COURT:  Well --

9          MR. LAVINE:  Your Honor --

10         THE COURT:  Yes?

11         MR. LAVINE:  So I don't think we heard a commitment

12   by the IRS that they will not serve additional liens and

13   levies, and that's something that we would certainly want.

14   And it sounded like that's what you were suggesting, as well,

15   Your Honor.

16         Further, to the extent the IRS's position, which is

17   --  this is the first we're really hearing it is that the only

18   thing that they have levied is cash held by Vista for the

19   benefit of Point, then I don't -- I don't understand the

20   sovereign immunity point, because can't the stay apply as to

21   Vista which has no sovereign immunity protections and prevent

22   Vista from making any distribution?

23         MR. BENSON:  My thought is the relief wasn't sought

24   against Vista.

25         MR. LAVINE:  Well, it was sought against all parties

1    that seek to impact the Debtor's property, which is as defined

2    in 7362.

3           THE COURT:  I understand, Mr. Benson, that we are

4    putting you on the spot.  And let me just say what I would

5    like is simultaneous briefing on the issues raised by April 14

6    and continue the provisional hearing until April 22 at 1:00

7    p.m.

8           And for the reasons I will explain, I will enter an

9    order granting provisional relief and maintaining the status

10   quo, but I would urge the parties to communicate.  And perhaps

11   it's one of these issues where there is room for negotiation

12   for a consentual form of order.  But under Section 1519(a) of

13   the Bankruptcy Code, the Court may enter provisional relief

14   prior to ruling on the Chapter 15 petition, where the relief

15   is urgently needed to protect the assets of the Debtor or the

16   interest of creditors.

17          Section 1519(a)(1) expressly permits the Court to

18   grant a stay of execution.  Section 1521(a)(7) permits the

19   Court to grant any relief that may be available to a Trustee,

20   subject to certain exceptions not relevant here.

21          I find the Petitioners have met their burden.

22   Petitioners, under Chapter 15, are entitled to first-day

23   relief, if they meet the requirements of Local Rule 9013.  The

24   Government did not contest the Petitioners's evidence or

25   effectively refute the applications of Section 1519 and 1521

1    to this case.

2            The provisional relief is needed because without it,

3    assets that need to remain available for distribution in the

4    Bermuda proceeding will be seized.  International commodity

5    requires I grant the relief because, as detailed in the Zuill

6    declaration, Bermuda has imposed an automatic statutory stay

7    of actions, which is impossible to effectuate without granting

8    the relief requested.

9            In addition, there is a substantial likelihood that

10   Petitioners would succeed in obtaining recognition because the

11   verified complaint, the Zuill and Lavine declarations appear

12   to establish that the requirements of Section 1515 and 1517

13   are satisfied.  However, all parties' rights are reserved to

14   challenge the petition at the recognition hearing.

15           The balance of the equities weigh in favor of

16   granting the relief.  Granting the relief merely maintains the

17   status quo and avoids potential diminution of assets.

18   Granting the relief furthers public interest of international

19   commodity because the relief is necessary to effectuate the

20   automatic statutory stay put in place by the Bermudian

21   proceeding for the benefit of all creditors.

22           As noted, the issues of sovereign immunity and the

23   Tax Anti-Injunction Act have not been adequately briefed, and

24   we will revisit those issues following briefing.

25           Given the Court's preliminary finding that

Ruling by the Court                                      48

1    Petitioners are likely to succeed in the recognition, the

2    provision and relief requested, thus, only augments the timing

3    with which Section 362 is applied to this case.  Such relief

4    falls within the Court's authority under Section 1521(a)(7) of

5    the Bankruptcy Code.  This finding is consistent with the

6    approach routinely taken by courts in this District.

7              Further, there is no evidence that the relief sought

8    in the provisional relief motion is sought with the purpose of

9    restricting the collection of taxes, and instead, is aimed at

10   effectuating the Debtor's Bermudian insolvency proceeding.

11             Are there any questions with respect to the ruling?

12             MR. BENSON:  Yes, Your Honor.  First, he asked for

13   retroactive relief, and that didn't come up in the argument,

14   but we would oppose that as not permissible under any

15   provision of the Code, and under, I think it's the Supreme

16   Court, the <u>Acevedo</u> ruling.

17             THE COURT:  Well, the Supreme Court's case applied

18   to a statute of limitation/jurisdiction issue, as I recall.

19   I'm not sure that that's applicable, but let me ask this.  Has

20   the U.S. Government taken any action since the petition was

21   filed?

22             MR. BENSON:  My understanding is that levy notices

23   are being served daily on Vista, but all money is being

24   withheld for 45 days, so -- withheld by Vista -- so we would

25   ask that anything that have any -- I mean, we would oppose the

1   provisional relief, but any relief be prospective as of today

2   and not invalidate the effect of any notices of levy served, I

3   guess, in the last two days.

4           MR. LAVINE:  Your Honor, I think you had it exactly

5   right that courts in Delaware have interpreted the <u>Acevedo</u>'s

6   discussion of nunc pro tunc orders in a narrow way, applying

7   specifically to orders that implicate, you know,

8   jurisdictional issues.

9           I think, here, we still do not have clarity

10  regarding what precise levies have been issued.  We haven't

11  been receiving notice of them.  I think our request that this

12  relief be granted as effective as of the petition date stands.

13  You know, we don't, at this time, as I previously commuted to

14  the United States Trustee's Office, we don't intend to, you

15  know, seek sanctions for a wilful violation of the stay.  But,

16  you know, that is like a separate issue, you know, if and when

17  it arises.  But it's hard for me to withdraw this request

18  simply by counsel's statements here today when we don't have

19  the information to support it.

20          THE COURT:  Does the U.S. Trustee wish to be heard?

21          Let me just ask -- oh, Mr. Fox?

22          MR. FOX:  Apologies, Your Honor.  I was waiting for

23  the camera to activate, and it didn't come through quickly

24  enough.  May it please the Court, Tim Fox on behalf of the

25  United States Trustee.  As foreign representatives' counsel

1    identified, my office did inquire about whether or not there

2    would be additional remedies sought for violations of the stay

3    outside of just the seeking to deem any acts as null and void,

4    as discussed in the form of order.

5              I don't think the U.S. Trustee has a position on

6    this issue without the benefit of being able to brief it more

7    fully, but I understand, you know, both parties would like

8    Your Honor to rule on it one way or the other before we're

9    through the balance of today.

10             I can attempt to contact my client to see if I have

11   anything further to add on the issue, but, you know, I

12   understand that this is somewhat of a thorny issue in terms of

13   a number of other items that are regular features of our

14   bankruptcy court.

15             THE COURT:  Well, unfortunately, it's an issue that,

16   while brought up at the motion, was not addressed at argument

17   which makes it very difficult for the Court, and I am

18   absolutely unaware of any provisional order that has been

19   ordered -- entered nunc pro tunc, and it could have simply

20   been the timing of the hearings.

21             But for today's purposes, I am going to deny nunc

22   pro tunc relief, however, the Debtors can certainly file a

23   motion for to address any post-petition levies that are

24   issued.

25             MR. BENSON:  Your Honor, a second question about the

1   scope, because I don't have it right in front of me, but I

2   remember the scope of the original order was very broad,

3   whereas 1519(a) is rather narrow, and one of our concerns is,

4   does this provisional relief -- what provisional relief would

5   this -- what effect this provisional relief would have on, I

6   guess, at least, four other pending proceedings.

7           And so, we'd just ask that however it is worded, it

8   be limited to something along the lines of the staying of

9   execution against the Debtor's assets and nothing that would

10  go so far as to, potentially, stay any of the other litigation

11  pending.

12          THE COURT:  Well, I believe Mr. Lavine addressed

13  that in his pleading, did you not?

14          MR. LAVINE:  Yes, Your Honor.  We specifically

15  stated that we are not seeking to stay the pending

16  proceedings, however, it must be broader than just 15(a)(1) --

17  I'm sorry, 1519(a)(1).  1519(a)(1) is about a stay of

18  execution.  We also sought relief under 1519 -- and I'm

19  looking for the correct reference -- sorry, 1519(a)(3) which

20  refers back to 1521(a), and that is the provision pursuant to

21  which we are also seeking application of the automatic stay.

22          But it is correct that in seeking provisional relief

23  of the automatic stay, we are conceding on a provisional

24  basis, that we are not seeking to stay pending court cases.

25          THE COURT:  And I just want to clarify because I

1    want to be specific here.  I believe you are referring to

2    paragraph 15 of your motion where it indicates Petitioners do

3    not seek a provisional stay of any exercise of a police or

4    regulatory act, of a governmental unit against the Debtor or

5    the property of the Debtor nor do the Petitioners seek a

6    provisional stay of the criminal or civil court proceedings

7    involving Robert T. Brockman pending before the United States

8    Tax Court, the District Court for the Southern District of

9    Texas or the civil asset forfeiture proceeding pending in the

10   District Court for the District of Colorado, is that correct?

11            MR. LAVINE:  That's correct.

12            THE COURT:  I believe that responds to your

13   question, Mr. Benson.

14            What I would like is the parties to confer on a form

15   of order that would address supplemental briefing and set

16   forth a hearing date of April 22 at 1:00 p.m. for the

17   continued hearing to remove the nunc pro tunc relief.  I will

18   note this.  It is very customary in stay-related orders in

19   Delaware that there be no extraneous language, that they be

20   consistent with the statutory language and go no further.

21            And I would like you to involve the United States

22   Trustee in making sure that he sees an advance copy of the

23   order, and that it be submitted under certification of counsel

24   with a clean and black line.

25            MR. LAVINE:  And, Your Honor, this is on the order

1      for provisional relief, is that correct?

2                  THE COURT:  Yes.  Yes, sir.

3                  MR. LAVINE:  Thank you.

4                  THE COURT:  Because I've already entered your motion

5      to shorten so our next issue, if we're done with provisional

6      relief, we should move onto the procedures motion.

7                  MR. LAVINE:  Yes, Your Honor.

8                  THE COURT:  Was there anything else with respect to

9      the provisional relief?  Okay.  So if the parties could submit

10     an order, that would be terrific.

11                 On the procedures motion, it's very important that

12     that order get entered today.  And so, I find that that

13     procedural relief is necessary and appropriate.  It's

14     customarily granted in Chapter 15 cases in this jurisdiction,

15     so I will enter the proposed order subject to modification.

16                 So one of those modifications being, I believe you

17     were going to contact your colleagues about timing of hearing?

18                 MR. LAVINE:  Yes, Your Honor, and we are -- we would

19     prefer to go forward on April 25th.

20                 THE COURT:  Okay.  Bear with me a second.  Let me

21     pull up my calendar.

22                 Well, let me add, if you're going to go forward on

23     the 25th, which is perfectly fine, but both this motion and

24     the provisional relief motion should go forward on the same

25     day, the briefing with respect to that.

Ruling by the Court                                      54

```
 1              MR. LAVINE:  That's fine, Your Honor.

 2              THE COURT:  Okay.  So --

 3              (Pause in proceedings.)

 4              THE COURT:  Does 1:00 p.m. on the 25th work?

 5              MR. LAVINE:  It does for me, Your Honor.

 6              THE COURT:  Mr. Fox?

 7              MR. FOX:  I'm checking my calendar right now, Your

 8  Honor.

 9              THE COURT:  Also, Mr. Benson?

10              MR. BENSON:  Yes, Your Honor.

11              THE COURT:  Okay.

12              MR. FOX:  Your Honor, the U.S. Trustee is available

13  that day.  If I have a conflict that arises, I'm sure I'll be

14  able to find coverage if necessary, but I should be available

15  to participate on that day presently.

16              THE COURT:  Okay.  So just to be clear, a hearing

17  will be held at 1:00 on the 25th.  Objections will be due on

18  the 18th, and the agenda will be on the 21st at noon, and

19  any response or reply by the Debtor will be due at 4:00 p.m.

20  on the 20th.

21              MR. BENSON:  And, Your Honor, I'm sorry if I was --

22  is -- are those deadlines the same for briefing on the

23  provisional relief or is that going to be the 14th and 22nd?

24              THE COURT:  I would like them all -- I would like

25  everything heard on the 25th.
```

Ruling by the Court                                    55

1              MR. BENSON:  Okay.

2              THE COURT:  And for the simultaneous briefing, would

3    the parties prefer the 14th or the 18th?  I would prefer the

4    additional time to review your documents, if at all possible,

5    on the 14th.

6              MR. BENSON:  Okay.

7              MR. LAVINE:  That's fine, Your Honor.

8              THE COURT:  Okay, terrific, I very much appreciate

9    that because you raised some good arguments.  I will say this,

10   as matters progress, if the parties reach a resolution or some

11   type of consentual order and find that briefing is not

12   necessary, please -- unnecessary, please, reach out to

13   chambers.

14             MR. BENSON:  Okay.  We'll do that.

15             THE COURT:  Maybe, if for some reason, you don't

16   feel the need to go forward on the issue.  Certainly, if you

17   are going to go forward on the issues on the 25th, I want

18   briefing by the 14th.

19             MR. LAVINE:  Understood.  Thank you, Your Honor.

20             THE COURT:  So, what --

21             MR. BENSON:  Thank you.

22             THE COURT:  All right.  And my apologies for jumping

23   around a bit.  But so with respect to the procedural motion,

24   please insert the dates in both the order and the form of

25   notice.

1           Did anybody have any comment on this form of order?

2           (No audible response.)

3           THE COURT:  And once that is completed, if you

4     submit it under a certification, we will get it on file.

5           Do you anticipate, now, given the time, that you

6     will get it done today or you will be submitting it tomorrow?

7     And, really, no pressure, I just want to know whether I need

8     court staff available later.

9           MR. LAVINE:  I'm checking with the -- we're passing

10    virtual notes, if you will, checking with the team.  I think

11    there could be -- I don't think we have an actual address just

12    yet for every creditor --

13          THE COURT:  Okay.

14          MR. LAVINE:  -- that we wanted to add.  So it may

15    need to be tomorrow, given the time, Your Honor.

16          THE COURT:  That's perfectly fine.  I will look for

17    it tomorrow.  I just know that you are eager to get it out,

18    and I just want to make sure that we accommodate you, but we

19    will be prepared tomorrow to make sure that it's entered.

20          MR. LAVINE:  Thank you, Your Honor, and we have

21    moved the hearing date by three days --

22          THE COURT:  Right.

23          MR. LAVINE:  -- and so, we should be good.

24          THE COURT:  Yes.  All right.  Is there anything

25    further for today?

57

1          MR. LAVINE:  Not from me, Your Honor.

2          THE COURT:  Okay.  Thank you all very much, and

3    thanks again for your arguments.

4          We stand adjourned, and we will see you on April 25.

5          MR. BENSON:  Thank you.

6          THE COURT:  Thank you.

7          (Proceedings concluded at 3:29 p.m.)

8                           *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

58

**C E R T I F I C A T I O N**

I, Jacqueline Mullica, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter on March 31, 2011 from 1:11 p.m. to 3:29 p.m.

___/s/Jacqueline Mullica_____    April 1, 2022

JACQUELINE MULLICA

DIANA DOMAN TRANSCRIBING, LLC